FILED - GR
August 11, 2017 12:15 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: mkc /         SCANNED BY: /m/

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN.

GREGORY A. KRUSE, PRO SE

PLAINTIFF

V.

ST AMOUR, SAM E., ASHKER, JACOB J., EVEN KEVIN B. p38599, SANDEL DONALD G., RILLEMA KAROLYN A. and FRUITLAND TOWNSHIP

Defendant(s)

Case No.:

**1:17-cv-724**
Robert J. Jonker
Chief U.S. District Judge

## PLAINTIFF INITIAL BRIEF WITH ATTACHMENTS

Kruse has resided at 5617 South Shore Drive Whitehall, MI 49461 since 1998 purchase of vacant parcel to build on, from my mother's older sister's husband aka. Mr. R. E. Schrock, who did own cottage at 5616 South Shore Dr. since 1974, (5617 SSD lot in family since 1978), next door to my parent's old house or 5610 South Shore Drive on White Lake which is within the Western District Of Michigan, United States Of America which does hear equal protection case(s) or maybe not. Which does hear class of one case(s) or maybe not. Which does hear case(s) of local unit subdivision authorities "wrath peddling mentality," arbitrarily and illogically participating in disparate treatment of its citizens, irrationally or maybe not. Which does hear case(s) of authority's malignant animus of its citizens or maybe not. Which does hear case(s) of arbitrary and irrational discrimination even if no suspect class or fundamental right is implicated or maybe not. 42 U.S.C. § 1983 just lil ole me…sort of like Willowbrook IL v. Ms. Grace OLECH, not

identical twin alike, but alike accept anow amour animus abstract… Which does hear case(s) of whether this deliberate act is a quotidian exercise of government discretion or maybe not. Plaintiff is not a trier of fact or decision maker. So a in-person trial is requested so as to clearly convey, in vivid color, as to each of the actors specific roles. Something about peers maybe, kinda like show and tell, yes that is it. My family and I have lived at 5617 SSD since 1973 when newly elected Fruitland Township Clerk aka. Mother conducted daily business there for twenty-five years before current Fruitland Township hall was constructed. Plaintiff's first misconduct evidence submission to Fruitland Township was at the arranged meeting on February 11, 2009 2:00 pm with STAMOUR, Sam E. supervisor (2008-2016) and BOWEN, Susan K. current contracted local unit assessor and DION, Sally (SD) current Zoning Department Secretary, Building Department Secretary, General Office Secretary, and Deputy Clerk (exhibit 1a, b, c, d ,e ,f ,g, h, i ) specifically details all actor's roles regarding my received misconduct assertion in hopes of Fruitland Township investigating my allegations and at least follow State of Michigan law(s) described in original complaint and unit members have sworn to uphold. This could not have culminated but with the assistance of BOWEN who single handedly, did create, large tracts of inaccessible land without Muskegon County Road Commission's documented approval (exhibit 7). On March 09, 2009, I did receive a Fruitland Township letterhead a document with an alleged signature "Don Sandel" Zoning Administrator (ZA) (exhibit 2) pertaining to Robert PACHMAN Sr. Land Locked Tract and Fruitland Township abandonment of "active" Muskegon County Road Commission State of Michigan highway easement adjoining to plaintiff's easterly property boundary (exhibit 7). Naked eye viewing PACHMAN lot 10 has a Pole barn (exhibit 8) that was constructed in 1997, no room for road right of way (exhibit 9). Robert PACHMAN Jr. does serve with BOWEN on Fruitland Township's Board Of Review (BOR).

This seemed quite queer and suspect being that "Donald G. SANDEL", Zoning Administrator (ZA) does sign his name as indicated in (exhibit 5) or Fruitland Township letterhead document sent to Plaintiff dated October 30, 2013. On August 28, 2013, Plaintiff did again provide to Fruitland Township or agent Melissa M. BEEGLE (2008) seated Treasurer, with signed receipt and corporate counsel EVEN Kevin B. p38599 by certified mail with my Misconduct Allegations (exhibit 1) by then Fruitland Township corporate counsel Robert D. EKLUND p30331, but now with STAMOUR added misconduct for not investigating, just did nothing, this was the second evidence submission to Fruitland Township w/corporate council. On September 09, 2013, proximity to eight days after second misconduct evidence submission, Plaintiff did receive "Fruitland Township expressed notice" containing Fruitland Township letter head and with the same "Don Sandel" suspect signature (exhibit 3). On September 19, 2013 Plaintiff did acquire signed receipt of questions listed that Plaintiff inquired (exhibit 4, a, b). Plaintiff, after Fruitland Township being unresponsive, did re-submit October 10, 2013 and re-submitted on October 23, 2013 and re-submitted on October 24, 2013 when RILLEMA Karolyn A. (2008) seated Clerk/FOIA coordinator did sign receipt of. RILLEMA was instructed at Work Session February 10, 2014 by STAMOUR not to respond to my inquiries. Addressed to SANDEL. On Wednesday November 20, 2013 resident STAMOUR complained to Supervisor STAMOUR, so chief STAMOUR filed incident report (exhibit 11-17) with Muskegon County Sheriff ASHKER Jacob J. 87480 accompanied by Medendope Kurt 87259, testifying I quote report "Fruitland Township wants Muskegon County Sheriff Employee/Agent aka. Fruitland Township PINS officer, to issue citation by way of these two (2) sheriff's deputies. ASHKER then did proceed to hand service "Notice of Violation #003" (exhibit 10) to plaintiff with two marked patrol units visibly parked at roadway and under full color of law for all the world to see (exhibit 25,26).

3

Plaintiff did request hearing but was denied any hearing for Notice of violation #0003 before Fruitland Township Violations Bureau. On December 27, 2013 ASHKER 87480 did issue Uniform Law Citation #D462164 (exhibit 18, a, b) to plaintiff by way of USPS which was received on New Year's Eve day as coordinated.

On February 04, 2014 Muskegon County Prosecutor "TT" did dismissed this Uniform Law Citation #D462164 prior to any hearing. Less than one week after dismissal ASHKER 87480 did once again testify to witnessing plaintiffs alleged zoning violation (tree branches on line) by this Muskegon County Sheriff road patrol officer immediately issued Uniform Law Citation #D462167 (exhibit 18, a), plaintiff once again immediately denied responsibility and requested a hearing again. Fruitland Township pays Muskegon County Sheriff Department $35,000 annually for to have ASHKER 87480 for special attention or special intimidation projects for STAMOUR, wrath peddling. Hearing was granted in district court, presiding at this initial hearing was Magistrate Van Epps, attending SANDEL, ASHKER 87480 and plaintiff w/o council, no tax payer complainant, STAMOUR. At the beginning Plaintiff asked Court to answer questions posed to SANDEL (exhibit 4). SANDEL testified "had not seen questions and did not become involved until October 30, 2013 (exhibit 5). Outcome at this first hearing was remanded to real court hearing on the record. (exhibit 19 to 24). After all of Fruitland Township deliberate shenanigans, and thousands of taxpayers hard earned dollars going to EVEN, plaintiff was found not responsible. "Taxpayer complainant," aka. STAMOUR did not attend any hearing. Three hundred forty-four days (344) under the anx of Fruitland Township wrath (exhibit 27, 28, 28.a, b, c, d). STAMOUR did not have authority to demand issuance of any citation(s). STAMOUR was not given authority to order subordinate employee ASHKER 87480 to issue any citation(s) from abode, outside scope of legislative authority. Fruitland Township did not issue EVEN any

4

authority to PROS any citation(s) personally issued for STAMOUR by subordinate ASHKER 87480 (exhibit 29,30a) only STAMOUR "individual personal" directive from a personal abode. Materiality or irrelevant, just for this class. The law seems immaterial just a hindrance to local authorities.

    Less than one year after Fruitland Township prosecution of plaintiff, similarly situated neighbor PROS EVEN, did knowingly order a "chicken coup/permanent structure" to be constructed on homestead zoned residential. aka. 4630 Nestrom Rd., kiddy corner to Fruitland Township Hall, without any Zoning Compliance Application submitted or any Zoning Compliance Permit issued for this construction of a $500 permanent structure within Fruitland Township's governmental subdivision authority (exhibit 31,32,33).

    Prosecute PROS EVEN? this is "policy" to not require corporate council or members of the Fruitland Township Board to be expected to adhere to or even follow the same ordinary safety standards and guidelines (law) as the common ordinary folk, the peasants or the subjects under Fruitland Township governmental subdivision "Authorit i."

    Second similarly situated neighbor is seated Fruitland Township Trustee Terrie Hampel 6171 W. Duck Lake Rd. without Zoning Compliance Application submitted or Zoning Compliance Permit issued, did knowingly construct a $500 structure within 100' front setback within Fruitland Township's governmental subdivision authority, this is "policy" to not require members of the Fruitland Township Board to adhere to or follow the same safety standards and guidelines (law) as the common ordinary folk, peasants or any subject under their direct authority (exhibit 34,35,36, 37). Third similarly situated neighbor is Fruitland Township 4545 Nestrom Rd. Whitehall, MI 49461. This neighbor did knowingly construct a "public accessible" wooden stairway down a fifty-foot sheer bluff to the Lake Michigan water's edge on public land

without Zoning Compliance Application (undated, unsigned) submitted for construction of a permanent public use stairway structure within Fruitland Township's governmental subdivision authority, aka. McMillan Road End Park, this is "policy" to not require members of the Fruitland Township Board to adhere to or follow the same safety standards and guidelines (law) as the common ordinary folk, peasants or any subject under their direct authority (exhibit 38,39,40,41,42,43). Freedom Of Information Act (FOIA) request was partially granted for certified copy of Zoning Compliance Application (exhibit 40). Fruitland Township FOIA coordinator Karolyn A. Rillema, aka. seated Clerk/FOIA coordinator was asked personally, at township hall, why this is certified without any dates and unsigned by someone without being on file as a State of Michigan licensed contractor whom does conduct contracted construction work within Fruitland Township's governmental subdivision authority and signed stating they will comply with all zoning and state building rule(s) aka. International Property Maintenance Code (IPMC) law. RILLEMA unresponsive…Building permit on file signed by seated Treasure Melisa M. BEEGLE has never possessed a contractor's license. Stair case as built, it is lucky nobody was seriously injured having ten safety code violations on STAMOUR stairway re-election grandstand tout.

    From here onward are just common ordinary folk, peasants and subjects under Fruitland Township's governmental subdivision authority. First (1st) similarly situated neighbor, in every material respect, without Zoning Compliance Application submitted or Zoning Compliance Permit issued, did knowingly construct a fence structure within Fruitland Township's governmental subdivision authority (exhibit 44,45,46). Second (2nd) similarly situated neighbor, in every material respect, without Zoning Compliance Application submitted or Zoning Compliance Permit issued, did knowing construct a fence structure within Fruitland Township's

governmental subdivision authority (exhibit 47,48,49). Third (3rd) similarly situated neighbor, in every material respect, without Zoning Compliance Application submitted or Zoning Compliance Permit issued, did knowingly construct a six foot (6ft) high fence structure within Fruitland Township's governmental subdivision authority within "100-foot front yard setback" violating township own four-foot high rule and law (exhibit 50,51,52). Fourth (4th) similarly situated neighbor, in every material respect, without Zoning Compliance Application submitted or Zoning Compliance Permit issued, did knowingly construct a fence structure within Fruitland Township's governmental subdivision authority (exhibit 53,54,55). Fifth (5th) similarly situated neighbor, in every material respect, without Zoning Compliance Application submitted or Zoning Compliance Permit issued, did knowing construct a tree branch fence within Fruitland Township's governmental subdivision authority (exhibit 56,57). Sixth (6th) similarly situated neighbor, in every material respect, without Zoning Compliance Application submitted or Zoning Compliance Permit issued, did knowingly construct a fence structure within Fruitland Township's governmental subdivision authority (exhibit 58,59,60). Seventh (7th) similarly situated neighbor, in every material respect, without Zoning Compliance Application submitted or Zoning Compliance Permit issued, did knowing construct a fence structure within Fruitland Township's governmental subdivision authority (exhibit 61,62). Eight (8th) similarly situated neighbor, in every material respect, without Zoning Compliance Application submitted or Zoning Compliance Permit issued, did knowingly construct a fence structure within Fruitland Township's governmental subdivision authority (exhibit 63,64). Ninth (9th) similarly situated neighbor, in every material respect, without Zoning Compliance Application submitted or Zoning Compliance Permit issued, did knowing construct a garage structure within Fruitland Township's governmental subdivision authority (exhibit 65,66,67). Tenth (10th) similarly

situated neighbor, in every material respect, without Zoning Compliance Application submitted or Zoning Compliance Permit issued, did knowingly construct a fence structure within Fruitland Township's governmental subdivision authority (exhibit 68,69).

Fence report(s), or any motions are nonexistent, just STAMOUR personal complaint from personal abode, period. ZA SANDEL is subordinate to STAMOUR, subject to disciplinary action or removal from position before retirement without full subdivision benefit package assured. STAMOUR did file second false incident report for to intimidate plaintiff from making public comments at regular meeting(s) by protected right (exhibit 74.d, e, f, g, h,i ). Complaint was given to prosecutor EVEN, nothing. Two false incident reports complaint was given to Muskegon County Prosecutor HILSON, D.J. p57726 still nothing, this is policy.

STAMOUR Fruitland Township with PROS EVEN did successfully prosecute unrepresented Mr. William White, (original derelict owner) 4790 Bard Rd. with unrepresented Mr. & Mrs. Randy Varney (secondary, deep pockets, owners by way of judicial auction.) in circuit court for to require "newbies" aka. appeal-deprived Defendants to pay for removal of accessory building "collapsed pole barn" within its governmental subdivision authority culminating with citing the "Housing Code" and "local ordinance" as final authority contrary to law. Fruitland Township does use misappropriated account 371 Building Department Permit Fees to compensate Val JENSEN II, Zoning Administrator and to compensate general office staff and balance budget with Building Department 371 syphoned funds contrary to State of Michigan law, fund(s) used to enforce the code only and abate dangerous structures (exhibit 72.e.f.g.h.i.j.k,l,m,n,o). ZA JENSEN, is a contracted subordinate employee and STAMOUR appeal hearing board singular "condemnation hearing officer" is aka. Whitehall Township, State of Michigan "Licensed," Building Code Official charged with enforcing the International Property Maintenance Code

(IPMC). Christopher E. Hall 003884, is State of Michigan "Licensed" Building Code Official for 1) Fruitland Township, 2) City of Whitehall, 3) City of North Muskegon, and contracted from 4) Laketon Township and is a subordinate employee of four governmental subdivision authorities charged with enforcing the IPMC without a maintained office at Fruitland Township Hall, but at Laketon Township Hall. Certified copy Article R 40 Section R 40.01 Ordinance To Adopt Building Codes is exhibit 72.j . IPMC 2009 Section 111, means of appeal, 111.2 Membership of board. The board of appeals shall consist of a minimum of three members who are qualified by experience and training to pass on matters pertaining to property maintenance and who are not employees of the jurisdiction. The *code official* shall be an ex-officio member but shall have no vote on any matter before the board. The board shall be appointed by the chief appointing authority, and shall serve staggered and overlapping terms. Fruitland Township with the support of ZA JENSEN with Code Official HALL did use the IPMC to initiate action against WHITE, then the local governmental subdivision authority did knowingly choose not to follow the State of Michigan Law (IPMC) but instead did chose to follow contrary local ordinance enforcement along with the "Housing Code" neither paralleling state law. Fruitland Township PROS EVEN did successfully receive judgement (Fourteenth Judicial Circuit Court #16-005928-CH) against similarly situated neighbors in my local subdivision, contrary to law. HOUSING LAW of MICHIGAN (Excerpt) Act 167 of 1917, 125.402 Housing law of Michigan; definitions Sec. 2. (2) Classes of dwellings for the purposes of this act dwellings are divided into the following classes (a) "private dwellings," (b) "2 family dwellings," and (c) "multiple dwellings." Even if EVEN did receive judgement against similarly situated neighbors in my neighborhood citing the "Housing Code" as final authority. "Housing

9

Code" did authorize subdivision action(s) for occupied dwellings before 2001, the IPMC does give authority for action(s) on accessory/outbuildings, as well as, occupied dwellings since 2002. The State of Michigan 2001 adoption of the IPMC did render all local dissimilar housing laws unenforceable or null and void. Fruitland Township with Code Official HALL does have knowledge that, Jeremy Collins of 4058 W. Michillinda Rd, did not furnish a notarized statement to Muskegon County or local authorities stating new owner has been notified of "unsafe posting" and will conform to all ordinance's and laws when abating this auctioned off property by Muskegon County for six hundred dollars. COLLINS did not apply for or receive Zoning Compliance Permit for this structure construction. Fruitland Township with HALL does have knowledge that HALL's Building Department Secretary DION (SD) did sign and initial, for the only "Occupancy Permit" on file, as a Licensed Building Code Official the same "Rod Siegel" spelled out, not squiggled initials, not one authority is concerned about the health, safety and welfare of unsuspecting renters occupying this "rental for profit" structure within Fruitland Townships governmental subdivision authority without a occupancy permit signed by the code official contrary to the IPMC and state law, EVEN says this is ok, agreed to draw up policy to give to STAMOUR (exhibit 73, a, b, c, d, e, f, g, h, i, j, k, l, m ,n ).

In the context of the claim at issue here, a municipality is likely to be liable only when it either had an explicit policy authorizing the discrimination, *id.* at 690-94 or indiscriminately delegated authority to an official who, without standards to govern his execution of that authority, vindictively discriminated. Whenever a governmental actor either is given unbridled discretion to single one out for spiteful treatment or acts wholly outside his delegated authority and rule of law, the law ought to have no interest in shielding these person(s) from equal protection liability.

Plaintiff does beg the courts indulgence in the exhibits here on, meant to explain, by way of record, actors are clearly not wet behind the ears or even engages in mistaken judgement, just vindictive or maybe calculated, nothing amour.

STAMOUR standards…(exhibits 74, a, b, c. exhibits 76, a-zzzzz). STAMOUR, self-proclaimed "Fruitland Township" did engage with RILLEMA and BOWEN to arbitrarily deny a protected right. Fruitland Township with these agents are currently ignoring own "Freedom Of Information Act (FOIA) procedures and guidelines" knowing that their own two and a quarter page EVEN compiled/compensated document is their own procedures and guidelines and that contained therein is policy and is on their website. So, says The State of Michigan July 01, 2015 (exhibits 75, a, b, c, d, e, f, g, h). One adjoining municipality is the City Of Whitehall which has also adopted the July 01, 2015 FOIA and did update their FOIA procedures and guidelines, all seven and a quarter pages worth on their website.

STAMOUR was sued by Kaydon Corporation on or about the same time as inking MCI deal with Manitoba Minister for $20 million package, $10 million interest free for employer. (exhibits 77, a, b, c, d, e, f, g, h, i, j, k, l, m ).

http://sangandaan.net/ace/2002_03_01_archive.html exhibit 77m picture cited webpage. Sorry. Fruitland Township and agent(s) "modus operandi" or their particular way or method of doing something, especially one that is characteristic or well-established (exhibits 78, a, b, c, d, e, f, g) (exhibits 79, a, b, c, d) (exhibits 80, a, b, c, d, e, f) (exhibits 90, a, b, c).

Fruitland Township and agent actor(s) should be shielded from individual liability unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those

11

who knowingly violate the law.'" In short, plaintiff contends that there is "substantial evidence" that defendant(s) retaliated against plaintiff for the exercise of his First Amendment rights and that there is a "reasonable probability" that a jury would make such a finding.

(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

STATE CONSTITUTION (EXCERPT) CONSTITUTION OF MICHIGAN OF 1963 ARTICLE I DECLARATION OF RIGHTS § 2 Equal protection; discrimination. Sec. 2. No person shall be denied the equal protection of the laws; nor shall any person be denied the enjoyment of his civil or political rights. This court does award damages for injured party's compensatory damages money for filing and any and all cost(s) related to the filing of this action if not granted in forma pauperis. This court does award punitive damages as a deterrent, relief sought of $75,000 US dollars combined. These actors should be reeled in or deterred, still wrath peddling today. Just a quotidian day, thousands of tax dollars wasted and clogging the courts. Fruitland has plenty of resources to use tax dollars to bailem out of STAMOUR and this seated board shenanigans, a ruffled feather…gets EVEN a second abode?  Now the real possibility of defendants use of this court as a weapon. Like goliath or maybe a behemoth to squash this pro se plaintiff into submission once amour.  This plaintiff prays this court does so agree.  Graciously submitted this on August 11, 2017.

*[signature]*
Gregory A. Kruse
5617 South Shore Dr.
Whitehall, MI 49461    231.955.5660