# 1

# RESPONSE TO REQUEST FOR PUBLIC RECORDS - FREEDOM OF INFORMATION ACT

| Date of Response | FOIA Request |
|---|---|
| 2/23/15 | 8-28-13 *Cert.* *Lttr.* |
| Request Type: | |
| ✓ Original | ☐ Additional Info. |

## Fruitland Township

Dear *Mr. Kruse*

This letter is in response to your request dated *2/23/15*, received in this office on *2/23/15*, for

☑ COPIES    ☐ INSPECTION of the following record(s):

See attached.

Your request for public records has been reviewed and the following action(s) has been taken in compliance with the provisions of the State of Michigan's Freedom of Information Act.

1. ☐ **REQUEST GRANTED:** This request involves too many documents to be processed within standard time frames. Your request will be processed as soon as staff have completed the copying. *Township Staff: If this box is checked, you must provide another copy of this form when the documents are forwarded to the requestor. Also, check either box 2 or 3.*

2. ☑ **REQUEST GRANTED AS TO EXISTING NON-EXEMPT RECORDS:** Your requested documents are enclosed. The cost to produce these records is _____. Please make payment at the Fruitland Township Hall. A good faith estimate of the cost to produce must be paid to the Township Clerk prior the records being copied in the amount of _____. *Affidavit Attached*

3. ☐ **REQUEST GRANTED IN PART and DENIED IN PART:** (See comments on next page).

4. ☐ **REQUEST DENIED:** This agency has determined that the record(s) you have requested are exempt from disclosure based on the provisions of the Freedom of Information Act. (See comments on next page).

5. ☐ **REQUEST DENIED:** The record(s) you have requested do NOT exist within the records of this agency.

6. ☐ **REQUEST DENIED:** Your request does NOT describe the record(s) sufficiently to enable us to determine what record(s) you are seeking. Please submit a new request describing the record(s) in greater detail.

7. ☐ The specific nature of your request involves unusual circumstances which require an additional 10 business days to properly process your request as provided by Sec. 6(5) of the Freedom of Information Act.

The extension due date is _____    The reason for this extension is: _____

---

**UNDER SECTION 10 OF THE FREEDOM OF INFORMATION ACT, IF A PUBLIC BODY MAKES A FINAL DETERMINATION TO DENY ALL OR A PORTION OF YOUR REQUEST, YOU MAY DO ONE OF THE FOLLOWING:**

(1) Submit to the head of the public body, a written letter that states the word "APPEAL" and identifies the reason or reasons for reversal of denial.

(2) Commence an action in the circuit court to compel the public body's disclosure of the public records within 180 days after a public body's final determination to deny a request.

(3) Pursuant to M 15.235(5)(4)(e) this serves as notice of the right to receive attorneys' fees and damages as provided in Section 10, if after judicial review, the circuit court were to order disclosure of all or a portion of the documents requested.

| Signature of FOIA Coordinator or Representative | Name of Responding Office |
|---|---|
| *Marilyn Rellis, Clerk* | *FOIA Coordinator*    **1★** |

*See Reverse Side for additional information*

SHRR 2747257v1

August 28, 2013

Fruitland Township Board of Trustees
Fruitland Township Board
4545 Nestrom Road
Whitehall, MI. 49461-9439

Greg Kruse
5617 South Shore Drive
Whitehall, Mi. 49461

Dear Seated Fruitland Township Board of Trustees:

In Pursuit of Justice; I Greg Kruse do request that the "government closest to me" re;
Fruitland Township Board of Trustees and Seated Board address my allegations of former
Fruitland Township Prosecuting Lawyer **Robert Dunn Eklund p30331** Misconduct, citing
Michigan Compiled Law *(MCL) MCL 41.2* as your authority. My allegations are as follows:
November 18, 2003 **Robert Dunn Eklund p30331** Fruitland Township Lawyer <u>did</u>
knowingly and willfully issue building permit for 5601 South Shore Drive, where he has been
residing since November 08, 2008 only vacating upon resale. Second wife Cindy L.
Buckridge-eklund vacated premises on April 15, 2012 @ 3:00 pm, for some unknown reason,
only to return from whence she came from or MO.

Back story originates February 11, 2009 @ 3:00 pm my second (2nd) arranged meeting
was held in the current Fruitland Township supervisor's office, first meeting being one week
earlier in the boardroom witness less, at my second "whistle blowing" meeting I physically
placed my documented material evidence into the hands of seated Fruitland Township Chief
Executive Officer **Sam Earl St. Amour (CEO)** witnessed by current Fruitland Township Tax
Assessor **Sue Bowen** also witnessed by current Fruitland Township Zoning, Building
Coordinator, Deputy Clerk, Cemetery Coordinator and Secretary of Planning Commission
**Sally Dion**. Upon my evidence possession transfer, **Sue Bowen** was <u>able</u> to produce, for
viewing or copying, a <u>draft</u> copy of **Sarah McMurray** 1995 Fruitland Township Board
stipulated W66' foot easement for Lot 10 "Cedar Grove Subdivision" fronting on South Shore

**1 B**

Drive. **Sue Bowen** is <u>unable</u> to produce, for viewing or copying, Fruitland Township Board stipulated "**Pachman** Lot 20 **Hesse's** subdivision easement" fronting Nestrom Road as required for authorization of building permit issuance re; 5601 South Shore Drive under the authority State of Michigan Land Division Act *288 of 1967*.

Testimony required of former Fruitland Township Prosecuting Lawyer **Robert Dunn Eklund p30331:** 1. Under <u>what</u> authority did **Robert Dunn Eklund p30331** knowingly and willfully issue building permit on November 18, 2003 for the address of 5601 South Shore Drive, Fruitland Township, County of Muskegon, State of Michigan? **P30331's** deliberate issuance enabled, predatory parasite **Thomas C. Kelly II**, (seller to **Phil Lambert**) to instantly pocket fordee t0o K ($42,000) while being represented by retained attorney **Roger Sweeting p44625**, full partner, Rose Eklund lawyers @ LAW. **Thom Kelly II's** acquisition motivation of this Muskegon County 1965 ROW ? Control of ingress/egress when subdividing deceased **Pachman Sr.** acreage/large land tract for to become somebody. This predatory parasite fantasy was immediately quashed by **Pachman Jr.** Predatory parasite **Thom Kelly II aka. "South Shore Drive LLC"** had already perpetrated his modus operandi on deceased **Helen E. Valk** for her 40 acres only this time, with neighbor surgeon $ backing, successfully subdividing Terraveta Lane and now fantasizes of becoming somebody other than a luzr. Nope $ doesn't alter character deficiencies. **Roger Sweeting p44625**, full partner, Rose, Eklund lawyers @ LAW was also retained by former Fruitland Township Clerk/Planning and Zoning Administration, one disgraced **Jannell Beard** for to represent her on all Criminal Charges.

Ironically this is the very same $272,000 thousand dollar, Homestead Tax Exempt (PRE) domicile **Robert Dunn Eklund p30331** has been cohabitating with wife II aka; **Cindy L. Buckridge/Protsman/Eklund** since November 18, 2008 and now has been resold.

**Robert Dunn Eklund p30331** "daily" head on pillow and there after every vacation since November 18, 2008. **Robert Dunn Eklund p30331** second (2nd) Homestead Tax Exempt

**1c**

(PRE) domicile is located at 3080 East Alice Street, Whitehall Township, County of Muskegon, State of Michigan. **p30331** is currently Whitehall Township prosecuting lawyer.

2. **Robert Dunn Eklund p30331** will furnish or produce for inspection or copying, **Robert J. Pachman Sr.** easement placed over Lot twenty (20) of **Hesse's** subdivision fronting Nestrom Road. This stipulation by Fruitland Township Board, binding directive or rule of law, is so ordered during Fruitland Township Board meeting conducted March 05, 1997 and further so ordered during Fruitland Township Board meeting conducted on March 17, 1997 when Fruitland Township Board specifically ordered, I quote "deed language be acceptable to Fruitland Township Attorney" end quote, re; **Robert Dunn Eklund p30331.** Accordingly Fruitland Township will be instantly compliant with Michigan Land Division Act 288 of 1967. This 1997 board meeting addressed Lot 10 "Cedar Grove" easement transfer caused by permanent structure being erected across Lot 10 forever impeding "access" to large unbuildable tract or land locked acreage.

Former Fruitland Township Lawyer **Robert Dunn Eklund p30331** was in attendance for each separately conducted Fruitland Township Board meeting knowingly and willfully crafting **Robert J. Pachman Sr.** easement stipulations assuring Fruitland Township adherence to Michigan rule of law. Meeting dates are as follows: **1. October 04, 1995  2. November 20, 1995  3. March 05, 1997  4. March 17, 2007.**

Taxpayer Compensated **Robert Dunn Eklund p30331** "stands mute" while attending each one (1) of these four (4) separate meeting(s) specifically addressing Fruitland Township required compliance with Michigan Land Division Act 288 of 1967 (*Michigan Compiled Law 247.321 to MCL 247.329*).

The most recent referenced binding affirmation of stipulated "66' foot easement" was on March 9, 2009 by current Fruitland Township Zoning Administrator **Don Sandel** or superior **Sam Earl St. Amour (CEO)** directed response, addressing my "alleged" inquiries not my actual "whistle blowing" on *Pachman* parcel misconduct made at meeting on February 11,

2009 in the presence of two (2) of his compensated subordinates. Former Fruitland Township Lawyer document would instantly dismiss my allegations of current Fruitland Township's violation of "State of Michigan Rule of Law" and Subordinate employee misconduct. State of Michigan Land Division *Act 288 of* 1967 as cited addressing *"Proper Accessibility Ingress and Egress to Lots and Parcels".* See road right-of-way *(ROW)* easement Muskegon County Road Commission (MCRC) *Liber 820 Page 232* as recorded *April 23, 1865* as direct evidence documenting *(MCRC)* adherence to Public Act 288 of the Land Division Act as cited addressing *"Proper Accessibility Ingress and Egress to Lots and Parcels".*

My allegation(s) now include seated Fruitland Township Chief Executive Officer **Sam Earl St. Amour (CEO)** misconduct for not addressing my employee misconduct accusations of his taxpayer compensated subordinate. **Sam Earl St. Amour (CEO)** being Fruitland Township Final Authority(agent) and has taken "Oath of Office" swearing to uphold all "People of the State of Michigan Compiled Law(s)" not his own personal gratification pursuing own agenda. Taxpayer compensated employee(s) misconduct violation allegations require **Sam Earl St. Amour (CEO)** to investigate any allegation(s) of misconduct. **Sam Earl St. Amour (CEO)'s** directed subordinate crafted document or **Don Sandel** Fruitland Township Zoning Administrator "Sworn Statement Letter" explains exactly how Fruitland Township is currently not in compliance with "People of the State of Michigan Compiled Law(s)", directly supporting and validating my documented misconduct allegation(s) presented Febuary 11, 2009 and again August 28, 2013. **Don Sandel** document states re; 5601 South Shore Drive, I quote "Because this was a lot split in a recorded subdivision township board approval was needed" end quote. (Michigan Law). On November 20, 1995 the Fruitland Township Board approved that lot split subject to a 66' foot wide easement over the West part of Lot 10 of said subdivision (Cedar Grove) fronting south shore drive. I quote; "But not to leave a unbuildable land locked area, by **Mr. Pachman Sr.** giving the W 66" foot of Lot 10 for access/road-right-away to the remaining acres" end quote. On March 17, 2007,

twelve years (12) after the fact, the Township Board agreed to approve the changing of easement from Lot 10 "Cedar Grove Subdivision" to Lot 20 of *Hesse's* "Subdivision" end quote. Fronting Nestrom Rd.

My allegation now will include that Fruitland Township is <u>currently</u> in violation of the Land Division Act 288 of 1967 *Sec. 560.101, Sec. 560.102 (j) accessible and (i)(ii).* My "whistle blowing allegations" <u>not</u> "Inquiry" were witnessed by three (3) taxpayer compensated current Fruitland Township employee(s) and one (1) compensated current Fruitland Township Zoning Administrator. Yet the government "closest to me" under the reins of seated Chief Executive Officer **Sam Earl St. Amour (CEO)** has been action less to assure Fruitland Township Board and Board of Trustees are <u>not</u> knowingly and willfully, violating "People of the State of Michigan Land Division Act 288 of 1967" *MCL 247.321 to MCL 247.329, Sec. 560.101 & Sec. 560.102 (j) accessible and (i)(ii).*

Sincerely,

Greg Kruse

Fruitland Township Resident 1973

Cc: Kevin Even

1 F

# FRUITLAND TOWNSHIP BOARD
## REGULAR MEETING
### MAY 21, 2012
### MINUTES

**PRESENT –** Trustee Bard, Trustee Deur, Trustee Binns, Trustee Bole, Clerk Rillema, Supervisor St. Amour

**ABSENT –** Treasurer Beegle

**ALSO PRESENT –** Four (4) interested parties.

**CALL TO ORDER –** Supervisor St. Amour called the Monday, May 21, 2012 Regular Meeting to order at 7:00 PM, led the pledge of allegiance and asked for a moment of silence.

**AGENDA –** Supervisor St. Amour asked to amend the agenda by adding New Business Item 6.5 – Seasonal Help.

Motion by Trustee Bole, second by Trustee Bard, *ADOPTED,* to accept the amended May 21, 2012 Regular Township Board Meeting Agenda.
*Upon Voice Vote:* **6** AYES **1** ABSENT

**PUBLIC COMMENT –**



1.   Greg Kruse, 5617 South Shore Drive – Submitted a four page document requesting investigation of allegations of misconduct by Attorney Robert Eklund.

**MINUTES -** Motion by Clerk Rillema, second by Trustee Bole, *ADOPTED,* to accept the April 9, 2012 Work Session Minutes and April 16, 2012 Regular Meeting Minutes.
*Upon Voice Vote:* **6** AYES **1** ABSENT

**RECEIPTS & DISBURSEMENTS –**

Motion by Clerk Rillema, second by Trustee Bole, *ADOPTED,* to accept the Receipts of $15,846.76 and Bank Balance and Certificate of Deposits of $1,199,168.54 for the period of April 1, 2012 through April 30, 2012 as reported by Melissa Beegle, Fruitland Township Treasurer and approve General Fund 101 Disbursements in the amount of $50,879.50 and Fund 145 Disbursements in the amount of $804.43 for the period of April 1, 2012 through April 30, 2012 as reported by Karolyn Rillema, Fruitland Township Clerk.
*Upon Voice Vote:* **6** AYES **1** ABSENT

**ANNOUNCEMENTS/COMMUNICATIONS –** Supervisor St. Amour announced that bricks are available for purchase in memory of Fred Meijer. Fruitland Evangelical Covenant Church is hosting the Blueberry Festival again this year. The tri-township tire grant collection date is June 9, 2012 held

*1·9*

LIBER **820** PAGE **323**

## BOARD OF COUNTY ROAD COMMISSIONERS
## OF MUSKEGON COUNTY, MICHIGAN

# HIGHWAY EASEMENT RELEASE

For and in consideration of the improvement of a County Road known and designated as

_South Shore Road_ and _one hundred (100) dollars_

and other valuable consideration, the receipt whereof is acknowledged, the undersigned,

_Anthony J. Koteles & Ann P. Koteles, husband and wife_

_5604 South Shore Drive Whitehall, Michigan_

hereby grant and convey to the County of Muskegon an easement for highway purposes, in, over, and upon the parcels of land described as:

Commence at the westerly most corner of lot 3 of the Plat of Cedar Grove Subdivision of Government Lot 1, Section 7, T-11-N, R-17-W, for point of beginning, thence southeasterly along the lot line between lot 3 and lot 4, 25.0 feet, thence northeasterly 179 feet more or less to a point on the north lot line of said lot 3, said point being 150.0 feet east of the western most point of said north line, thence west 150.0 feet, thence south 38° 49' west, 50.0 feet to point of beginning.

All existing fences thereon will be moved to the new right of way line by the _County Road Commission_

prior to _Dec. 31, 1965_

This conveyance includes a release of any and all claims to damages to grantors' adjoining property, arising from or incidental to the laying out, establishing, altering, widening, change of grade, drainage within the right-of-way, and improving of the highway in, over, and upon the land hereby granted.

This conveyance also includes the consent of the grantors to the removal at any time of such trees, shrubs and vegetation as, in the judgment of the Board of County Road Commissioners of Muskegon County, Michigan, is necessary to the construction and maintenance of the highway, further notice of such removal being hereby expressly waived; provided, that all desirable trees, shrubs and vegetation which do not interfere with the construction, maintenance or use of the highway, are to be preserved and shall not be removed or disturbed; and provided further, that all timber, logs, and parts of trees suitable for firewood resulting from removal of any trees shall be reserved for the grantors.

The grantors covenant and agree for themselves, their heirs, executors, administrators, successors and assigns, that no bill board, sign board or advertising device, other than those advertising articles produced or sold on the premises, shall be erected, permitted, or maintained in or upon the remaining lands and premises now owned by the grantors immediately adjoining the lands herein conveyed, and within a distance of three hundred feet from the highway center line, measured at right angles to said line. This covenant is hereby declared to be a perpetual covenant and shall be construed as a real covenant attached to and running with the land.

The undersigned mortgagee hereby releases and discharges the lands described from the mortgage lien.

IN WITNESS WHEREOF, We have hereunto set our hands and seals this _16_ day of _April_ A. D. 19 _65_

In Presence of

_John Lazarock_
John Lazarock

_Rudolph J. Chmelar_
Rudolph J. Chmelar

x _Anthony J. Koteles_ (L. S.)
Anthony J. Koteles

x _Ann B. Koteles_ (L. S.)
Ann B. Koteles

_____ (L. S.)

_____ (L. S.)

Drafted by _Muskegon County Road Commission_
Address _953 E. Keating Ave. Muskegon, Michigan_

1
H

Case 1:17-cv-00724-RJJ-PJG ECF No. 1-1 filed 08/11/17 PageID.22 Page 10 of 200

LIBER **820** PAGE **324**

State of Michigan, County of _Muskegon_ : ss.

On this _16 th_ day of _April_ A. D. 19_65_ before me, the undersigned,

personally appeared _Anthony J. Keteles an Ann B. Keteles, husband wife_

and _____ to me known to be the persons who executed

the foregoing release and severally acknowledged the same to be their free act and deed.

_Rudolph J. Chmelar_

Rudolph J. Chmelar
Notary Public _____ Muskegon _____ County, Michigan

My Commission Expires _2/26/68_

---

State of _____, County of _____ : ss.

On this ____ day of ____ A. D. 19__, before me, the undersigned,

personally appeared _____
STATE OF MICHIGAN
COUNTY OF MUSKEGON
RECEIVED FOR RECORD

and _____ to me known to be the persons who executed

the foregoing release and severally acknowledged the same to be their free act and deed.

1965 APR 23 PM 12 57

_John D. Hooke_

REGISTER OF DEEDS

Notary Public _____ County, Michigan
Acting in _____ County, Michigan
My Commission Expires _____

---

**CORPORATE ACKNOWLEDGMENT**

State of _____
County of _____ : ss.

On this ____ day of ____ A. D. 19__, before me, the undersigned,

personally appeared _____

and _____ to me personally known, who being by me

duly sworn, did say that they are respectively President and _____

of _____ a _____ Corporation; that the seal

affixed to the foregoing instrument is the corporate seal of said Corporation; that said instrument was signed and sealed

in behalf of said Corporation by authority of its Board of Directors; and said _____

and _____ severally acknowledged said instrument to be the free act and deed

of said Corporation.

Notary Public _____ County, Michigan
Acting in _____ County, Michigan
My Commission Expires _____

**HIGHWAY EASEMENT RELEASE**

COUNTY OF MUSKEGON STATE OF MICHIGAN



Fruitland Township
White River Light Station Museum

# FRUITLAND TOWNSHIP

4545 Nestrom Road
Whitehall, MI 49461
(231)766-3208
Fax (231) 766-3027
www.fruitlandtwp.org

**TOWNSHIP BOARD**
Sam E. St. Amour - Supervisor
Karolyn Rillema - Clerk
Debbie Boyer - Treasurer CPFA
TRUSTEES:
Mary Ann Bard
Norma Binns
Gary Bole
Jan Deur

Gregory A. Kruse
5617 South Shore Drive
Whitehall MI 49461

Dear Greg,

In regards to your inquiries on the Pachman parcels between South Shore Drive and
Nestrom Road in the Northeast ¼ of Section 7, Town 11 North, Range 17 West my
research has determined that there are 5 contiguous parcels containing approximately 24
acres titled to the Packman's. This tract fronts on both South Shore Drive (approximately
240 feet) and Nestrom Road (100 feet). At the present time without the construction of an
approved Street the Packman tract could be divided into two or three separate parcels,
each with separate road frontage.

It appears that in September 18, 1995 Robert J. Packman sold a part of Lot 2 and part of
Lot 1 of the "Plat of Cedar Grove Subdivision" to Thomas Kelley and Patricia Kelly who
sold to Lamberts who sold to Cynthia Buckridge. Because this was a split of a lot in a
recorded subdivision Township approval was needed. On November 20, 1995 the
Fruitland Township Board approved that split subject to a 66 foot wide easement over the
West part of Lot 10 of said Subdivision. In March 17, 1997 The Township Board agreed
to approve the changing of the easement from Lot 10 of said Subdivision to Lot 20 of
"Hesse's Subdivision". At the present time both Lots 10 of "Cedar Grove Subdivision"
and Lot 20 of "Hesse's Subdivision are a part of the 5 contiguous parcels as mentioned in
the first paragraph thus there is access to all parcels in question, although in my opinion if
any of these parcels were to change ownership they would need to apply for a land
division or a lot split or both depending if the parcels are in the recorded subdivision or a
fractional part of Section 7.

Don Sandel
Fruitland Township Zoning Administrator

**2**



**Fruitland Township**
**White River Light Station Museum**

# FRUITLAND TOWNSHIP

4545 Nestrom Road
Whitehall, MI 49461
(231) 766-3208
Fax (231) 766-3027
www.fruitlandtwp.org

**TOWNSHIP BOARD**
Sam E. St. Amour - Supervisor
Karolyn Rillema - Clerk
Melissa M. Beegle - Treasurer
TRUSTEES:
Mary Ann Bard
Jan Deur
Terrie Hampel
Val Rissi

September 9, 2013

Gregory A. Kruse
5617 South Shore Drive
Whitehall, Michigan 49461

Dear Mr. Kruse:

It was brought to our attention you have placed tree branches on your property line between you and 5601 South Shore Drive. As Zoning Administrator I drove past and my opinion is this falls in the category of a fence.

According to Fruitland Township Zoning:

Article XX, Administration and Enforcement, SECTION 20.06, ZONING PERMIT REQUIRED

A.  No person shall commence construction of any building or structure or make structural changes in any existing structure or use of a parcel of land in the township without first obtaining a zoning permit from the Zoning Administrator. There shall be an application fee established by the Township Board.

B.  The Zoning Administrator shall not issue a zoning permit for the construction, alteration, or remodeling of any structure or use of any property until an application has been submitted showing that the proposed construction or use complies with all of the provisions of this ordinance.

C.  Zoning permits shall be valid for a period of not more than 180 days. The Zoning Administrator may renew permits for one additional successive period of up to 180 days at the same location and for the same purpose.

Article III, General Provisions, SECTION 3.11 FENCES, WALLS, HEDGES, BERMS AND SCREENS

A.  Notwithstanding other provisions of this ordinance, fences, walls, hedges, berms and screens may be permitted in any yard or along the edge of any yard provided that no fences, walls, hedges, berms or screens shall be over six (6) feet in height if erected in back of the required front set back line and any fences, walls, hedges, berms or screens erected between the required front yard setback line and up to the street right-of-way, shall not be in excess of four (4) feet. For lakefront lots see additional restrictions in the Lake Michigan Shoreline District, Inland Lakes District and North Duck Lake Overlay District.

**3A**

B.   All required fence heights shall be measured as the vertical distance from the average elevation of the finished grade within twenty (20) feet of the fence to the highest point of the fence.

C.   Fences on platted lots of record shall not contain barbed wire, electric current, charge of electricity, dangerous materials such as, but not limited to broken glass, bottle caps, or chain link type fences with sharp wire edges upwardly exposed.  Exception: Fences enclosing domesticated animals, and for bona fide agricultural operations may use barbed wire, electric current, or other materials necessary.

D.   Fences which enclose public or privately owned parks, or recreational grounds or playgrounds, or public landscaped areas, shall not exceed nine (9) feet in height, measured as outlined above, and shall not obstruct vision to an extent greater than twenty-five percent (25%) of their total area.

E.   No fence, wall, berm, sign, screen or any planting, shall be erected or maintained in such a way as to conflict with clear vision areas.

F.   Agricultural fencing: No farm animals shall be kept except within an entirely enclosed structure consisting of either a building or an area completely surrounded by fencing.  The structure shall be of a height and kind sufficient to prevent animals from wandering at large.  Fencing for cervidae facilities shall be in accordance with State of Michigan guidelines and requirements. Such structures shall be located as required by the applicable provisions of the particular district in which the structure is located.

I have enclosed a Zoning Compliance Application for your use. If you have any questions please feel free to call myself or Zoning Coordinator Sally Dion.

Sincerely,

Donald Sandel
Zoning Administrator

Enclosure

K Evens
900 4th St, Suite 204
Muskegon        49443

**3 b**

FRUITLAND TOWNSHIP FEBRUARY 10, 2014 WORK SESSION MINUTES
**NEW BUSINESS:**

1.  4th Quarter 2013-14 Budget Amendments - Clerk Rillema prepared the listing of amendments necessary for 4th quarter 2013-14. She stated that this list may change as invoices are received prior to the meeting. A motion will be prepared for the Tuesday Regular meeting.

2.  Brining - Supervisor St. Amour received a letter from Laurie Peterson, MCRC Maintenance Superintendent requesting participation in the dust control program for summer 2014. Townships will no longer be able to request which roads to apply spot or continuous brine on. Previous invoicing from the MCRC has varied in pricing and detail. The Board requested Supervisor St. Amour to request a quote on how much it will cost the township for the 1st brine and receive clarification because a second letter was received from Ken Hulka, MCRC Managing Director requesting a township to indicate spot brining or continuous brining. The 2nd brine if needed would be funded 100% by the township if we desired to have it performed.

3.  MTA Update - Trustee Hampel shared her experience of attending the MTA conference in Traverse City last week. She brought back several handouts to share.

4.  Life Ring Fund - Supervisor St. Amour received a letter from the White Lake Community Foundation stating that the Porter-Smith Life Ring Fund has $760.00 available to support both White River Township and Fruitland Township to keep the White Lake Channel safe. Supervisor St. Amour will contact White River Township and coordinate purchasing of life rings for both townships if needed.

5.  Board of Comments - Trustee Hampel stated that she met with members of the Evangelical Covenant Church regarding the Blueberry Festival. The church is happy to continue the pancake breakfast and Trustee Hampel is volunteering to help them this year to gain experience. Her hope is that it could be held here at the Nestrom Park once again. Trustee Deur stated that Verizon is very interested in placing a cell tower in the township. If the property near River/Scenic/Nestrom Road is not an effective location, would the Nestrom Road property be an option. Clarification on which Nestrom property - township park/hall or Wabaningo/Nestrom? Trustee Deur will investigate. Clerk Rillema stated that several letters have been received from resident, Greg Kruse regarding his civil infraction. Supervisor St. Amour and Attorney Even stated that it will be before the court soon. No reply is necessary at this time.

**ADJOURNMENT:**

Motion by Trustee Rissi, second by Treasurer Beegle, *ADOPTED,* to adjourn the Monday, February 10, 2014 Work Session of the Township of Fruitland at 11:40 AM
*Upon Voice Vote:* 7 **AYES - motion carried**

Respectfully Submitted,

Karolyn Rillema, Clerk
Township of Fruitland



2

FRUITLAND TOWNSHIP NOVEMBER 12, 2013 WORK SESSION MINUTES

will be referred to the Parks & Recreation Commission for their review and item 3 will be added to the Policies and Procedures and Employee Manual at the Monday regular meeting.

4. Ecology Station - Supervisor St. Amour received only one quote for the chipping of the wood pile at the Ecology Station by White Lake Excavating again at a cost of $5000.00. As mentioned earlier with the rate increase at the Muskegon County Solid Waste occurring in January 2014, all ecology station rates/services will be reviewed during budget time.

5. Health Insurance - Supervisor St. Amour stated that our health insurance agent, Jennifer McDonnell has provided five (5) health insurance plans that would extend the coverage through December 2014. Clerk Rillema and Supervisor St. Amour will review the plans and make a recommendation at the Monday regular meeting.

6. Board of Comments - Clerk Rillema shared the 2013-14 Muskegon County Road Commission Adopted Budget which was given at the Road Kill Dinner last month. She will place on file. The letter from the White Lake Senior Center was received regarding the 2013-14 contribution request of $1000.00. A motion will be prepared for the Monday regular meeting. Clerk Rillema stated that a thank you and $70.00 check was received by Mr. Fox for the extra month of the portable restroom rental at the White River Light Station for the month of November. Zoning Administrator Don Sandel has not been successful in a conversation with Mr. Greg Kruse regarding a zoning compliance requested of Mr. Kruse regarding a complaint of a resurrected fence. Mr. Sandel sent a letter dated November 6, 2013 requesting Mr. Kruse to schedule an appointment on or before November 13, 2013 or further action will be taken. Clerk Rillema stated that she has received numerous FOIA requests from Mr. Kevin McCabe on a variety of items.

**ADJOURNMENT:**

Motion by Trustee Deur, second by Trustee Bard, *ADOPTED,* to adjourn the Tuesday, November 12, 2013 Work Session of the Township of Fruitland at 11:55 AM
*Upon Voice Vote:* **6 AYES, 1 ABSENT - motion carried**

Respectfully Submitted,

Karolyn Rillema, Clerk
Township of Fruitland



3

4545 Nestrom Rd.
Whitehall MI. 49461

Submission   10.07.2013   Second
USPS         10.23.2013   Third

Grey Kruse
5617 S. Shore Dr.
Whit        . r 49461

As Recieved - Kaitlyn Ruhl 10/24/13

RE. Communication Dated 9.9.13
* Non Compliant opinion *

Dear Mr. Sandel; 1) What is the purpose of a
Zoning compliance permit? 2) Why must I
be compliant? 3) Will I also need a building
permit to Alter my Fallen tree branches?
4) By what means did, you all, come to Know
of this phantom Fence? 5) Did you assign a
dead Line? 6) What Legal consequences are
assigned For not applying For a Zoning compliance
permit as required? 7.) IF Z.C.P. is denied
what options do I have? 8) do I have
any options? Please Respond in a timely
manor.
         9) Request For hearing.

    Sincerly,
    G. Kruse

witness Sally Dion, St Amour

    CC Even, Sally Dion, Trustee Bard & St Amour
              Fruitland Township Board        CEO



**Fruitland Township**
**White River Light Station Museum**

# FRUITLAND TOWNSHIP

4545 Nestrom Road
Whitehall, MI 49461
(231) 766-3208
Fax (231) 766-3027
www.fruitlandtwp.org

**TOWNSHIP BOARD**
Sam E. St. Amour - Supervisor
Karolyn Rillema - Clerk
Melissa M. Beegle - Treasurer
TRUSTEES:
Mary Ann Bard
Jan Deur
Terrie Hampel
Val Rissi

*43 days*

*Rent 9.19.13*
*Rec. 11.1.13*

October 30, 2013

Mr. Greg Kruse
5617 South Shore Drive
Whitehall MI 49461

Dear Greg,

Please call or come in to the Township and we can discuss your concerns. I assure you
that I have no intentions to cause any problems for you and I believe that a short
conservation will clear up any misconceptions that you may have. My office hours are on
Mondays and Wednesdays from 8:00 am to 4:00 pm.

Sincerely,

Donald G. Sandel
Zoning Administrator

**5**



**Fruitland Township**
White River Light Station Museum

# FRUITLAND TOWNSHIP

4545 Nestrom Road
Whitehall, MI 49461
(231) 766-3208
Fax (231) 766-3027
www.fruitlandtwp.org

**TOWNSHIP BOARD**
Sam E. St. Amour - Supervisor
Karolyn Rillema - Clerk
Melissa M. Beegle - Treasurer
TRUSTEES:
Mary Ann Bard
Jan Deur
Terrie Hampel
Val Rissi

November 6, 2013

Gregory A. Kruse
5617 South Shore Drive
Whitehall, Michigan 49461

Dear Mr. Kruse:

I have reached out to you with the respect that I extend to all taxpayers to sincerely address and hopefully resolve a complaint against you. I have tried to contact you to listen to your comments and opinions on this issue, however, you refuse to meet face-to-face with me and have instead responded with a barrage of belligerent and contentious correspondences. At no time was it my intention to single out or persecute you by using the Township Ordinances. I have, however, received a taxpayer complaint and have made an honest and forthright attempt to amicably settle this issue with you.

Please schedule an appointment on or before November 13, 2013. I believe that a meeting will allow you to address your side of the issue. However, if you choose not to discuss this issue, I will have no choice but to assume that your non-responsiveness is an indication of your contempt and I will act accordingly.

Sincerely,

Donald G. Sandel
Zoning Administrator

6





South line of
Section 6, T.11N., R.17W.
North line of
Section 7, T.11N., R.17W

S.E. corner of
Section 6,
T.11N., R.17W

REFERENCE DESCRIPTION    Liber 1033, Page 451

Township of Fruitland, County of Muskegon, State of Michigan, to-wit:  That part of
the Southeast Fractional ¼ of Section 6, Town 11 North, Range 17 West, described as
follows:  Commencing at a point on the South line of said Section 6, which is 1607.6
feet West of the Southeast corner of said Section for the Point of Beginning, thence
North 48° 50' West 147 feet more or less to the shore of White Lake, thence recommen
at the Point of Beginning, thence West along the South line of said Section, 101.17
feet, thence North 43° 55' West 167 feet more or less to the shore of White Lake,
thence Easterly along the shore of White Lake 67 feet more or less to the intersecti
of the first described line.  AND, that part of Lot 21, Plat of Cedar Grove Subdivis
as recorded in Liber 6 of Plats, Page 19, Muskegon County Records, described as foll
Commence at the Northeast corner of Lot 21, thence South 38° 49' West along the Nort
erly line of public Highway 6.95 feet, thence North 43° 55' West 8.82 feet to the No
line of said Lot, thence East along the North line of said Lot, 10.52 feet to the Pl
of Beginning.

Liber 1099, Page 660

Township of Fruitland, County of Muskegon, State of Michigan, to-wit:  Lots 2, 3 and
EXCEPT the Easterly 40 feet of Lot 2, Plat of Cedar Grove Subdivision, as recorded i
Liber 6 of Plats, Page 19, Muskegon County Records.
March, 1979
A title search of the above description discloses that the following language should
be attached to this legal description:  ALSO EXCEPT that part released for Highway
Easement purposes as recited in Liber 820, Page 323 of the Muskegon County Records.

MAP OF SURVEY OF
LOTS 2 & 3 AND PART OF LOTS 21 & 22, PLAT OF CEDAR GROVE SUBDIVISION
SECTION 7, T.11N., R.17W., ALSO PART S.E. FRACTIONAL 1/4, SECTION 6, T.11N., R.17
FRUITLAND TOWNSHIP, MUSKEGON COUNTY, MICHIGAN

FOR- **MR. R. E. SCHROCK**

JUL 09 1999

BY _____



S.E. corner of
Cedar Grove

PACHMAN LOT 10 "NO ACCESS"



# FRUITLAND

Shyster Thom Kelly PREYS on Helen
Valk to obtain her 40 acres to amass
his wealth off the backs of Helpless
Senoir Citizens living in my Community
re; "Terravita GREED" and Robert J.
Pachman Sr. "no brass ring subdivision"

kelly thomas c. II thedeuce
aka. "SOUTH SHORE DRIVE"
Limited Liability Corporation (LLC)
6569 Durham Rd.
Fruitland Township, County of Muskegon
"Helen Valk Predatory Parasite Victim II"

kelly thomass c. II thedeuce
5107 South Shore Drive 1986
Notice next to Mr. Wilkins 60 acres
ripe for the pixens. thedeuce
approached b4 Helen Eloise. luv 2 C
Lloyds BOOT ^ deuces PIE HOLE!

kelly thomas c. II thedeuce
aka. "SOUTH SHORE DRIVE"
Limited Liability Corporation (LLC)
6569 Durham Rd.
Fruitland Township, County of Muskegon
"Robert J. Pachman Sr. Predatory Parasite Victim I"

THE UNDERSIGNED   Month   Day   Year   At approximately   A.M.   Month   Day   Ye
SAYS THAT ON:   11   20   13                                    P.M.   Birth

State   ☑ Oper./Chauff.   Driver License Number                          SSN (last 4 dig
MI   ☐ CDL   X

| Race | Sex | Height | Weight | Hair | Eyes | Occupation/Employer |
| W | M | | | | | |

Name (First, Middle, Last)
GREGORY   ARTHUR   KRUSE

Street
5617   SOUTH   SHORE   DR.

| City | State | Zip Code |
| WHITEHALL | MI | 4946 |

| Vehicle Plate No. | Year | State | Vehicle Description (Year, Make, Color) | Veh. Ty |
| | | | | |

THE PERSON NAMED ABOVE, in violation of §   ARTICLE 20

☑ Local, Ordinance   ☐ State Law   ☐ Administrative Rule
UPON   5617   SOUTH   SHORE   DR.

AT OR NEAR

WITHIN ☐ CITY ☐ VILLAGE ☒ TOWNSHIP OF   FRUITLAND
COUNTY OF   MUSKEGON                                   DID THE FOLLOWIN

| ☐ Nuisance Ordinance | ☐ Building Code |
| ☐ Licenses Ordinance | ☐ Plumbing Code |
| ☑ Zoning Ordinance | ☐ Electrical Code |
| ☐ Sign, Lighting & Display Ordinance | ☐ Mechanical Code |
| ☐ Animal & Fowl Ordinance | ☐ Other |

Describe:
FAIL TO COMPLY w/ ZONING PERMIT
APPLICATION.

Person in Active Military Service   ☐ Yes   ☑ No
THIS VIOLATION IS A CIVIL INFRACTION and is your ___1st___ violation.
The fine for this violation is $ 100 and must be paid at the violations bureau
by 5:00 p.m. on 6-10 DAYS unless you contact the violations bureau before this time.
SEE BELOW FOR AN EXPLANATION OF YOUR RIGHTS AND INSTRUCTIONS.

**WARNING:** If you fail to pay the fine specified above or fail to contact the violations
bureau on the date and time specified above, a civil infraction citation will be issued.
You are alleged to be responsible for a civil infraction. You must either: 1) admit responsibility;
2) admit responsibility with explanation; or 3) deny responsibility.

ADMIT RESPONSIBILITY: If you wish to admit responsibility and pay your fine, you may do so
by appearing in person or by mailing your fine along with this notice to the violations bureau.
ADMIT RESONSIBILITY WITH EXPLANATION OR DENY RESPONSIBILITY: If you wish to
admit responsibility with explanation or deny responsibility and have a hearing, you must contact
the violations bureau on or before the date specified above. A citation will be issued and filed
with the court where you will have the right to an informal hearing before a magistrate or judge
or to appear in court for a formal hearing before a judge.

Violations bureau address & phone number
4545 NESTROM ROAD
WHITEHALL, MI 49461
(231) 765-3209

**IMPORTANT: REMOVE TOP 2 COPIES BEFORE SIGNING NOTICE.**
I personally served a copy of this notice upon the defendant.
I declare under the penalties of perjury that the statements above are true to the best
of my information, knowledge, and belief.

| Complainant's Signature and receipt if applicable | Month | Day | Year |
| | | | |

Officer's Name (printed)
ASHKER

Officer's ID No.
67480

Agency ORI
MI-61100

Agency Name
FRUITLAND TOWNSHIP

UC-02 (rev. 5/06)   **CIVIL INFRACTION COPY**

7 of 9



# MUSKEGON COUNTY
## MICHIGAN
990 Terrace Street, Muskegon, MI 49442

# FREEDOM OF INFORMATION ACT RESPONSE

To: _GReg KRuse_

You requested: _MCSD RepoRt # 13-8756_

_____

From: _Sheriff Dept. (FOIA # 16-052 F)_
(Brief description of the request)
(County Department or Office request submitted to)

**The response to your request is as follows:**

☒ **Granted as indicated below:**

☐ Copies of the requested records are attached.

☐ You may obtain copies of the requested records by first paying a fee of $ _-0-_

☐ You may inspect the requested records at this office on _____ at the time of _____. You may copy or order copies of those records after inspection.

☐ **Denied**

This is a certification that the records you requested do not exist under the name given or by another name reasonably known to this public body. Please see Notice of Right to Appeal.

☒ **Partial**

A certain portion of your request was denied. Please review the above Denied information for an explanation. Review the checked box under the granted response for the cost of the information that was granted.

☐ **Extension**

Due to unusual circumstances, this public body requires an additional ten (10) business days to respond to your request.

☐ **Deposit**

Because the cost of the requested records will exceed $50, a good faith deposit in the amount of $ _____ (1/2 the total estimated cost) is required in order for the County to process your request.

☐ **Exempt**

The records you requested are exempt for the reason given: _____

_____

> ## NOTICE OF RIGHT TO APPEAL
>
> Submit to the Chairperson of the Muskegon County Board of Commissioners a written appeal that specifically states the word "appeal" and identifies the reasons for the reversal of the disclosure denial to:
>
> Attn: County Board Chairperson
> C/O County Administrator
> 990 Terrace, 4th Floor
> Muskegon, MI 49442

MCLA 15.240: (1) if a public body makes a final determination to deny a request or a portion thereof, the requesting person may commence an action in the Circuit Court to compel disclosure of the public records. If the court determines that the public records are not exempt from disclosure, the court shall order the public body to cease withholding or to produce a public record or a portion thereof wrongfully withheld, regardless of the location of the public record...the court shall determine the matter de novo and the burden is on the public body to sustain its denial...Failure to comply with an order of the court may be punished as contempt of court...(4) if a person asserting the right to inspect or to receive a copy of a public record or a portion thereof prevails in an action commenced pursuant to this section, the court shall award reasonable attorney's fees, costs and disbursements. If the person prevails in part, the court may in its discretion award reasonable attorneys' fees, costs, and disbursements or an appropriate portion there...(5) in an action commenced pursuant to this section, if the circuit court finds that the public body has arbitrarily and capriciously violated this act by refusal or delay in disclosing or providing copies of a public records, the court shall, in addition to any actual or compensatory damages, award punitive damages in the amount of $500.00 to the person seeking the right to inspect or receive a copy of a public record...

Approved by: _Daniel R Stout_                Date: _4/14/16_

County of Muskegon FOIA Policy: Response Form

**11**

**County:** Keep original and provide copy of both sides, along with Public Summary, to requestor at no charge.

County of Muskegon
990 Terrace St., 4th Floor
Muskegon, MI  49442
Phone: (231) 724-6520

Denial Form

## Notice of Denial of FOIA Request
### Michigan Freedom of Information Act, Public Act 442 of 1976, MCL 15.231, *et seq.*

Request No.: _16-053 F_  Date Received: _4/14/16_
Date of This Notice: _4/14/16_
*(Please Print or Type)*

Check if received via: ☐ Email  ☐ Fax  ☐ Other Electronic Method
Date **delivered** to junk/spam folder: _____
Date **discovered** in junk/spam folder: _____

| Name  _Greg Kruse_ | Phone |
| Firm/Organization | Fax |
| Street  _5617 South Shore Drive_ | Email |
| City  _Whitehall_   State _MI_   Zip _49461_ | |

**Request for:** ☐ Copy  ☐ Certified copy  ☐ Record inspection  ☐ Subscription to record issued on regular basis

**Delivery Method:** ☐ Will pick up  ☐ Will make own copies onsite  ☐ Mail to address above  ☐ Email to address above
☐ Deliver on digital media provided by the County: _____

**Record(s) You Requested:** *(Listed here or see attached copy of original request)* _Copy of MCSD Report_
_# 13-8756_

☐ **All**  OR  ☒ **Part** of your request for records has been denied. Please refer to this form for an explanation. If you have any questions regarding this denial, contact _____ at _____

### Reason for Denial:

☐ **1. Exempt from Disclosure:** This item is exempt from disclosure under FOIA Section 13, Subsection _____ *(insert number)*, because: _____

☐ **2. Record Does Not Exist:** This item does not exist under the name provided in your request or by another name reasonably known to the County. A certificate that the public record does not exist under the name given is attached. If you believe this record does exist, provide a description that will enable us to locate the record: _____

☒ **3. Redaction:** A portion of the requested record had to be separated or deleted (redacted) as it is exempt under FOIA Section 13, Subsection _(1)(a)_ *(insert number)*, because: _personal information_

A brief description of the information that had to be separated or deleted: _addresses, phone numbers &_
_Dates of Birth, physical descriptions_

### Notice of Requestor's Right to Seek Judicial Review

You are entitled under Section 10 of the Michigan Freedom of Information Act, MCL 15.240, to appeal this denial to the County Board of Commissioners or to commence an action in the Circuit Court to compel disclosure of the requested records if you believe they were wrongfully withheld from disclosure. If, after judicial review, the court determines that the County has not complied with MCL 15.235 in making this denial and orders disclosure of all or a portion of a public record, you have the right to receive attorneys' fees and damages as provided in MCL 15.240. (*See back of this form for additional information on your rights.*)

Signature of FOIA Coordinator: _Daniel R Stout_                         Date: _4/14/16_

**12**

## INCIDENT/INVESTIGATION REPORT

** *Contains Restricted Names* **

| | |
|---|---|
| Agency Name *Muskegon County Sheriff* | Case# *2013-08756* |
| ORI *MI 6116100* | Date / Time Reported *11/20/2013 14:56 Wed* |

**INCIDENT DATA**

| | | |
|---|---|---|
| Location of Incident ██████████ | Premise Type *Residence/home* | Zone/Tract FL |
| | Last Known Secure *11/20/2013 14:56 Wed* | |
| | At Found *11/20/2013 14:56 Wed* | |

| #1 | Crime Incident(s) *Local Ordinance* **LOCAL ORD** (Com) | Weapon / Tools | Activity |
|---|---|---|---|
| | | Entry / Exit / Security | |
| #2 | Crime Incident ( ) | Weapon / Tools | Activity |
| | | Entry / Exit / Security | |
| #3 | Crime Incident ( ) | Weapon / Tools | Activity |
| | | Entry / Exit / Security | |

**MO**

**VICTIM**

# of Victims *0*  Type: ___  Injury: ___

| V1 | Victim/Business Name (Last, First, Middle) | Victim of Crime # | DOB / Age | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
|---|---|---|---|---|---|---|---|---|
| | Home Address | | | | | | Home Phone | |
| | Employer Name/Address | | | Business Phone | | Mobile Phone | | |

| VYR | Make | Model | Style | Color | Lic/Lis | VIN |
|---|---|---|---|---|---|---|

**OTHERS INVOLVED**

CODES: V- Victim (Denote V2, V3)  O = Owner (if other than victim)  R = Reporting Person (if other than victim)

Type: __ INDIVIDUAL/ NOT LAW ENFORCEMENT  Injury: ___

| Code RP | Name (Last, First, Middle) *ST AMOUR, SAM EARL Restricted* | Victim of Crime # | DOB / Age | Race | Sex M | Relationship To Offender | Resident Status | Military Branch/Status |
|---|---|---|---|---|---|---|---|---|
| | Home Address ██████ | | | | | | Home Phone | |
| | Employer Name/Address ██████ | | | Business Phone ██████ | | Mobile Phone ██████ | | |

Type: __ BUSINESS  Injury: ___

| Code RP | Name (Last, First, Middle) *FRUITLAND TOWNSHIP HALL* | Victim of Crime # | DOB / Age | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
|---|---|---|---|---|---|---|---|---|
| | Home Address *4545 Nestrom Rd Fruitland Township, MI 49461* | | | | | | Home Phone *231-766-3208* | |
| | Employer Name/Address | | | Business Phone | | Mobile Phone | | |

**PROPERTY**

1 = None  2 = Burned  3 = Counterfeit / Forged  4 = Damaged / Vandalized  5 = Recovered  6 = Seized  7 = Stolen  8 = Unknown
("OJ" = Recovered for Other Jurisdiction)

| VI# | Code | Status Frm/To | Value | OJ | QTY | Property Description | Make/Model | Serial Number |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

| | | |
|---|---|---|
| Officer/ID# *ASHKER, JACOB J  (MCSDJJA1)* | | |
| Invest ID# *(0)* | | Supervisor *RIDOUT, ERIC D  (MCSDEDR1)* |

**Status**

| Complainant Signature | Case Status *Arrest* *11/21/2013* | Case Disposition: | Page 1 |
|---|---|---|---|

| R_CS1IBR | Printed By: MCSDPAC1, | Sys#: 433215 | 04/14/2016 10:38 |
|---|---|---|---|

**13**

## INCIDENT/INVESTIGATION REPORT

*Muskegon County Sheriff*

Case # *2013-08756*

| Status Codes | | 1 = None   2 = Burned   3 = Counterfeit / Forged   4 = Damaged / Vandalized   5 = Recovered   6 = Seized   7 = Stolen   8 = Unknown | | | | |
|---|---|---|---|---|---|---|
| | IBR | Status | Quantity | Type Measure | Suspected Type | |
| D R U G S | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Assisting Officers

Suspect Hate / Bias Motivated:

## INCIDENT/INVESTIGATION REPORT

Narr. (cont.)  OCA: 2013-08756

*Muskegon County Sheriff*

**N A R R A T I V E**

Per request of township, subject cited for alleged zoning permit violation.



# REPORTING OFFICER NARRATIVE

| *Muskegon County Sheriff* | | OCA<br>*2013-08756* |
|---|---|---|
| Victim | Offense<br>*LOCAL ORDINANCE* | Date / Time Reported<br>*Wed 11/20/2013 14:56* |

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**INFORMATION:**

I was contacted by Fruitland Township in reference to an alleged zoning violation that occurred at ███████████
██. I was assisted by Dep Medendorp.

**CONTACT COMPLAINANT(FRUITLAND TWP SUPV SAM ST. AMOUR):**

Sam reports that recently a fence issue has arisen ██████████████████████████████. Sam
indicates that recently the Fruitland Twp Zoning Administrator Don Sandel attempted to get Greg Kruse of
█████████ to fill out an application for a zoning permit for a fence. Sam reports that to date, Mr. Kruse still has not
filled out the proper zoning permit application over the fence and refuses to. Sam states that Fruitland Twp requests
that Greg Kruse be issued a ticket for violation of Article 20.

**CITATION ISSUED:**

Myself and Deputy Medendorp went to █████████ and contacted Greg Kruse. He was issued a civil
infraction ticket( Ticket #0003) for Article 20 of the Fruitland Twp Zoning Ordinance, " Fail to Comply with Zoning
Permit Application." Kruse was given a copy of the violation and told to contact Fruitland Twp for further in the
matter. Kruse accepted the ticket without incident.

**STATUS: CLOSED**

87480 Dep Ashker



---

Reporting Officer: *ASHKER, JACOB J*
*R_CS3NC*      Printed By: MCSDPAC1,      04/14/2016 10:38      Page 3

# Incident Report Suspect List

*Muskegon County Sheriff*

OCA: *2013-08756*

| 1 | Name (Last, First, Middle) *KRUSE, GREGORY ARTHUR* | Also Known As | Home Address ███████ |
|---|---|---|---|
| | Business Address ███████ | | |

| DOB | Age | Race | Sex *M* | Eth | Hgt | Wgt | Hair | Eye | Skin | Driver's License / State ███████ |
|---|---|---|---|---|---|---|---|---|---|---|

Scars, Marks, Tattoos, or other distinguishing features

| *Reported Suspect Detail* | Suspect Age | Race | Sex | Eth | Height | Weight | SSN |
|---|---|---|---|---|---|---|---|

| Weapon, Type | Feature | Make | Model | Color | Caliber | Dir of Travel |
|---|---|---|---|---|---|---|
| | | | | | | Mode of Travel |

| VehYr/Make/Model | Drs | Style | Color | Lic/St | VIN |
|---|---|---|---|---|---|

Notes

Physical Char

███████

**/6**

## CASE SUPPLEMENTAL REPORT

Printed: 04/14/2016  10:38

*Muskegon County Sheriff*

OCA: **201308756**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

| | | |
|---|---|---|
| Case Status: *ARREST* | Case Mng Status: *CLOSED* | |
| Offense: *LOCAL ORDINANCE* | | Occurred: *11/20/2013* |

| | |
|---|---|
| Investigator: *ASHKER, JACOB J   (MCSDJJA1)* | Date / Time: *08/10/2014 18:29:00, Sunday* |
| Supervisor: *HERREMANS, PATRICK N   ...* | Supervisor Review Date / Time: *08/13/2014 15:10:38, Wednesday* |
| Contact: | Reference: *Supplement* |

INFORMATION:

I attached more photos to the original report.

PHOTOS:

I took more scene photos of the fence in question on 8-8-14.

STATUS: CLOSED

87480 Dep Ashker

# 17

Investigator Signature                    Supervisor Signature



D462164

D462167



| | State of Michigan Uniform Law Citation | Ticket No. D 462164 | | ☐ Victim Involved |
|---|---|---|---|---|

DOT #

Incident No.     Dept. No.

The People of: ☐ the State of Michigan   Local Use/Arrest No.   Detection Device
☐ Township ☐ City ☐ Village ☐ County

BAC

THE UNDERSIGNED SAYS THAT ON.   Month   Day   Year   At approximately ☐ A.M. ☐ P.M.   Date of Birth   Month Day Year

☐ Oper./Chauff. Driver License Number    SSN (last 4 digits)
☐ CDL

Race   Sex   Height   Weight   Hair   Eyes   Occupation/Employer

Name (First, Middle, Last)

Street

City    State    Zip Code

Vehicle Plate No.   Year   State   Vehicle Description (Year, Make, Color)   Veh. Type

THE PERSON NAMED ABOVE, in violation of ☐ Local Ordinance ☐ State Law ☐ Administrative Rule

ON

OR NEAR

WITHIN ☐ CITY ☐ VILLAGE ☐ TOWNSHIP OF
COUNTY OF    **MUSKEGON**    DID THE FOLLOWING

MCL Cite/PACC Code/    Charge

| Type | Ordinance | Description (include any bond amount collected on each charge) | No. |
|---|---|---|---|
| C/I ☐ Warn<br>Misd ☐ Fug<br>Fel ☐ Waiv | ☐ Authorization pend. | *ART 30*   FAIL TO COMPLY W/ ZONING PERMIT APPLICATION | 1 |
| C/I ☐ Warn<br>Misd ☐ Fug<br>Fel ☐ Waiv | ☐ Authorization pend. | | 2 |
| C/I ☐ Warn<br>Misd ☐ Fug<br>Fel ☐ Waiv | ☐ Authorization pend. | | 3 |

TO THE COURT: Do not arraign on a felony charge until an authorized complaint is filed.

Offense Code(s)

Key for Type: C/I = Civil Infraction   Misd = Misdemeanor   Fel = Felony   Warn = Warning   Fug = Fugitive   Waiv = Violation for Which Fines/Costs May be Waived   Authorization pend. = Authorization pending

Remarks:

CHECK IF APPROPRIATE ☐ Damage to Property ☐ Local Court Bond $
☐ Vehicle Impounded ☐ Injury ☐ License Posted in Lieu of Bond
☐ Traffic Crash ☐ Death ☐ Appearance Certificate
Person in Active Military Service ☐ Yes ☐ No ☐ None

SEE DATE BELOW. SEE BACK OF CITATION FOR EXPLANATION AND INSTRUCTIONS

Appearance Date on or before   6-12 DAYS

Hearing Date (if applicable) on    ☐ Contact Court
☐ Juvenile Traffic Misd. (Court will Notify)   ☐ Formal Hearing Required. (Court will Notify)

In the   **60TH DISTRICT**   Court of   **MUSKEGON COUNTY**
Court Address & Phone Number
**(231) 724-6302**
**60th District Court**
**990 Terrace, Muskegon, Michigan 49442**
**Pay online: www.co.muskegon.mi.us/60thdistrict**

I served a copy of the civil infraction complaint upon the defendant or owner/occupant by posting if applicable).
I declare under the penalties of perjury that the statements above are true to the best of my information, knowledge, and belief.

Complainant's Signature and receipt if applicable   Month   Day   Year

Officer's Name (printed)    Officer's ID No.

Agency ORI    Agency Name

---

| | State of Michigan Uniform Law Citation | Ticket No. D 462167 | |
|---|---|---|---|

US DOT #

Incident No.    Dept. No.

The People of: ☐ the State of Michigan   Local Use/Arrest No.   Detection De
☐ Township ☐ City ☐ Village ☐ County

BAC

OF

THE UNDERSIGNED SAYS THAT ON.   Month   Day   Year   At approximately ☐ A.M. ☐ P.M.   Date Birth   Month Day

State ☐ Oper./Chauff. Driver License Number    SSN (last 4 digits)
☐ CDL

Race   Sex   Height   Weight   Hair   Eyes   Occupation/Employer

Name (First, Middle, Last)

Street

City    State    Zip

Vehicle Plate No.   Year   State   Vehicle Description (Year, Make, Color)

THE PERSON NAMED ABOVE, in violation of ☐ Local Ordinance ☐ State Law ☐ Administra

UPON

AT OR NEAR

WITHIN ☐ CITY ☐ VILLAGE ☐ TOWNSHIP OF
COUNTY OF    **MUSKEGON**    DID THE FOL

MCL Cite/PACC Code/    Charge

| Type | Ordinance | Description (include any bond amount collected on each charge) | No. |
|---|---|---|---|
| C/I ☐ Warn<br>Misd ☐ Fug<br>Fel ☐ Waiv | ☐ Authorization pend. | | |
| C/I ☐ Warn<br>Misd ☐ Fug<br>Fel ☐ Waiv | ☐ Authorization pend. | | |
| C/I ☐ Warn<br>Misd ☐ Fug<br>Fel ☐ Waiv | ☐ Authorization pend. | | |

TO THE COURT: Do not arraign on a felony charge until an authorized complaint is filed.

Offense Code(s)

Key for Type: C/I = Civil Infraction   Misd = Misdemeanor   Fel = Felony   Warn = Warning   Fug = Waiv = Violation for Which Fines/Costs May be Waived   Authorization pend. = Authorization pen

Remarks:

CHECK IF APPROPRIATE ☐ Damage to Property ☐ Local Court Bond $
☐ Vehicle Impounded ☐ Injury ☐ License Posted in Lieu of Bond
☐ Traffic Crash ☐ Death ☐ Appearance Certificate
Person in Active Military Service ☐ Yes ☐ No ☐ None

SEE DATE BELOW. SEE BACK OF CITATION FOR EXPLANATION AND INSTRUCTIONS

Appearance Date on or before

Hearing Date (if applicable) on    ☐ Contact Court
☐ Juvenile Traffic Misd. (Court will Notify)   ☐ Formal Hearing Required. (Court will Notify)

In the   **60TH DISTRICT**   Court of   **MUSKEGON COUNTY**
Court Address & Phone Number
**(231) 724-6302**
**60th District Court**
**990 Terrace, Muskegon, Michigan 49442**
**Pay online: www.co.muskegon.mi.us/60thdistrict**

I served a copy of the civil infraction complaint upon the defendant or owner/occupant by posting if applicable).
I declare under the penalties of perjury that the statements above are true to the best of my information, knowledge, and belief.

Complainant's Signature and receipt if applicable   Month   Day   Year

Officer's Name (printed)    Officer's ID No.

Agency ORI    Agency Name



8 of 9

18

**REVISED JUDICATURE ACT OF 1961 (EXCERPT)**
**Act 236 of 1961**

**600.8713 Materially false statement; penalty.**
Sec. 8713. An authorized local official who, knowing the statement is false, makes a materially false statement in a citation issued under section 8707 is guilty of perjury, a felony punishable by imprisonment for not more than 15 years, and in addition is in contempt of court.

History: Add. 1994, Act 12, Eff. May 1, 1994.



| STATE OF MICHIGAN<br>60TH JUDICIAL DISTRICT<br>ORI610025J<br>PIN: 13-8156 | **REGISTER OF ACTIONS** | X-REFERENCE #:  14D462164<br>STATUS: CLSD     02/04/14 |

JUDGE OF RECORD:

JUDGE: VAN EPPS,MICHAEL J.    P-38491

STATE/COUNTY v

KRUSE/GREGORY/ARTHUR
5617 SOUTH SHORE
WHITEHALL          MI 49461

CTN:
TCN:
SID:
ENTRY DATE: 01/16/14
**OFFENSE DATE:** 11/20/13   256 PM

DEFENDANT PHONE: (231) 893-1741      VEHICLE TYPE:          VPN:
DOB: 06/22/1959  SEX: M  RACE: W  DLN: MI K620288071477   CDL: N
VEH YR:    VEH MAKE:      VIN:                 PAPER PLATE:

OFFICER: ASHKER/JACOB                   DEPT: MUSKEGON COUNTY SHERIFF D
                                        DEPT: MUSKEGON COUNTY SHERIFF D
PROSECUTOR:
VICTIM/DESC:                            VENUE: STATE/COUNTY

COUNT  1 C/M/F: C FLT 20.06A                ORD#FLT 20.06A
ZONING-FAIL TO OBTAIN ZONING PERMIT
ARRAIGNMENT DATE:          PLEA:   DENY RESPONS   PLEA DATE: 01/16/14
FINDINGS:  DISM BY PTY   DISPOSITION DATE: 02/04/14
SENTENCING DATE:

| FINE | COST | ST.COST | CON | MISC. | REST | TOT FINE | TOT DUE |
|------|------|---------|-----|-------|------|----------|---------|
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

JAIL SENTENCE:              PROBATION:
VEH IMMOB START DATE:        NUMBER OF DAYS:       VEH FORFEITURE:

| DATE | ACTIONS, JUDGMENTS, CASE NOTES | | INITIALS |
|------|-------------------------------|---|----------|
| 11/20/13 | | | |
| 1  ORIGINAL CHARGE | ZONING-PERMT | | LAS |
| ORDINANCE FINE | | $    95.00 | LAS |
| STATE COSTS - NON-TRAFFIC | CIVIL INFRACTION | $    10.00 | LAS |
| DUE DATE | 013014 | | LAS |
| 01/16/14 | | | |
| FILING DATE | 123013 | | LAS |
| 5617 SOUTH SHORE FRUITLAND TWP | | | LAS |
| MISCELLANEOUS ACTION | ALL COUNTS | | LAS |
| DENIED RESPONSIBILITY | | | LAS |
| SCHEDULED FOR REVIEW | 021814 | | LAS |
| DEFENDANT REQUESTS INFORMAL HEARING | | | LAS |
| 01/17/14 | | | |
| MISCELLANEOUS ACTION | ALL COUNTS | | DKD |
| REMOVED FROM DOCKET | 021814 | | DKD |
| MISCELLANEOUS ACTION | ALL COUNTS | | DKD |
| SCHEDULED FOR INFORMAL HEARING | 020614 | | DKD |
| 1  NOTICE TO APPEAR-CIVIL INFRACTION | ZONING-PERMT | | DKD |
| 02/04/14 | | | |
| 1  MISCELLANEOUS ACTION | ZONING-PERMT | | PJM |
| MAG  VAN EPPS,MICHAEL J. | | P-38491 | PJM |
| DISMISSED BY PARTY | | | PJM |
| DISMISSED ON MOTION OF COMPLAINANT | | | PJM |

I HEREBY CERTIFY that this copy is a true
and correct copy of the original on file
in the office of the 60th District Court

60th District Court Clerk

By *Christina Scott*
      Deputy Clerk

186

**18 U.S.C.**
United States Code, 2011 Edition
Title 18 - CRIMES AND CRIMINAL PROCEDURE
PART I - CRIMES
CHAPTER 13 - CIVIL RIGHTS
Sec. 242 - Deprivation of rights under color of law
From the U.S. Government Printing Office, www.gpo.gov

## §242. Deprivation of rights under color of law

Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

(June 25, 1948, ch. 645, 62 Stat. 696; Pub. L. 90–284, title I, §103(b), Apr. 11, 1968, 82 Stat. 75; Pub. L. 100–690, title VII, §7019, Nov. 18, 1988, 102 Stat. 4396; Pub. L. 103–322, title VI, §60006(b), title XXXII, §§320103(b), 320201(b), title XXXIII, §330016(1)(H), Sept. 13, 1994, 108 Stat. 1970, 2109, 2113, 2147; Pub. L. 104–294, title VI, §§604(b)(14)(B), 607(a), Oct. 11, 1996, 110 Stat. 3507, 3511.)

### HISTORICAL AND REVISION NOTES

Based on title 18, U.S.C., 1940 ed., §52 (Mar. 4, 1909, ch. 321, §20, 35 Stat. 1092).

Reference to persons causing or procuring was omitted as unnecessary in view of definition of "principal" in section 2 of this title.

A minor change was made in phraseology.

### AMENDMENTS

**1996**—Pub. L. 104–294, §607(a), substituted "any State, Territory, Commonwealth, Possession, or District" for "any State, Territory, or District".

Pub. L. 104–294, §604(b)(14)(B), repealed Pub. L. 103–322, §320103(b)(1). See 1994 Amendment note below.

**1994**—Pub. L. 103–322, §330016(1)(H), substituted "shall be fined under this title" for "shall be fined not more than $1,000" after "citizens,".

Pub. L. 103–322, §320201(b), substituted "any person in any State" for "any inhabitant of any State" and "on account of such person" for "on account of such inhabitant".

Pub. L. 103–322, §320103(b)(2)–(5), substituted "bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall

*18c*

```
STATE OF MICHIGAN                                    CASE NO:  14D462167  D01 OI
60TH JUDICIAL DISTRICT      REGISTER OF ACTIONS      X-REFERENCE #:  14D462167
ORI610025J                                           STATUS: CLSD      08/22/14
PIN: 13-8156
```

|                    | JUDGE OF RECORD: | CLOSZ,HAROLD F.,III | P-28260 |
|                    | JUDGE:           | CLOSZ,HAROLD F.,III | P-28260 |

FRUITLAND TP v

```
                                                    CTN:
   KRUSE/GREGORY/ARTHUR                              TCN:
   5617 SOUTH SHORE                                  SID: 1070519W
   WHITEHALL        MI 49461                  ENTRY DATE: 03/13/14
                                            OFFENSE DATE: 11/20/13   256 PM
DEFENDANT PHONE: (231) 893-1741    VEHICLE TYPE:       VPN:
DOB: 06/22/1959  SEX: M  RACE: W  DLN: MI K620288071477  CDL: N
VEH YR:       VEH MAKE:        VIN:              PAPER PLATE:
```

```
DEFENSE ATTORNEY ADDRESS              BAR NO.
PRO PER,*,                            #  999
                                     Telephone No.
```

```
OFFICER: ASHKER/JACOB                 DEPT: MUSKEGON COUNTY SHERIFF D
                                      DEPT: MUSKEGON COUNTY SHERIFF D
PROSECUTOR: HUSS,KEVIN M.,             P-72149
VICTIM/DESC:                          VENUE: FRUITLAND TP
```

**COUNT  1** C/M/F: C FLT 20.06A                 ORD#FLT 20.06A
**ZONING-FAIL TO OBTAIN ZONING PERMIT**
ARRAIGNMENT DATE:          PLEA:    DENY RESPONS   PLEA DATE: 03/14/14
FINDINGS:  FND NOT RESP   DISPOSITION DATE: 08/19/14
SENTENCING DATE:

| FINE | COST | ST.COST | CON | MISC. | REST | TOT FINE | TOT DUE |
|------|------|---------|-----|-------|------|----------|---------|
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

```
        JAIL SENTENCE:              PROBATION:
VEH IMMOB START DATE:           NUMBER OF DAYS:       VEH FORFEITURE:
```

**BOND HISTORY:**

| RCPT DT | NO. | ACTION | TYPE | CHECK | AMOUNT | STAT | CLRK |
|---------|-----|--------|------|-------|--------|------|------|
| 4/07/14 | D464477 | 4/07/14 | CASH | | 100.00 | CLSD | CFS |
| | | 8/22/14 | BND REFUNDED | 1108633 | 100.00 | | KJW |
| 6/11/14 | D369719 | 6/11/14 | CASH | | 25.00 | CLSD | DKD |
| | | 12/10/14 | BND REFUNDED | 1109280 | 25.00 | | CFS |

| DATE | ACTIONS, JUDGMENTS, CASE NOTES | | INITIALS |
|------|-------------------------------|--|----------|

```
11/20/13
   1   ORIGINAL CHARGE          ZONING-PERMT                        PJM
       ORDINANCE FINE                         $    95.00            PJM
       STATE COSTS - NON-TRAFFIC CIVIL INFRACTION  $   10.00        PJM
       DUE DATE                 032714                              PJM
03/13/14
       FILING DATE              022014                              PJM
03/14/14
       DEF TX - $ & DD GIVEN                                        DKD
       MISCELLANEOUS ACTION     ALL COUNTS                          DKD
       DENIED RESPONSIBILITY                                        DKD
       SCHEDULED FOR REVIEW     041414                              DKD
       DEFENDANT REQUESTS INFORMAL HEARING                          DKD
03/19/14
```

*I HEREBY CERTIFY that this copy is a true and correct copy of the original on file with the office of the 60th District Court Clerk.*

*60th District Court Clerk*

*By Christina Scott*

*Deputy Clerk*

**19**

NAME: KRUSE/GREGORY/ARTHUR                CASE NO: 14D462167    PAGE   2

| DATE | ACTIONS, JUDGMENTS, CASE NOTES | | | INITIALS |
|------|------|------|------|------|
| | MISCELLANEOUS ACTION | ALL COUNTS | | DKD |
| | REMOVED FROM DOCKET | 041414 | | DKD |
| | MISCELLANEOUS ACTION | ALL COUNTS | | DKD |
| | SCHEDULED FOR INFORMAL HEARING | | | |
| | | 040314  130P  VAN EPPS,MICHAEL J.  P-38491 | | DKD |
| 1 | NOTICE TO APPEAR-CIVIL INFRACTION GENERATED | | | |
| | | ZONING-PERMT | | DKD |
| 04/03/14 | | | | |
| 1 | INFORMAL HEARING HELD | ZONING-PERMT | | DKD |
| | FOUND RESPONSIBLE AT HEARING | | | DKD |
| | SENTENCE | | $     100.00 | DKD |
| | RESPONS @ IH | | | DKD |
| | APPEAL DATE 4/10/14 | | | DKD |
| | ORDINANCE FINE | | $       5.00- | DKD |
| | PAYMENT DUE | 050514 | | DKD |
| 04/07/14 | | | | |
| 1 | MONETARY TRANSACTION | ZONING-PERMT | | CFS |
| | CASH | | $     100.00 | CFS |
| | BOND POSTED | | $     100.00  D464477 | CFS |
| 1 | CASH TENDERED | | | CFS |
| | MISCELLANEOUS ACTION | ALL COUNTS | | PJM |
| | APPEAL FROM INFORMAL HEARING TO FORMAL HEARING FILED | | | PJM |
| 04/10/14 | | | | |
| 1 | DEFAULT JUDGMENT GENERATED | | | |
| | | ZONING-PERMT | | |
| | PENALTY ADDED-ORDINANCE | ZONING-PERMT | $      25.00 | |
| 04/11/14 | | | | |
| 1 | DISPOSITION REMOVED | ZONING-PERMT | | DKD |
| | NOTICE NOT SENT | | | LAS |
| | MISCELLANEOUS ACTION | ZONING-PERMT | | DKD |
| | SUPPLEMENTAL SENTENCING | | $      25.00- | DKD |
| | DEFAULTED IN ERROR | | | DKD |
| | NOT DISPOSED YET | | | DKD |
| | PENALTY ADDED-ORDINANCE | | $      25.00- | DKD |
| | MISCELLANEOUS ACTION | ZONING-PERMT | | DKD |
| | SCHEDULED FOR REVIEW | 042514 | | DKD |
| 04/28/14 | | | | |
| | MISCELLANEOUS ACTION | ALL COUNTS | | PJM |
| | SCHEDULED FOR REVIEW | 052814 | | PJM |
| | DEFENDANT REQUESTS FORMAL HEARING | | | PJM |
| | JUDGE OF RECORD/MAGISTRATE CHANGED | | | PJM |
| | FROM: 00000 NO SPECIFIC JUDGE | | | PJM |
| | TO: 28260 CLOSZ,HAROLD F.,III | | | PJM |
| 04/29/14 | | | | |
| | MISCELLANEOUS ACTION | ALL COUNTS | | CRJ |
| | JDG  CLOSZ,HAROLD F.,III | | P-28260 | CRJ |
| | PROS EVEN,KEVIN B., | | P-38599 | CRJ |
| | ATT  PRO PER,*, | | #   999 | CRJ |
| | SCHEDULED FOR FORMAL HEARING | | | |
| | | 060414  930A  CLOSZ,HAROLD F.,III  P-28260 | | JAB |
| | MISCELLANEOUS ACTION | ALL COUNTS | | CRJ |
| | MISCELLANEOUS ACTION | ALL COUNTS | | JAB |
| | NOTICE TO APPEAR GENERATED | | | |

**20**

NAME: KRUSE/GREGORY/ARTHUR             CASE NO: 14D462167     PAGE   3

| DATE | ACTIONS, JUDGMENTS, CASE NOTES | INITIALS |
|------|-------------------------------|----------|

                          ALL COUNTS                            JAB
05/01/14
        DEF CALLED RE: MOTIONS FILED. GETTING FILE            VKR
        TO LOOK THAT UP.                                      VKR
        MOTIONS FILED ON 4/7/14 W/CFS - EX PARTE              VKR
        W/SUBPOENA LIST AND WAVIER OF FEES FOR                VKR
        WITNESS LIST-BROUGHT TO JUDGE CLOSZ. NO               VKR
        ACTION TAKEN PER JUDGE. CALLED DEF BACK               VKR
05/05/14
        DEFT @ COUNTER W/MOTIONS TO FILE ON HIS               JAB
        CASE - WANTS TO HAVE A PRE-TRIAL BEFORE               JAB
        HIS HEARING - MOTIONS ON FILE & TO JUDGE              JAB
        WAIVER/SUSPENSION OF FEES & COSTS FILED               PSP
         & SIGNED BY JUDGE CLOSZ                              PSP
        ORDER SETTING INITIAL PRETRIAL CONFERENCE             PSP
         FILED W/CERTIFICATE OF SERVICE                       PSP
05/12/14
        ORDER SETTING INITIAL PRETRIAL CONFERENCE             PSP
         DENIED BY JUDGE                                      PSP
05/15/14
        SMITH HAUGHE ATTORNEY MAILED FILING FEE $20           LAS
        CHECK WAS RETURNED. NO FEE NECESSARY                  LAS
        MISCELLANEOUS ACTION      ALL COUNTS                  TLB
        SCHEDULED FOR MOTION HEARING
                          052814 1030A   CLOSZ,HAROLD F.,III  P-28260   TLB
        NOTICE OF HEARING FILED                               TLB
        PROOF OF SERVICE FILED                                TLB
        PLAINTIFF'S MOTION TO ADJOURN FORMAL                  TLB
        HEARING & ORDER GRANTING MOTION FILED                 TLB
05/22/14
        MISCELLANEOUS ACTION      ALL COUNTS                  TLB
        NOTICE OF HEARING FILED                               TLB
        PROOF OF SERVICE FILED                                TLB
        DISMISSAL OF THIS MERITLESS MALICIOUS                 TLB
        ACTION/LACK OF PROGRESS & MOTION TO SET               TLB
        INITIAL PRETRIAL CONFERENCE FILED                     TLB
05/23/14
        *****CCH*****                                         SMC
        SID ADDED                                             SMC
      1 MISCELLANEOUS ACTION      ZONING-PERMT                TLB
        NOTICE OF HEARING FILED                               TLB
        PROOF OF SERVICE FILED                                TLB
        COSTS OF PREVIOUSLY DISMISSED ACTION/STAY             TLB
        ACTION MOTION #3 FILED                                TLB
05/27/14
        DEF CALLED IN TO CONFIRM THE MOTION HEARING           TLB
        SET FOR TOMORROW                                      TLB
        CT NOTIF - LEFT RECORDED MESS @  2:47                 PJR
        CT NOTIF - LEFT RECORDED MESS @  2:47                 PJR
05/28/14
        HEARING ON MOTION HELD      ALL COUNTS                PSP
        JDG  CLOSZ,HAROLD F.,III                     P-28260  PSP
        SUPPLEMENTAL SENTENCING                               PSP

21

NAME: KRUSE/GREGORY/ARTHUR      CASE NO: 14D462167    PAGE   4

| DATE | ACTIONS, JUDGMENTS, CASE NOTES | | | | | INITIALS |
|------|-------------------------------|---|---|---|---|----------|
| | MOTION TO DISMISS "DENIED" | | | | | PSP |
| | MOTION TO ADJUOURN "GRANTED" | | | | | PSP |
| | RECORDED BY LORI KING CER #6092 | | | | | PSP |
| | (ATTY HUSS FOR KEVIN EVEN) | | | | | PSP |
| 1 | MISCELLANEOUS ACTION     ZONING-PERMT | | | | | TLB |
| | ORDER GRANTING PLAINTIFF'S MOTION TO | | | | | TLB |
| | ADJOURN FORMAL HEARING GIVEN TO JUDGE FOR | | | | | TLB |
| | SIGNATURE | | | | | TLB |
| | 2 CONFORMED COPIES OF ORDER IN ATTY'S MAIL | | | | | CFS |
| | BOX W/NOTICE OF NEW DATE | | | | | CFS |
| | MISCELLANEOUS ACTION     ALL COUNTS | | | | | PSP |
| | SCHEDULED FOR FORMAL HEARING | | | | | |
| | | 061814 | 930A | CLOSZ,HAROLD F.,III | P-28260 | PSP |
| | MISCELLANEOUS ACTION     ALL COUNTS | | | | | LLK |
| | REMOVED FROM DOCKET | 060414 | 930A | CLOSZ,HAROLD F.,III | P-28260 | LLK |
| 05/29/14 | | | | | | |
| | MISCELLANEOUS ACTION     ALL COUNTS | | | | | SLT |
| | SCHEDULED FOR REVIEW     060514 | | | | | SLT |
| | NOTICE OF INTENT TO SUBMIT PROPOSED ORDER | | | | | SLT |
| | TO COURT FOR ENTRY FILED | | | | | SLT |
| | ORDER FILED | | | | | SLT |
| 06/05/14 | | | | | | |
| | MISCELLANEOUS ACTION     ALL COUNTS | | | | | SLT |
| | JDG   CLOSZ,HAROLD F.,III | | | | | SLT |
| | PROS HUSS,KEVIN M., | | | | P-28260 | SLT |
| | ATT   PRO PER,*, | | | | P-72149 | SLT |
| | ORDER DENYING DEFENDANT'S MOTIONS DENIED | | | | #    999 | SLT |
| | FOR REASONS SET FORTH ON THE RECORD ON | | | | | SLT |
| | 5-28-14. | | | | | SLT |
| | COPIES OF SIGNED ORDER TO PROS/DEFT. | | | | | SLT |
| 06/06/14 | | | | | | |
| | MAIL PAYMENT RECEIVED | | | | | JAB |
| | $25. | | | | | JAB |
| 06/09/14 | | | | | | |
| | MISCELLANEOUS ACTION     ALL COUNTS | | | | | SLT |
| | PROOF OF SERVICE FILED | | | | | SLT |
| | FOR ORDER DENYING MOTION | | | | | SLT |
| 1 | PARTIAL PAYMENT MADE     ZONING-PERMT | | | | | DKD |
| | LINE #20 | | | | | DKD |
| | PAYMENT | | $ | 25.00 | D369520 | DKD |
| 1 | CHECK TENDERED     3546 | | | | | DKD |
| 06/11/14 | | | | | | |
| 1 | PARTIAL PAYMENT MADE     ZONING-PERMT | | | | | DKD |
| | VOID RECEIPT | | $ | 25.00- | D369718 | DKD |
| | SHOULD TO TO BOND | | | | | DKD |
| 1 | MONETARY TRANSACTION     ZONING-PERMT | | | | | DKD |
| | RE-RING OF RCPT # D369520 | | | | | DKD |
| | CASH | | $ | 25.00 | | DKD |
| | BOND POSTED | | $ | 25.00 | D369719 | DKD |
| 1 | CHECK TENDERED     3546 | | | | | DKD |
| 06/12/14 | | | | | | |
| | AFFIDAVIT/ORDER WAIVER/SUSPENSION OF FEES & | | | | | CFS |
| | COSTS PLUS CERTIFICATE OF SERVICE FILED. | | | | | CFS |

22

NAME: KRUSE/GREGORY/ARTHUR          CASE NO: 14D462167     PAGE    5

| DATE | ACTIONS, JUDGMENTS, CASE NOTES | INITIALS |
|------|-------------------------------|----------|

06/16/14
    DEFT CALLED TO CONFIRM CT DATE             LAS
    *****CCH*****
06/17/14                                       VKR
    CT NOTIF - LEFT RECORDED MESS @  9:48
06/18/14                                       PJR

```
06/16/14
        DEFT CALLED TO CONFIRM CT DATE                              LAS
        *****CCH*****
06/17/14                                                            VKR
        CT NOTIF - LEFT RECORDED MESS @  9:48
06/18/14                                                            PJR
        PROCEEDING HELD          ALL COUNTS
        JDG  CLOSZ,HAROLD F.,III                                    PSP
        PROS HUSS,KEVIN M.,                            P-28260      PSP
        SUPPLEMENTAL SENTENCING                        P-72149      PSP
        FORMAL HEARING ADJ - OFFICER NOT AVAILABLE                  PSP
         DUE TO MEDICAL                                             PSP
        RECORDED BY LORI KING CER #6092                             PSP
        APPLICATION FOR SUSPENSION OF COSTS NOT                     PSP
         APPLICABLE / "DENIED"                                      PSP
        BOND CONT'D                                                 PSP
        MISCELLANEOUS ACTION      ALL COUNTS                        PSP
        SCHEDULED FOR INFORMAL HEARING                              PSP
                      071514  930A  CLOSZ,HAROLD F.,III  P-28260    PSP
07/02/14
        MISCELLANEOUS ACTION      ALL COUNTS                        PSP
        REMOVED FROM DOCKET       071514  930A  CLOSZ,HAROLD F.,III  P-28260  PSP
        MISCELLANEOUS ACTION      ALL COUNTS                        PSP
        SCHEDULED FOR FORMAL HEARING
                      071514  930A  CLOSZ,HAROLD F.,III  P-28260    PSP
07/07/14
        DEF APPEARED TO FILE SOME PAPERS. ESCORTED                 CFS
        DEF TO CASE ASSIGNMENT                                     CFS
        MISCELLANEOUS ACTION      ALL COUNTS                       PJM
        NOTICE OF HEARING FILED                                    PJM
        DEF'T MOTION TO ADJOURN FORMAL HEARING                     PJM
        MISCELLANEOUS ACTION      ALL COUNTS                       PJM
        PROOF OF SERVICE FILED                                     PJM
        OBJECTION TO PROSECUTOR INITIATED/                         PJM
        CONDUCTED PRETRIAL CONFERENCE FILED                        PJM
07/14/14
        CT NOTIF - SPOKE TO DEFENDANT @  9:50                      PJR
07/15/14
        PROCEEDING HELD          ALL COUNTS
        JDG  CLOSZ,HAROLD F.,III                                   PSP
        PROS HUSS,KEVIN M.,                            P-28260     PSP
        SUPPLEMENTAL SENTENCING                        P-72149     PSP
        FORMAL HEARING ADJ - DEFT'S WITNESS & OFC                  PSP
         NO AVAILABLE                                              PSP
        RECORDED BY LORI KING CER #6092                            PSP
        MISCELLANEOUS ACTION      ALL COUNTS                       PSP
        SCHEDULED FOR FORMAL HEARING                               PSP
                      081214  930A  CLOSZ,HAROLD F.,III  P-28260   PSP
08/07/14
        MISCELLANEOUS ACTION      ALL COUNTS                       SLT
        REMOVED FROM DOCKET       081214  930A  CLOSZ,HAROLD F.,III  P-28260  SLT
        MISCELLANEOUS ACTION      ALL COUNTS                       SLT
        SCHEDULED FOR FORMAL HEARING                               SLT
```

23

NAME: KRUSE/GREGORY/ARTHUR          CASE NO: 14D462167     PAGE   6

| DATE | ACTIONS, JUDGMENTS, CASE NOTES | | | INITIALS |
|------|---------|---|---|----------|
| | 081914 1000A  CLOSZ,HAROLD F.,III  P-28260 | | | SLT |
| | NOTICE TO APPEAR GENERATED | | | |
| | ALL COUNTS | | | SLT |
| 08/11/14 | | | | |
| | DEFT CALLED. | | | LAS |
| 08/18/14 | | | | |
| | CT NOTIF - LEFT RECORDED MESS @  9:29 | | | DMW |
| 08/19/14 | | | | |
| 1 | FORMAL HEARING HELD       ZONING-PERMT | | | PSP |
| | JDG  CLOSZ,HAROLD F.,III | | P-28260 | PSP |
| | PREVIOUS DISPOSITION SET ASIDE/CASELOAD REOPENED | | | PSP |
| 1 | FOUND NOT RESPONSIBLE | | | PSP |
| | SENTENCE | $ | 100.00 | PSP |
| | RECORDED BY LORI KING CER #6092 | | | PSP |
| | CIVIL INFRACTION JUDGMENT GENERATED | | | |
| | ZONING-PERMT | | | PSP |
| | PROCEEDING HELD       ZONING-PERMT | | | PSP |
| | SUPPLEMENTAL SENTENCING | $ | 100.00- | PSP |
| | REMOVING F/C | | | PSP |
| | STATE COSTS - NON-TRAFFIC CIVIL INFRACTION | $ | 10.00- | PSP |
| | ORDINANCE FINE | $ | 90.00- | PSP |
| 08/22/14 | | | | |
| 1 | MISCELLANEOUS ACTION      ZONING-PERMT | | | KJW |
| | CASE CLOSED | | | KJW |
| | FILED IN CLOSED UNDER 08/22/14 | | | KJW |
| 12/02/14 | | | | |
| | CERTIFIED COPY OF ROA SENT TO GREG KRUSE | | | BLS |
| | 5617 SOUTH SHORE DRIVE, WHITEHALL, MI 49461 | | | BLS |
| 12/08/14 | | | | |
| | DEF TX ABOUT WHO THE PROSECUTOR WAS/ | | | LMS |
| | SENT HIM TO THEIR OFFICE | | | LMS |
| 12/10/14 | | | | |
| | DEF REQ ANOTHER CERT COPY OF ROA DUE TO | | | VKR |
| | CLERICAL ERROR REGARDING PROS THAT HAS BEEN | | | VKR |
| | CORRECTED. THIS COPY SENT NO CHARGE | | | VKR |

**24**

# RESPONSE TO REQUEST FOR PUBLIC RECORDS - FREEDOM OF INFORMATION ACT

## Fruitland Township

| Date of Response | FOIA Request |
|---|---|
| 8/2 -/1 4 | |
| Request Type: | |
| ☑ Original | ☐ Additional Info. |

Dear ) ) ; K ra se           12/22/14    emailed   12/22/14                    11/26/14
This letter is in response to your request dated 8/20/14 , received in this office on 8/22/14 for       document

☑ **COPIES**    ☐ **INSPECTION** of the following record(s):

See attached.

Your request for public records has been reviewed and the following action(s) has been taken in compliance with the provisions of the State of Michigan's Freedom of Information Act.

1. ☐ **REQUEST GRANTED:** This request involves too many documents to be processed within standard time frames. Your request will be processed as soon as staff have completed the copying. Township Staff, if this box is checked, you must provide another copy of this form when the documents are forwarded to the requestor. Also, check either box 2 or 3.

2. ☐ **REQUEST GRANTED AS TO EXISTING NON-EXEMPT RECORDS:** Your requested documents are enclosed. The cost to produce these records is ———. Please make payment at the Fruitland Township Hall. A good faith estimate of the cost to produce must be paid to the Township Clerk prior the records being copied in the amount of ———.

3. ☐ **REQUEST GRANTED IN PART and DENIED IN PART:** (See comments on next page).

4. ☐ **REQUEST DENIED:** This agency has determined that the record(s) you have requested are exempt from disclosure based on the provisions of the Freedom of Information Act (See comments on next page).

5. ☑ **REQUEST DENIED:** The record(s) you have requested do NOT exist within the records of this agency.
   already requested   response sent 8/25/14

6. ☐ **REQUEST DENIED:** Your request does NOT describe the record(s) sufficiently to enable us to determine what record(s) you are seeking. Please submit a new request describing the record(s) in greater detail.

7. ☐ The specific nature of your request involves unusual circumstances which require an additional 10 business days to properly process your request as provided by Sec. 6(5) of the Freedom of Information Act.

The extension due date is _____        The reason for this extension is:

---

**UNDER SECTION 10 OF THE FREEDOM OF INFORMATION ACT, IF A PUBLIC BODY MAKES A FINAL DETERMINATION TO DENY ALL OR A PORTION OF YOUR REQUEST, YOU MAY DO ONE OF THE FOLLOWING:**

(1) Submit to the head of the public body, a written letter that states the word "APPEAL" and identifies the reason or reasons for reversal of denial.

(2) Commence an action in the circuit court to compel the public body's disclosure of the public records within 180 days after a public body's final determination to deny a request.

(3) Pursuant to M 15.235(5)(4)(e) this serves as notice of the right to receive attorneys' fees and damages as provided in Section 10, if after judicial review, the circuit court were to order disclosure of all or a ortion of the document s re uested.

| Signature of FOIA Coordinator or Representative | Name of Responding Office |
|---|---|
| Kudlyn Rulling Clerk | FFCH Coordinator |

*See Reverse Side for additional information*

**25**

### Stamour Authorization IssuanceNotice of Violation#0003

Greg Kruse                                    Today November 26, 2014
5617 South Shore Drive   <1973>
Whitehall, MI. 49461

Karolyn Rillema, Clerk/Desingnated FOIA coordinator
Fruitland Township
4545 Nestrom Rd.
Whitehall, MI. 49461

Re: Stamour Authorization Motion Number Issuance Notice of Violation#0003

The Freedom of Information Act 15.231 say's that I can request an opportunity to obtain
copies of public records. Further say's per 15.233 Sec. 3. (6) The custodian of a public
record shall, upon written request, furnish a requesting person a certified copy of a public
record. So I am @ this time.

Document(s) specifically requested:

1.  Request for one (1) certified copy of original Fruitland Township Board motion
number authorizing supervisor sam earl stamour(9.12.08) to direct Muskegon County
Sheriff Department employee(s) PIN Jake Ashker(87480) and Kurt Medendorp(87259),
under the color of law, issue Notice of Violation Citation #0003 for alleged fence issue,
case #13-08756 reported @ 14:56 Wednesday November 20, 2013 by seated supervisor
sam earl stamour(9.12.08). (citation issued per supervisor sam earl stamour(9.12.08)
directive with Fruitland Township Board, Notice of Violation #0003).
**Certified Copy Of Public Body Response**
**Attached is a copy of my fee waiver affidavit for your records.

Sincerely,

Greg Kruse, class of one
Fruitland Township Tax Payer

cc. rcd/mb/jd/th/vr/rs/ds/ke/kh/ss/kr/mb/gm

1

**26**

White/ File     Green/Defendant     Yellow /Defense Atty     Pink/Prosecutor     Gold/Department

| STATE OF MICHIGAN 60TH JUDICIAL DISTRICT COUNTY OF MUSKEGON | DISPOSITION AND/OR NOTICE TO APPEAR | Case No(s) 14D462167 |
|---|---|---|

HALL OF JUSTICE, 990 TERRACE, MUSKEGON, MI 49442
Court Telephone No. (231) 724-6258

Charges: **ZONING-PERMT**

**KRUSE/GREGORY/ARTHUR**
Defendant

**PRO PER, *,**
☐ Video Arrn. ☒ Personal Service

Defense Attorney     ☐ Personal Service

**MUSKEGON COUNTY SHERIFF DEPARTMENT**
Department

**EVEN, KEVIN B.,** *Huss for*
Prosecutor ☐ Personal Service / Probation Officer ☐ Personal Service

ARR: ☐ Closz ☐ Ladas Hoopes ☐ Nolan ☐ Wierengo ☐ VanEpps ☐ Wiewior

☐ Arrn   PV   BW   OSC   ☐ Plea   ☐ BT   ☐ JT   ☐ Sent   ☐ PE
☒ ~~Dispute this~~ *Motion* ☐ Waive ☐ Demand
☒ Held ☐ Adjourn ☐ Petition Attorney ___ Granted ___ Denie
Wit / Def ☐ FTA   Issue   OSC/BW on: ___

M   NC   NG   Guilty _____ Dismiss _____

B/O to Circuit Court     ☐ Waive C.C. Arr

Bond $ _____ Cont'd   C/S 10%   PR   OR   FS   Estreat   Reinstated

Conditions _____

No Contact: ☐ Lifted ☐ Ordered
Victim: _____

### YOU ARE DIRECTED TO APPEAR FOR:

| | Date | Time | Courtroom |
|---|---|---|---|
| Pre-Prelim Exam | | | 2nd Floor Main Hallway |
| Preliminary Exam | | | |
| Pretrial Conf | | | 1st Floor Main Hallway |
| Trial Jury/Judge | *Formal Hrg:* 6-18-14 9:30am #2 | | |
| Probation Viol Hrg/Sent | | | |
| Plea | | | |
| Sentencing | | | |

ASSIGNED JUDGE: ☒ Harold F. Closz, III   ☐ Maria Ladas Hoopes   ☐ Michael J. Nolan   ☐ Andrew Wierengo, III

Miscellaneous Orders: _____
*Motion To Dismiss "DENIED"*

*Motion To Adjourn "GRANTED"*

### IMPORTANT: READ THIS CAREFULLY

1. Bring this notice with you. **BE ON TIME.**
2. No case may be adjourned except by authority of the judge for good cause shown.
3. FAILURE TO APPEAR may subject you to the penalty of contempt of the court.
4. If you intend to employ a lawyer, he/she should be notified of the date at once.
5. FINES, COSTS, AND FEES NOT PAID WITHIN 56 DAYS OF THE DATE OWED ARE SUBJECT TO A 20% LATE PENALTY ON THE AMOUNT OWED.
6. You MUST notify the Court of any change of address or phone number.

### CERTIFICATE OF SERVICE

☐ I certify that on this date copies of this notice were given to the parties or their attorneys.

_____
*Lk*
Recorder / Magistrate

Date 5-28-14 ~~06/04/14~~ Time **103854**

**SENTENCE**

License: ☐ Revoke ☐ Suspend ___ Da/Mo/Yr ☐ Restricted

I- Jail _____ days; Serve _____ Credit _____, Susp _____

II-Jail _____ days; Serve _____ Credit _____, Susp _____

III-Jail _____ days; Serve _____ Credit _____, Susp _____
☐ Concurrent ☐ Contempt ☐ Work Release ☐ School Release

☐ Probation _____ Mo/Yr ☐ SAS ☐ 7411 ☐ HYTA ☐ MI

☐ Vehicle Immobilization

☐ Community Service _____ Hours / By _____ or _____ Jail da

| | I | II | III |
|---|---|---|---|
| Fine | | | |
| Costs | | | |
| BW Fee | | | |
| Probation Fee | | | |
| Assessment Fee | | | |
| Crime Victims Act | | | |

**27**

TOTAL DUE $ _____ pay by _____ or _____ jail day

Restitution $ _____ To: _____

☐ Apply Bond _____

REPORT TO: ☐ Probation ☐ Collections ☐ Community Service
☐ District Court Records
☐ Immediately ☐ Immediately Upon Jail Release

DISPOSITION / NOTICE TO APPEAR - MCDC-101 Revised8 - 11-28-06

RECD FEB 0 6 20

Greg Kruse                                                          Febuary 04, 2014
5617 South Shore Drive   <1973>
Whitehall, MI. 49461

Fruitland Township
4545 Nestrom Rd.
Whitehall, MI. 49461
Re. Exploiting Opportunity #6 4 2 Cease Malicious Persecution of Lil Ole Me.

Dear Fruitland Township;

It is @ this time I would like to thank-u for instructing your zoning administrator to
expressly notify me that I am uncompliant on September 09, 2013, five days after
exercising my 1st right re; **Misconduct x II CEO sam earl stamour.** Either Fruitland
Township ordered **two (2) thugz, Askher (87480) w/Jacobson aka. Muskegon county
employees, to Physically Intimidate** me at my occupied homestead or **thugz** make
material false statement on citation, See 600.8713. My arm still smartz, it will never be
the same, no sensation. So every day there after is an individual separate violation to be
assessed two hundred dollars per day Febuary 04, 2014 is 149 days under Fruitland
Township terrorist action. Even numbers 150 or $30,000 dollars. Now who do I right the
check too? How long do I have to pay? Plastic work? Or am I ohd dat $ ? It is unclear to
me @ this time, so could you take a moment of your time and please advise, in rightn.
This is a grey area for me being pro se. All parties are being put on notice before
preparing for my long tenuous journey down the path to notoriety **V.** obscurity. how does
one prepare? You will decide the direction of travel for me regarding **Lil Ole Me'z**
course. 1. answer obscurity, 1. answer notoriety. Transcribed testimony of players
Askher, Jacobson, Sandel and Garvey mite unearth the truth impdicating CEO sam earl
stamour roleplay regarding the malicious prosecution of this party, singular aka. Lil Ole
Me.  Deposition Hearing(s) may implicate multiple departments directly involved
      1. chief executive officer 2. zoning administrator 3. violations 4. enforcement
       • evidence supports. whois immune? whois snot?
1. first,  casual association.
2. procedural, hearing denied, request received October 24, 2013.
3. equal protection, selective VINDICTIVE enforcement.
4. malicious prosecution, five (5) opportunities to cease action. arbitrary and capricious.
    • Willing Playerz Fruitland Township w/Muskegon County.
Sincerely,

Greg Kruse, pro se today
Fruitland Township  1973

cc: rcd/boc/tnw/kbe/ses/ego/miag

28 A



**SMITH HAUGHEY**
RICE & ROEGGE
ATTORNEYS AT LAW

**INVOICE**
Tax ID No. 38-2234596

*I HEREBY CERTIFY this to be a true and correct copy of the original on file with the office of the Fruitland Township Clerk. This Certified Copy VALID Only when SEAL and RED SIGNATURE are affixed.*

*Karolyn Rillema*

**FRUITLAND TOWNSHIP CLERK**

Fruitland Township
Attn.: Karolyn Rillema
4545 Nestrom Rd.
Whitehall, MI 49461

DATE: 03/06/14
CLIENT: 095800
MATTER: 109758
INVOICE: 577586

Fruitland Township re: General Township Related Matters

FOR PROFESSIONAL SERVICES RENDERED:

| Date | Atty | Description | Hours | Rate | Amount |
|------|------|-------------|-------|------|--------|
| 02/04/14 | KBE | Receipt and review correspondence from Mr. Kruse; attention to same. | 0.10 | 120.00 | 12.00 |
| 02/06/14 | KBE | ▮▮▮▮▮▮▮▮▮▮▮▮▮ | 0.10 | 120.00 | 12.00 |
| 02/06/14 | KBE | Work on revisions to baseball field license, General Township property license, work on License with WLG and T/C with Supervisor regarding WLG | 2.50 | 120.00 | 300.00 |
| 02/07/14 | KMH | ▮▮▮▮▮▮▮▮▮▮▮▮▮ | 0.40 | 200.00 | 80.00 |
| 02/10/14 | KBE | Attention to Township Business at Work Session. | 3.00 | 120.00 | 360.00 |
| 02/13/14 | KBE | ▮▮▮▮▮▮▮▮▮▮▮▮▮ | 0.10 | 120.00 | 12.00 |
| 02/21/14 | KBE | Receipt and review Agenda for regular meeting; attention to same. | 0.10 | 120.00 | 12.00 |
| 02/25/14 | KMH | Email correspondence with Mr. St. Amour concerning Secretary of State form to request driving records | 0.20 | 200.00 | 40.00 |

*SERVICE TOTAL                                        828.00

**ANN ARBOR**
213 S. Ashley, Ste. 400
Ann Arbor, MI 48104
Phone: 734-213-8000
Fax: 734-332-0971

**GRAND RAPIDS**
100 Monroe Center NW
Grand Rapids, MI 49503
Phone: 616-774-8000
Fax: 616-774-2461

**TRAVERSE CITY**
101 N. Park St., Ste. 100
Traverse City, MI 49684
Phone: 231-929-4878
Fax: 231-929-4182

**MUSKEGON**
900 Third St., Ste. 204
Muskegon, MI 49440
Phone: 231-224-4320
Fax: 231-724-4330

www.shrr.com

286

Greg Kruse                                                      March 31, 2014
5617 South Shore Drive  <1973>
Whitehall, MI. 49461

Fruitland Township
4545 Nestrom Rd.
Whitehall, MI. 49461

Re. Opportunity #7 to Cease Vindictive Malicious Prosecution of Lil Ole Me.
Dear Fruitland Township;

In reviewing your expressed notice dated September 9, 2013 alleging that I am
uncompliant, zoningly speaking and failed to comply with your zoning permit
application, ironically five (5) days after, Lil ole me exercised my right exposing
Misconduct x II allegations regarding Fruitland Township CEO sam earl stamour to
township attorney Mr. Even p38599, Fruitland Township & dogshit1.com dated August
28, 2013. Your zoning administrator Mr. Sandel testified that "we have received a
complaint about your uncompliance" unsupported. See 600.8707 Sec.8707(2). Township
attorney Mr. Even did not authorize issuance of Notice of Violation dated November 20,
2013 didoh for Uniform Law Citation mailed and received December 27, 2013 and
Uniform Law Citation reserviced Febuary 17, 2014. See ROIA(s) p38599nov,
p38599mcic and p38599mcicII respectively.

Now along comes one of about a dozen Fruitland Township authorized local official(s)
Askher (87480) fifteen year pins w/Medendop (87259), both are Muskegon County
Sheriff Department Employee(s) Witnessing Violation thus immediate issuance of Notice
of Violation on November 20, 2013 @ 4:00 pm. Next Askher mailed Uniform Law
Citation #D462164 received December 27, 2013, later dismissed Febuary 04, 2014 with
TT's motion to the 60th District Court, only to have Askher hand reservice me nine (9)
business days later with Uniform Law Citation #D462167 on Febuary 17, 2014, notice to
appear April 03, 2014 60th District Court. See 600.8707 Sec.8707(1), "Lil Ole Me failed
to comply w/zoning permit application" knowing full well that anyone making material
false statements in a citation is guilty of fifteen year felonious perjury and contempt of
court. See 600.8713.  Imminent transcribed testimony of players Askher, Medendop, ZA
Sandel and ZA Secretary Dion mite unearth the truth impdicating CEO sam earl stamour
regarding this malicious roleplay regarding this malicious prosecution of this party, singular aka. Lil Ole Me, but
nobody else... Really? No really?

I am formally requesting that Fruitland Township ponder reconsiderment of the
possibility of putting our personal differences aside, so that we may mutually journey
down the exact same path towards a munch more palatable alternative course of reaction
for to resolve and forever lay to rest your conundrum. Could you please refind it in your
reheart to recease your rescheduled reaction redated April 03, 2014 60th District Court
Uniform Law Citation #D462167.

ReSincerely,

Greg Kruse, Tax Payer
Fruitland Township  1973

28c

Greg Kruse                                                                November
24, 2014
5617 South Shore Drive     <1973>
Whitehall, MI. 49461

Karolyn Rillema, Clerk/Designnated FOIA coordinator
Fruitland Township
4545 Nestrom Rd.
Whitehall, MI. 49461

Re:  5617 SOUTH SHORE DRIVE FENCE INVESTIGATION/REPORT(S)

   The Freedom of Information Act 15.231 say's that I can request an opportunity to obtain
copies of public records. So I am @ this time.

Document(s) specifically requested:

Request for one (1) copy of any original public body head aka. Fruitland Township Board signed
investigation/report or any public body agent, fence viewer or zoning administrator signed
investigation/report for 5617 South Shore Drive alleged fence issue, before November 20, 2013.
Case #13-08756 Fruitland Township Notice of Violation #0003, State of Michigan/Muskegon
County Citation #D462164 and Fruitland Township #D462162.
*Copy of my fee waiver affidavit is attached for your records.

Sincerely,

Greg Kruse, class of one
Fruitland Township Tax Payer

cc. rcd/mb/jd/th/vr/rs/ds/ke/kh/ss/kr/mb/gm/hh/jf

28 a

## RESPONSE TO REQUEST FOR PUBLIC RECORDS-
## FREEDOM OF INFORMATION ACT

| Date of Response | FOIA Request |
|---|---|
| 11/24/14 | 5617 S. Shore |
| Request Type: | |
| ✓ Original | ☐ Additional Info. |

### Fruitland Township

Dear **Mr. Kruse**,

This letter is in response to your request dated **11/24/14** *[received in this office on]* **11/24/14** , for
☑ COPIES ☐ INSPECTION of the following record(s)

See attached.

*[stamp overlay:]* I HEREBY CERTIFY this to be a true and correct copy of the Fruitland Township... with the office of the Fruitland Township Clerk. This Certifies... only when SEAL and SIGNATURE are affixed.

Your request for public records has been reviewed and the following action(s) has been taken in compliance with the provisions of the State of Michigan's Freedom of Information Act.

1. ☐ **REQUEST GRANTED:** This request involves too many documents to be processed within standard time frames. Your request will be processed as soon as staff have completed the copying. *Township Staff: If this box is checked, you must provide another copy of this form when the documents are forwarded to the requestor. Also, check either box 2 or 3.*

2. ☑ **REQUEST GRANTED AS TO EXISTING NON-EXEMPT RECORDS:** Your requested documents are enclosed. The cost to produce these records is ———— . Please make payment at the Fruitland Township Hall. A good faith estimate of the cost to produce must be paid to the Township Clerk prior to the records being copied in the amount of ———— *Affidavit Attached   no reports -*

3. ☐ **REQUEST GRANTED IN PART and DENIED IN PART:** (See comments on next page). *only ll written* y

4. ☐ **REQUEST DENIED:** This agency has determined that the record(s) you have requested are exempt from disclosure based on the provisions of the Freedom of Information Act. (See comments on next page).

*12/3/14 KR*

5. ☑ **REQUEST DENIED:** The record(s) you have requested do NOT exist within the records of this agency.

6. ☐ **REQUEST DENIED:** Your request does NOT describe the record(s) sufficiently to enable us to determine what record(s) you are seeking. Please submit a new request describing the record(s) in greater detail.

7. ☐ The specific nature of your request involves unusual circumstances which require an additional 10 business days to properly process your request as provided by Sec. 6(5) of the Freedom of Information Act.

The extension due date is                    The reason for this extension is:

UNDER SECTION 10 OF THE FREEDOM OF INFORMATION ACT, IF A PUBLIC BODY MAKES A FINAL DETERMINATION TO DENY OR A PORTION OF YOUR REQUEST, YOU MAY DO ONE OF THE FOLLOWING:

(1) Submit to the head of the public body, a written letter that states the word "APPEAL" and identifies the reason or reasons for reversal of denial.

(2) Commence an action in the circuit court to compel the public body's disclosure of the public records within 180 days after a public body's final determination to deny a request.

(3) Pursuant to M 15.235(5)(4)(e) this serves as notice of the right to receive attorneys' fees and damages as provided in Section 10, if after judicial review the circuit court were to order disclosure of all or a portion of the document s re uested.

| Signature of FOIA Coordinator or Representative | Name of Responding Office |
|---|---|
| *Marilyn Bellows, Clerk* | *FOIA Coordinator* |

**20** **E**

*See Reverse Side for additional information*

White/ File    Green/Defendant    Yellow /Defense Atty    Pink/Prosecutor    Gold/Department

| **STATE OF MICHIGAN**<br>**60TH JUDICIAL DISTRICT**<br>**COUNTY OF MUSKEGON** | **DISPOSITION**<br>**AND/OR**<br>**NOTICE TO APPEAR** | Case No(s) |
|---|---|---|
| | | 14D462167 |

HALL OF JUSTICE, 990 TERRACE, MUSKEGON, MI 49442    Charges:   **ZONING-PERMT**
Court Telephone No. (231) 724-6258

**KRUSE/GREGORY/ARTHUR**
_____

Defendant      □ Video Arm. ☒ Personal Service

**PRO PER, *,**
_____

Defense Attorney        □ Personal Service
**MUSKEGON COUNTY SHERIFF DEPARTMENT**
_____
Department

**HUSS,KEVIN M.,** _present_
_____
Prosecutor   □ Personal Service   □ Probation Officer □ Personal Service

### YOU ARE DIRECTED TO APPEAR FOR:

|  | Date | Time | Courtroom |
|---|---|---|---|
| | | | 2nd Floor |
| Pre-Prelim Exam | | | Main Hallway |
| Preliminary Exam | | | |
| | | | 1st Floor |
| Pretrial Conf | | | Main Hallway |
| Trial Jury/Judge | | | |
| Probation Viol Hrg/Sent | | | |
| Plea | | | |
| Sentencing | | | |

ASSIGNED   ☒ Harold F. Closz, III    □ Maria Ladas Hoopes
JUDGE:      □ Michael J. Nolan     □ Andrew Wierengo, III

Miscellaneous Orders: _____

_____

### IMPORTANT: READ THIS CAREFULLY
1. Bring this notice with you. **BE ON TIME.**
2. No case may be adjourned except by authority of the judge for good cause shown.
3. FAILURE TO APPEAR may subject you to the penalty for contempt of the court.
4. If you intend to employ a lawyer, he/she should be notified of the date at once.
5. FINES, COSTS, AND FEES NOT PAID WITHIN 56 DAYS OF THE DATE OWED ARE SUBJECT TO A 20% LATE PENALTY ON THE AMOUNT OWED.
6. You MUST notify the Court of any change of address or phone number.

### CERTIFICATE OF SERVICE
☒   I certify that on this date copies of this notice were given to the parties or their attorneys.

_LK_

Recorder / Magistrate

Date _____ **08/19/14** _____ Time ___ 10:53 ___

---

ARR: □ Closz □ Ladas Hoopes □ Nolan □ Wierengo □ VanEpps □ Wiewiora

□ Arrn   PV   BW   OSC   □ Plea   □ BT □ JT □ Sent □ PE
☒         **FORMAL HRG**       □ Waive □ Demand
☒ Held □ Adjourn □ Petition Attorney ___ Granted ___ Denied
Wit / Def   FTA   Issue   OSC / BW on: _____
M NC NG   Guilty    _Resp_    Dismiss _____
B/O to Circuit Court _____ □ Waive C.C. Arrn
Bond $ _____ Cont'd C/S 10% PR OR FS Estreat Reinstated
Conditions _____

No Contact: □ Lifted   □ Ordered
Victim:

### SENTENCE
License: □ Revoke □ Suspend _____ Da/Mo/Yr □ Restricted

I- Jail _____ days; Serve _____ Credit _____, Susp _____

II-Jail _____ days; Serve _____ Credit _____, Susp _____

III-Jail _____ days; Serve _____ Credit _____, Susp _____
□ Concurrent □ Contempt □ Work Release □ School Release

□ Probation _____ Mo/Yr □ SAS   □ 7411   □ HYTA   □ MIP

□ Vehicle Immobilization _____

□ Community Service _____ Hours / By _____ or ____ Jail day

| | I | II | III |
|---|---|---|---|
| Fine | | | |
| Costs | | | |
| BW Fee | | | |
| Probation Fee | | | |
| Assessment Fee | | | |
| Crime Victims Act | | | |

TOTAL DUE $ _____ pay by _____ or ____ jail day

Restitution $ _____ To: _____   **28**

□ Apply Bond _____

**REPORT TO:** □ Probation □ Collections □ Community Service
□ Immediately    □ District Court Records
□ Immediately    □ Immediately Upon Jail Release

# RESPONSE TO REQUEST FOR PUBLIC RECORDS - FREEDOM OF INFORMATION ACT

## Fruitland Township

| Date of Response | FOIA Request |
|---|---|
| 2/19/2014 | Civil Infraction |
| Request Type: | |
| ☑ Original | ☐ Additional Info. |

Dear Mr. Kruse,

This letter is in response to your request dated 2/17/14 , received in this office on 2/17/14

☑ COPIES ☐ INSPECTION of the following record(s):

See attached.

Your request for public records has been reviewed and the following action(s) has been taken in compliance with the provisions of the State of Michigan's Freedom of Information Act.

1. ☐ **REQUEST GRANTED:** This request involves too many documents to be processed within standard time frames. Your request will be processed as soon as staff have completed the copying. *Township Staff: If this box is checked, you must provide another copy of this form when the documents are forwarded to the requestor. Also, check either box 2 or 3.*

2. ☐ **REQUEST GRANTED AS TO EXISTING NON-EXEMPT RECORDS:** Your requested documents are enclosed. The cost to produce these records is _____. Please make payment at the Fruitland Township Hall. A good faith estimate of the cost to produce must be paid to the Township Clerk prior the records being copied in the amount of _____.

3. ☐ **REQUEST GRANTED IN PART and DENIED IN PART:** (See comments on next page).

4. ☐ **REQUEST DENIED:** This agency has determined that the record(s) you have requested are exempt from disclosure based on the provisions of the Freedom of Information Act. (See comments on next page).

5. ☑ **REQUEST DENIED:** The record(s) you have requested do NOT exist within the records of this agency.

6. ☐ **REQUEST DENIED:** Your request does NOT describe the record(s) sufficiently to enable us to determine what record(s) you are seeking. Please submit a new request describing the record(s) in greater detail.

7. ☐ The specific nature of your request involves unusual circumstances which require an additional 10 business days to properly process your request as provided by Sec. 6(5) of the Freedom of Information Act.

The extension due date is _____ The reason for this extension is: _____

---

UNDER SECTION 10 OF THE FREEDOM OF INFORMATION ACT, IF A PUBLIC BODY MAKES A FINAL DETERMINATION TO DENY ALL OR A PORTION OF YOUR REQUEST, YOU MAY DO ONE OF THE FOLLOWING:

(1) Submit to the head of the public body, a written letter that states the word "APPEAL" and identifies the reason or reasons for reversal of denial.

(2) Commence an action in the circuit court to compel the public body's disclosure of the public records within 180 days after a public body's final determination to deny a request.

(3) Pursuant to M 15.235(5)(4)(e) this serves as notice of the right to receive attorneys' fees and damages as provided in Section 10, if after ·judicial review, the circuit court were to order disclosure of all or a ortion of the document s re uested.

---

| Signature of FOIA Coordinator or Representative | Name of Responding Office |
|---|---|
| | Clerk, FOIA Coordinator |

*See Reverse Side for additional information*

**29**

SHRR 2747257v1

FOIA REQUEST

Greg Kruse
5617 South Shore Drive <1973>
Whitehall, MI. 49461

Karolyn Rillema, FOIA Coordinator
Fruitland Township
4545 Nestrom Rd.
Whitehall, MI. 49461

Re: FOIA Request Number [p38599mcicII]

The Freedom of Information Act 15.231 say's that I can request an opportunity to obtain
a copy of a public record, so I am @ this time *2.17.14* for

Document specifically requested:

1. Copy of original attorney Even approval, <u>in writing</u>, authorizing issuance of
   **Municipal Civil Infraction Citation D462167 Askher (87480)** Muskegon
   County Sheriff Department employee.

Sincerely,

Greg Kruse
Fruitland Township 1973

I HEREBY CERTIFY this to be a true
and correct copy of the original on file
with the office of the Fruitland
Township Clerk. This Certified Copy
VALID Only when SEAL and RED
SIGNATURE are affixed.
FRUITLAND TOWNSHIP CLERK

**30**

**REVISED JUDICATURE ACT OF 1961 (EXCERPT)**
Act 236 of 1961

**600.8707 Citation; preparation; issuance; service; municipal ordinance violation notice.**

Sec. 8707. (1) An authorized local official who witnesses a person violate an ordinance a violation of which is a municipal civil infraction shall prepare and subscribe, as soon as possible and as completely as possible, an original and 3 copies of a citation, except as provided in subsection (6).

(2) An authorized local official may issue a citation to a person if, based upon investigation, the official has reasonable cause to believe that the person is responsible for a municipal civil infraction. An authorized local official may issue a citation to a person if, based upon investigation of a complaint by someone who allegedly witnessed the person violate an ordinance a violation of which is a municipal civil infraction, the official has reasonable cause to believe that the person is responsible for a municipal civil infraction and if the prosecuting attorney or other attorney for the political subdivision employing the authorized local official approves in writing the issuance of the citation.

(3) Except as otherwise provided under subsection (4), the authorized local official shall personally serve the third copy of the citation upon the alleged violator.

(4) In a municipal civil infraction action involving the use or occupancy of land or a building or other structure, a copy of the citation need not be personally served upon the alleged violator but may be served upon an owner or occupant of the land, building, or structure by posting the copy on the land or attaching the copy to the building or structure. In addition, a copy of the citation shall be sent by first-class mail to the owner of the land, building, or structure at the owner's last known address.

(5) A citation served under subsection (4) for a violation involving the use or occupancy of land or a building or other structure shall be processed in the same manner as a citation served personally upon a defendant pursuant to subsection (1) or (2).

(6) Except under the circumstances described in section 8709(5)(a) or (b), if a county, city, village, or township has established a municipal ordinance violations bureau, an authorized local official of the county, city, village, or township may issue and serve a municipal ordinance violation notice, instead of a citation, under the same circumstances and upon the same persons as provided in this section for the service of a citation. If an authorized local official issues and serves a municipal ordinance violation notice and if an admission of responsibility is not made and the civil fine and costs, if any, prescribed by ordinance for the violation are not paid at the municipal ordinance violations bureau, a citation may be filed with the court described in section 8703(4) and a copy of the citation may be served by first-class mail upon the alleged violator at his or her last known address. The citation filed with the court pursuant to this subsection need not comply in all particulars with sections 8705 and 8709 but shall consist of a sworn complaint containing the allegations stated in the municipal ordinance violation notice and shall fairly inform the defendant how to respond to the citation. A citation issued under this subsection shall be processed in the same manner as a citation issued personally to a defendant pursuant to subsection (1) or (2). As used in this subsection, "municipal ordinance violation notice" means a notice, other than a citation, directing a person to appear at a municipal ordinance violations bureau in the city, village, township, or county in which the notice is issued and to pay the fine and costs, if any, prescribed by ordinance for the violation of the ordinance.

**History:** Add. 1994, Act 12, Eff. May 1, 1994.


30A

## RESPONSE TO REQUEST FOR PUBLIC RECORDS - FREEDOM OF INFORMATION ACT

### Fruitland Township

| Date of Response 6/5/15 | FOIA Request *Even, 4630 Nesta* |
|---|---|
| Request Type: | *Zoning Compliance* |
| ✓ Original | ☐ Additional Info. |

Dear *Mr. Kruse*

This letter is in response to your request dated 6/4/15 , received in this office on *Emailed* 6/4/15 , for
☑ COPIES      ☐ INSPECTION of the following record(s):

See attached.

Your request for public records has been reviewed and the following action(s) has been taken in compliance with the provisions of the State of Michigan's Freedom of Information Act.

1. ☐ **REQUEST GRANTED:** This request involves too many documents to be processed within standard time frames. Your request will be processed as soon as staff have completed the copying. *Township Staff: If this box is checked, you must provide another copy of this form when the documents are forwarded to the requestor. Also, check either box 2 or 3.*

2. ☐ **REQUEST GRANTED AS TO EXISTING NON-EXEMPT RECORDS:** Your requested documents are enclosed. The cost to produce these records is _____. Please make payment at the Fruitland Township Hall. A good faith estimate of the cost to produce must be paid to the Township Clerk prior the records being copied in the amount of _____.

3. ☐ **REQUEST GRANTED IN PART and DENIED IN PART:** (See comments on next page).

4. ☐ **REQUEST DENIED:** This agency has determined that the record(s) you have requested are exempt from disclosure based on the provisions of the Freedom of Information Act. (See comments on next page).

5. ☑ **REQUEST DENIED:** The record(s) you have requested do NOT exist within the records of this agency.

6. ☐ **REQUEST DENIED:** Your request does NOT describe the record(s) sufficiently to enable us to determine what record(s) you are seeking. Please submit a new request describing the record(s) in greater detail.

7. ☐ The specific nature of your request involves unusual circumstances which require an additional 10 business days to properly process your request as provided by Sec. 6(5) of the Freedom of Information Act.

The extension due date is _____          The reason for this extension is: _____

UNDER SECTION 10 OF THE FREEDOM OF INFORMATION ACT, IF A PUBLIC BODY MAKES A FINAL DETERMINATION TO DENY ALL OR A PORTION OF YOUR REQUEST, YOU MAY DO ONE OF THE FOLLOWING:

(1) Submit to the head of the public body, a written letter that states the word "APPEAL" and identifies the reason or reasons for reversal of denial.

(2) Commence an action in the circuit court to compel the public body's disclosure of the public records within 180 days after a public body's final determination to deny a request.

(3) Pursuant to M 15.235(5)(4)(e) this serves as notice of the right to receive attorneys' fees and damages as provided in Section 10, if after judicial review, the circuit court were to order disclosure of all or a ortion of the document s re uested.

| Signature of FOIA Coordinator or Representative | Name of Responding Office |
|---|---|
| *Karalyn Rillen, Clerk* | *FOIA Coordinator* |

*See Reverse Side for additional information*     **31**

SHRR 2747257v1

**Certified Copy Of Original NEW Zoning Compliance Application With New Zoning Compliance Permit Issued For <u>NEW</u> "<u>Chicken Coup/House</u>" Erected On Or About June 2014 BY EVEN KEVIN 4630 Nestrom Rd. aka Public Body Closest To Lil Ole Me CURRENT"<u>Prosecutor Lawyer/Corperate Council</u>"**

Greg Kruse
June 4, 2015
5617 South Shore Drive
Whitehall, MI. 49461

Karolyn Rillema, FOIA coordinator
Fruitland Township
4545 Nestrom Rd.
Whitehall, MI. 49461

Re   Certified Copy Of Original NEW Zoning Compliance Application With New Zoning Compliance Permit Issued For <u>NEW</u> "<u>Chicken Coup/House</u>" Erected On Or About June 2014 BY EVEN KEVIN 4630 Nestrom Rd. aka Public Body Closest To Lil Ole Me CURRENT "<u>Prosecutor Lawyer And Corperate Council</u>".

The Freedom of Information Act 15.231 say's that I can request an opportunity to obtain copies of public records. So I am @ this time.

Request one (1) Certified Copy Of Original NEW Zoning Compliance Application With New Zoning Compliance Permit Issued For <u>NEW</u> "<u>Chicken Coup/House</u>" Erected On Or About June 2014 BY EVEN KEVIN 4630 Nestrom Rd. aka Public Body Closest To Lil Ole Me CURRENT "<u>Prosecutor Lawyer And Corperate Councial</u>"
*** aka. parcel #   06-117-300-0004-00.    ***SEE Waiver attached.

Sincerely,

Greg Kruse, class of one
Fruitland Township 1973

32

3/8/2016                    Parcel Number - 06-117-300-0004-00 | Fruitland Township | AccessMyGov.com

**4630 NESTROM RD** WHITEHALL, MI 49461    (Property Address)
Parcel Number: 06-117-300-0004-00

**Property Owner:** EVEN KEVIN/ANNETTE
*Summary Information*
> Residential Building Summary
  - Year Built: 1947          - Bedrooms: 4
  - Full Baths: 1             - Half Baths: 0
  - Sq. Feet: 1,515           - Acres: 19.850

> Assessed Value: $62,900 | Taxable Value: $47,119
> Property Tax Information found

Item 2 of 7      4 Images / 3 Sketches

## Owner and Taxpayer Information

| Owner | EVEN KEVIN/ANNETTE<br>4630 NESTROM RD<br>WHITEHALL, MI 49461 | Taxpayer | SEE OWNER INFORMATION |
|---|---|---|---|

## General Information for Tax Year 2015

| | | | |
|---|---|---|---|
| **Property Class** | 401,RESIDENTIAL IMPROVED | **Unit** | 06 FRUITLAND TOWNSHIP |
| **School District** | Whitehall Public | **Assessed Value** | $62,900 |
| **MAP #** | FL-291 | **Taxable Value** | $47,119 |
| **USER NUM IDX** | 0 | **State Equalized Value** | $62,900 |
| **USER ALPHA 1** | Not Available | **Date of Last Name Change** | 01/02/2003 |
| **User Alpha 3** | Not Available | **Notes** | Not Available |
| **Historical District** | Not Available | **Census Block Group** | Not Available |
| **USER ALPHA 2** | Not Available | | |

### Principal Residence Exemption Information

**Homestead Date**     06/01/1994

| Principal Residence Exemption | June 1st | Final |
|---|---|---|
| 2016 | 100.0000 % | - |
| 2015 | 100.0000 % | 100.0000 % |

### Previous Year Information

| Year | MBOR Assessed | Final SEV | Final Taxable |
|---|---|---|---|
| 2014 | $57,600 | $57,600 | $46,377 |
| 2013 | $53,600 | $53,600 | $45,647 |
| 2012 | $51,900 | $51,900 | $44,578 |

## Land Information

| | | | |
|---|---|---|---|
| **Zoning Code** | MDR | **Total Acres** | 19.850 |
| **Land Value** | $52,200 | **Land Improvements** | $744 |
| **Renaissance Zone** | No | **Renaissance Zone Expiration Date** | Not Available |
| **ECF Neighborhood** | R.4.09 RURAL SEC 1-36 | **Mortgage Code** | Not Available |
| **Lot Dimensions/Comments** | IRREGULAR-SEE SKETCH | **Neighborhood Enterprise Zone** | No |

| Lot(s) | Frontage | Depth |
|---|---|---|
| No lots found. | | |
| | **Total Frontage: 0.00 ft** | **Average Depth: 0.00 ft** |

## Legal Description

FRUITLAND TOWNSHIP SEC 17 T11N R17W SW 1/4 OF SW 1/4 EXC E 495 FT TH OF ALSO EXC W 233 FT OF SW 1/4 OF SW 1/4 LYING N OF C/L OF DUCK CREEK

## Land Division Act Information

**33**

RESPONSE TO REQUEST FOR PUBLIC RECORDS -
FREEDOM OF INFORMATION ACT

| Date of Response | POIA Request |
|---|---|
| 6/30/14 | 6171 wd/r |
| Request Type: | |
| ☑ Original | ☐ Additional Info. |

### Fruitland Township

Dear **Mr. Kruse,**

This letter is in response to your request dated 6/26/14, received in this office on 6/27/14, for

☑ COPIES    ☐ INSPECTION of the following record(s):

*I HEREBY CERTIFY this to be a true copy of the original or the office of the Fruitland and costy... with the office... Township Clerk. Certified VALID Only when SIGNATURE are affixed.*

See attached.

Your request for public records has been reviewed and the following action(s) has been taken in compliance with the provisions of the State of Michigan's Freedom of Information Act.

1. ☐ **REQUEST GRANTED:** This request involves too many documents to be processed within standard time frames. Your request will be processed as soon as staff have completed the copying. *Township Staff: If this box is checked, you must provide another copy of this form when the documents are forwarded to the requestor. Also, check either box 2 or 3.*

2. ☐ **REQUEST GRANTED AS TO EXISTING NON-EXEMPT RECORDS:** Your requested documents are enclosed. The cost to produce these records is _____. Please make payment at the Fruitland Township Hall. A good faith estimate of the cost to produce must be paid to the Township Clerk prior the records being copied in the amount of _____.

3. ☐ **REQUEST GRANTED IN PART and DENIED IN PART:** (See comments on next page).

4. ☐ **REQUEST DENIED:** This agency has determined that the record(s) you have requested are exempt from disclosure based on the provisions of the Freedom of Information Act. (See comments on next page).

5. ☑ **REQUEST DENIED:** The record(s) you have requested do NOT exist within the records of this agency.

6. ☐ **REQUEST DENIED:** Your request does NOT describe the record(s) sufficiently to enable us to determine what record(s) you are seeking. Please submit a new request describing the record(s) in greater detail.

7. ☐ The specific nature of your request involves unusual circumstances which require an additional 10 business days to properly process your request as provided by Sec. 6(5) of the Freedom of Information Act.

The extension due date is _____       The reason for this extension is: _____

UNDER SECTION 10 OF THE FREEDOM OF INFORMATION ACT, IF A PUBLIC BODY MAKES A FINAL DETERMINATION TO DENY A OR A PORTION OF YOUR REQUEST, YOU MAY DO ONE OF THE FOLLOWING:

(1) Submit to the head of the public body, a written letter that states the word "APPEAL" and identifies the reason or reasons for reversal of denial.

(2) Commence an action in the circuit court to compel the public body's disclosure of the public records within 180 days after a public body's final determina to deny a request.

(3) Pursuant to M 15.235(5)(4)(e) this serves as notice of the right to receive attorneys' fees and damages as provided in Section 10, if after judicial review, t circuit court were to order disclosure of all or a ortion of the document s re uested.

| Signature of FOIA Coordinator or Representative | Name of Responding Office |
|---|---|
| Kathryn Kuller Clerk | FOIA Coordinator **34** |

*See Reverse Side for additional information*

FOIA REQUEST

Greg Kruse
5617 South Shore Drive   <1973>
Whitehall, MI. 49461

Karolyn Rillema, Clerk/FOIA coordinator
Fruitland Township
4545 Nestrom Rd.
Whitehall, MI. 49461

   Re: F.O.I.A. Request [6171wdlr]

The Freedom of Information Act 15.231 say's that I can request an opportunity to obtain
a copy of a public record, so I am @ this time _C. 26. 17_ for my neighbor and fellow
tax payer residing @

Terrie Hampel, Seated Fruitland Township Trustee.
6171 W. Duck Lake Rd
WHITEHALL, MI. 49461

Document(s) specifically requested;

1. FRUITLAND TOWNSHIP ZONING COMPLIANCE APPLICATION
2. APPROVED FRUITLAND TOWNSHIP ZONING COMPLIANCE PERMIT
   Re; Authorizing Erection of Fruit Stand Structure Constructed with Permanent
   Advertising Signage within Front Yard Set Back.

Sincerely,

Greg Kruse
Fruitland Township 1973

*[Stamp: I HEREBY CERTIFY this to be a true and correct copy of the original on file with the office of the Fruitland Township Clerk. This Certified Copy Valid Only when SEAL and RED SIGNATURE are affixed. — CLERK AND TOWNSHIP]*

**35**







Greg Kruse                                          May 12, 2014
5617 South Shore Drive   <1973>
Whitehall, MI. 49461

Donald Sandel, Zoning Administrator                 REC'D MAY 1 2 2014
Fruitland Township                                      ak*
4545 Nestrom Rd.
Whitehall, MI. 49461


Dear; Donald Sandel, Zoning Administrator;

     Please be advised, I am in receipt of my FOIA request for the "zoning compliance
application" and "zoning compliance permit" as required per. Section 20.06 for the
vegetable, produce, flower and fruit stand with advertising permanently located within
the required front yard setback area, located at 6171 W. Duck Lake Rd. The results of my
request, provided by way of the township clerk, have revealed "zoning compliance
application" and "zoning compliance permit" are nonexistent within your office.
     Without a zoning compliance permit ever being issued or on file within your office,
immediately brings to mind one question.  Just why is this highly visible nonconformity
allowed to flourish and prosper within your jurisdictional authority?
     As you are also aware of, as described in Section 3.22, structures of this type including
"signs used for advertising" are considered seasonal and shall not be a permanent
structure designed for said use.
     These structure(s), as you would agree, are most certainly violation(s). See attached
photograph(s). As a taxpaying resident of Fruitland Township, I hereby propose and
demand action be taken citing the designated authority duly invested within you for to
discontinue these highly visible and legitimate nonconformity(s) or any resident
nonconformity for that matter.
I thank you in advance.

Sincerely,

Greg Kruse
Fruitland Township  1973


Enclosures; Photograph(s) dated, May 8, 2014.
             Supporting FOIA Document(s).

Cc: Sam E. St. Amour; Township Supervisor
    Karolyn Rillema; Township Clerk
    Kevin B. Even; Township Attorney
    zoning@fruitlandtwp.org

**37**

*Duplicate*

Greg Kruse
October 23, 2014
5617 South Shore Drive      <1973>
Whitehall, MI. 49461

Karolyn Rillema, Clerk/Designated FOIA coordinator
Fruitland Township
4545 Nestrom Rd.
Whitehall, MI. 49461


Re: Certified Copy W. McMillan Road End Zoning Compliance Application.
     (#61-06-130-300-0038-00)

                              .


The Freedom of Information Act 15.231 say's that I can request an opportunity to obtain copies
of public records, Further say's per 15.233 Sec. 3. (6) the custodian of a public record shall, upon
written request, furnish a requesting person a certified copy of a public record. So I am @ this
time for

Document specifically requested:

One (1) certified copy of original W. McMillan Road End Zoning Compliance Application.

(#61-06-130-300-0038-00)

*Please find a copy of my fee waiver affidavit for your convenience and record(s)




Sincerely,


Greg Kruse, class of one
Fruitland Township Tax Payer

cc. rcd/bcc/mb/jd/th/vr/rs/ds/ke/kh/ss


**39**

## RESPONSE TO REQUEST FOR PUBLIC RECORDS - FREEDOM OF INFORMATION ACT

### Fruitland Township

| | |
|---|---|
| Date of Response 10/23/14 | FOIA Request *Mr McNulty Zoning Complex 2nd* |
| Request Type: | *"Cut"* |
| ☑ Original | ☐ Additional Info. |

Dear *Mr. Kruse*

This letter is in response to your request dated 10/23/14 , received in this office on *emailed* 10/23/14 , for
☑ COPIES   ☐ INSPECTION of the following record(s):

See attached.

Your request for public records has been reviewed and the following action(s) has been taken in compliance with the provisions of the State of Michigan's Freedom of Information Act.

1. ☐ **REQUEST GRANTED:** This request involves too many documents to be processed within standard time frames. Your request will be processed as soon as staff have completed the copying. *Township Staff: If this box is checked, you must provide another copy of this form when the documents are forwarded to the requestor. Also, check either box 2 or 3.*

2. ☑ **REQUEST GRANTED AS TO EXISTING NON-EXEMPT RECORDS:** Your requested documents are enclosed. The cost to produce these records is ———. Please make payment at the Fruitland Township Hall. A good faith estimate of the cost to produce must be paid to the Township Clerk prior to the records being copied in the amount of ———. *Affidavit Attached*

3. ☐ **REQUEST GRANTED IN PART and DENIED IN PART:** (See comments on next page).

4. ☐ **REQUEST DENIED:** This agency has determined that the record(s) you have requested are exempt from disclosure based on the provisions of the Freedom of Information Act. (See comments on next page).

5. ☐ **REQUEST DENIED:** The record(s) you have requested do NOT exist within the records of this agency.

6. ☐ **REQUEST DENIED:** Your request does NOT describe the record(s) sufficiently to enable us to determine what record(s) you are seeking. Please submit a new request describing the record(s) in greater detail.

7. ☐ The specific nature of your request involves unusual circumstances which require an additional 10 business days to properly process your request as provided by Sec. 6(5) of the Freedom of Information Act.

The extension due date is                    The reason for this extension is:

---

UNDER SECTION 10 OF THE FREEDOM OF INFORMATION ACT, IF A PUBLIC BODY MAKES A FINAL DETERMINATION TO DENY AL OR A PORTION OF YOUR REQUEST, YOU MAY DO ONE OF THE FOLLOWING:

(1) Submit to the head of the public body, a written letter that states the word "APPEAL" and identifies the reason or reasons for reversal of denial.

(2) Commence an action in the circuit court to compel the public body's disclosure of the public records within 180 days after a public body's final determinati to deny a request.

(3) Pursuant to M 15.235(5)(4)(e) this serves as notice of the right to receive attorneys' fees and damages as provided in Section 10, if after ·judicial review, th circuit court were to order disclosure of all or a ortion of the document s re uested.

---

| Signature of FOIA Coordinator or Representative | Name of Responding Office |
|---|---|
| *Karolyn Rillu, Clerk* | *FOIA Coordinator* |

*See Reverse Side for additional information*   **39**

SHRR 2747257v1

## FRUITLAND TOWNSHIP ZONING COMPLIANCE APPLICATION

FEE: $25.00 Date Paid: N/C Accepted By:_____ Check/Cash:_____ Other:_____

SUBMITTED MATERIALS: Site Plan_____ ✓ Driveway Permit _____ (Parcel on Public Street)
DEQ Permit _____ (Any Lake Michigan Parcel) Soil & Erosion Permit _____ (If building a structure within 500' of a lake or stream; or 1 acre or more of land is being disturbed)

| OWNER INFORMATION | APPLICANT INFORMATION |
|---|---|
| NAME: Fruitland Township | ASSOCIATION: _____ (IF DIFFERENT THAN OWNER) |
| PHONE: 766-3208 | PHONE: _____ |
| STREET: 4545 Nestrom Rd | NAME: _____ |
| CITY, STATE, ZIP Whitehall MI 49461 | STREET: _____ |
| | CITY, STATE, ZIP _____ |

*Be sure all requested information is inserted, or an explanation as to why the information is not included, or your application will be returned.*

PARCEL IDENTIFICATION NUMBER: 61-06-130-300-0038-00

ADDRESS OR LOCATION OF REQUEST: W McMillan Rd End

CROSS STREETS:_____

This application must be accompanied by a
a. site plan that shows North, exhibits the parcel dimensions, dimensions of existing improvements, dimensions of proposed improvements and their setbacks;
b. explanation of access;

DESCRIPTION OF PROPOSED USE / REQUEST: Landing/Stairs to Lake Michigan

NEW CONSTRUCTION: ✓                    ACCESSORY BUILDING: ____

BUILDING DIMENSIONS:_____

BUILDING DIMENSIONS:_____
Section 3.08 F. Setbacks for detached accessory structures shall be measured to the eaves of the building.
HEIGHT: _____

BUILDING SQUARE FOOTAGE:        1st FLOOR:_____
(Minimum 1,120 square feet GFA       2nd FLOOR:_____
960 square feet on ground              TOTAL:_____
floor)                                          HEIGHT:_____

I, hereby attest, that the information on this application is, to the best of my knowledge, true and accurate.

_____          _____
Signature of Applicant                     Date

NOTE TO APPLICANT:    *This is optional and will not affect any decision on your application.*
hereby grant permission for the Fruitland Township Zoning Administrator to enter the above described property (or as described in the attached), and as associated within this Zoning Application for the purpose of gathering information related to this application/request/proposal.

_____          _____
Signature of Applicant                     Date

FRUITLAND TOWNSHIP 4545 NESTROM ROAD, WHITEHALL, MI 49461

*[Stamp overlay:]* I HEREBY CERTIFY this to be a true and correct copy of the original on file with the office of the Fruitland Township Clerk. This Certified Copy VALID Only when SEAL and RED SIGNATURE are affixed. FRUITLAND TOWNSHIP CLERK

STATE OF MICHIGAN

**RICK SNYDER**
GOVERNOR

**DEPARTMENT OF LICENSING AND REGULATORY AFFAIRS**
BUREAU OF CONSTRUCTION CODES
IRVIN J. POKE
DIRECTOR

**STEVE ARWOOD**
DIRECTOR

June 18, 2014


Mr. Kevin B. Even
Smith Haughey Rice & Roegge
900 Third Street, Ste. 204
Muskegon, MI 49440

RE:    BCC Complaint LG 14-0565
       Greg Kruse/Fruitland Township

Dear Mr. Even:

This acknowledges the receipt of the response you provided on behalf of Fruitland Township, received in this office on June 3, 2014. A copy of the Township's response is being provided to the complainant for informational purposes.

Based upon our review of the Township's response, it is noted that the copy of the Application for a Building Permit and Building Permit No. PBD-11-0089 both carry the date of September 28, 2011. You also indicate that as of the date of your letter, the project is still under construction and a final inspection of the staircase structure has not been conducted. Even with volunteer labor being utilized, a two and a half year construction period for this type of project seems overly long.

It is also noted that although you have indicated the Township's building inspector conducted a plan review of the project, he did not generate a written plan review report for the project file. You also indicate that the Township's inspector conducted "a number of inspections" and (3) additional inspections. However, you did not provide any copies of written inspection reports or written code violation notices within your response. These types of deficiencies cause concern as it appears these code requirements are not being adequately enforced by the Township.

It is reassuring that the Township has taken action to restrict public access to the staircase until code compliance can be achieved. You indicate that construction is to be completed within 45 days. It is also a prudent decision to have any further inspections conducted by another inspector such as Mr. Ream as this policy may serve to eliminate the appearance of a conflict of interest for the Township.

It is requested that the Township provide copies of all further inspection reports and code violation notices until such a time that compliance to the code is achieved and a certificate of use

*Providing for Michigan's Safety in the Built Environment*

LARA is an equal opportunity employer
Auxiliary aids, services and other reasonable accommodations are available upon request to individuals with disabilities.
P.O. BOX 30254 • LANSING, MICHIGAN 48909
www.michigan.gov/bcc • Telephone (517) 241-9302 • Fax (517) 241-9570


41

Mr. Kevin B. Even
Page 2
June 18, 2014

is issued.  It is also requested that a copy of the issued certificate of use be provided to our office
for review.

Thank you for your assistance and cooperation regarding this matter.  If you have questions you
may contact me at (517) 335-2972.

Sincerely,

Michael Somers, Specialist
Office of Administrative Services                    Mailing Date: June 19, 2014

MDS/ms

Enclosure

Cc:    Sam E. St. Amour, Supervisor, Fruitland Township, w/o encl.
       Karolyn Rillema, Clerk, Fruitland Township, w/o encl.
       Greg Kruse, with enclosure

**42**

# Fruitland Township

## Application for **Building** Permit and Plan Examination

4545 Nestrom Road
Whitehall, MI 49461
Phone: 231-766-3208 Fax: 231-766-3027

**Note:** Separate applications must be made to the appropriate division for Plumbing, Mechanical, and Electrical Work Permits. **Authority:** P.A. 230 of 1972, as amended. **Completion:** mandatory to obtain permit. **Penalty:** Application must be completed, signed, proper fee enclosed or permit will not be issued. Fruitland Township will not discriminate against any individual or group because of race, sex, religion, age, national origin, color, marital status, handicap, or political beliefs.

### I. Location of Building

Street Address: W McMillan Rd End

Parcel Number: 61-06-130-300-0038-00

Closest Cross Street:

Is the Street or Road: Paved or UnPaved, and Private or Public?

### II. Identification

Home Owner: Fruitland Township

Address: 4545 Nestrom Rd City/State/Zip: Whitehall MI 49461 Telephone: 766-3208

Contractor Name:

Address: City/State/Zip: Telephone:

Cell Number: Builders License Number: Expiration Date:

**\*\*\* Contractors must have current registration with Township**

### III. Type of Improvement — Required to Be Filled Out by Applicant

Explain: Landing | Stairs to Lake Michigan

A. Does the house have an: Attached Garage or Detached Garage?

B. Are there accessory structures on the property? If YES, how many?

### IV. Value of work

$

### V. Proposed use of Building

Explain:

### VI. Selection Characteristics of Building (New House Construction Only)

Frame _____ Sewage Disposal _____ Mechanical _____ House Dimensions _____

Heating _____ Water Supply _____ Dimensions _____ House Total Sq. Footage _____

Section 23A of the State construction code Act of 1972, Act No. 230 of the Public Acts of 1972, being section 1523, 1523A of the Michigan complied laws, prohibits a person from conspiring to circumvent the licensing requirements of this state relating to persons who are to perform work on a residential building or a residential structure. Violators of Section 23A are subject to civil fines.

*I hereby certify that the proposed work is authorized by the owner of record and that I have been authorized by the owner to make this application as his authorized agent, and we agree to conform to all applicable laws of the State of Michigan, and call for all required inspections. All information submitted on this application is accurate to the best of my knowledge.*

Applicants Signature: Melissa M Beegle Date: 9/28/11

### For Department Use Only

Notes and Data:

Check or Cash: Check # 1 Date paid:

Permit Fee: NC Received by:

All information given is subject to F.O.I.A (Freedom of information Act)

Applications-Forms: Building (04/01/04)

**43**

FOIA REQUEST

Greg Kruse
5617 South Shore Drive   <1973>
Whitehall, MI. 49461

Karolyn Rillema, FOIA coordinator
Fruitland Township
4545 Nestrom Rd.
Whitehall, MI. 49461

Re: F.O.I.A. Request  [5561ssdr]

The Freedom of Information Act 15.231 say's that I can request an opportunity to obtain

a copy of a public record, so I am @ this time _____ for my immediate neighbor

and fellow tax payer resided @

WLODKOWSKI TODD A/MIKKELSEN EDWARD
5561 SOUTH SHORE DR
WHITEHALL, MI 49461

Document(s) specifically requested;

    1. FRUITLAND TOWNSHIP ZONING COMPLIANCE APPLICATION.
    2. APPROVED FRUITLAND TOWNSHIP ZONING COMPLIANCE PERMIT
       Re; Authorizing Erection of NEW Fence Currently Bordering 5561 and 5559
       South Shore Drive. Erection on or about today's date.

Sincerely,

Greg Kruse
Fruitland Township 1973

**44**

# RESPONSE TO REQUEST FOR PUBLIC RECORDS - FREEDOM OF INFORMATION ACT

| Date of Response | FOIA Request |
|---|---|
| 4-24-14 | 5361 S. Steve C |
| Request Type: | |
| ☑ Original | ☐ Additional Info. |

## Fruitland Township

Dear )))r. Kruse,

This letter is in response to your request dated 4/22/14 , received in this office on 4/23/14 , for
☑ COPIES ☐ INSPECTION of the following record(s):

See attached.

Your request for public records has been reviewed and the following action(s) has been taken in compliance with the provisions of the State of Michigan's Freedom of Information Act.

1. ☐ **REQUEST GRANTED:** This request involves too many documents to be processed within standard time frames. Your request will be processed as soon as staff have completed the copying. Township Staff. If this box is checked, you must provide another copy of this form when the documents are forwarded to the requestor. Also, check either box 2 or 3.

2. ☐ **REQUEST GRANTED AS TO EXISTING NON-EXEMPT RECORDS:** Your requested documents are enclosed. The cost to produce these records is _____. Please make payment at the Fruitland Township Hall. A good faith estimate of the cost to produce must be paid to the Township Clerk prior the records being copied in the amount of _____.

3. ☐ **REQUEST GRANTED IN PART and DENIED IN PART:** (See comments on next page).

4. ☐ **REQUEST DENIED:** This agency has determined that the record(s) you have requested are exempt from disclosure based on the provisions of the Freedom of Information Act. (See comments on next page).

5. ☑ **REQUEST DENIED:** The record(s) you have requested do NOT exist within the records of this agency.

6. ☐ **REQUEST DENIED:** Your request does NOT describe the record(s) sufficiently to enable us to determine what record(s) you are seeking. Please submit a new request describing the record(s) in greater detail.

7. ☐ The specific nature of your request involves unusual circumstances which require an additional 10 business days to properly process your request as provided by Sec. 6(5) of the Freedom of Information Act.

The extension due date is _____          The reason for this extension is: _____

---

UNDER SECTION 10 OF THE FREEDOM OF INFORMATION ACT, IF A PUBLIC BODY MAKES A FINAL DETERMINATION TO DENY A OR A PORTION OF YOUR REQUEST, YOU MAY DO ONE OF THE FOLLOWING:

(1) Submit to the head of the public body, a written letter that states the word "APPEAL" and identifies the reason or reasons for reversal of denial.

(2) Commence an action in the circuit court to compel the public body's disclosure of the public records within 180 days after a public body's final determina to deny a request.

(3) Pursuant to M 15.235(5)(4)(e) this serves as notice of the right to receive attorneys' fees and damages as provided in Section 10, if after ·judicial review, t circuit court were to order disclosure of all or a ortion of the document s re uested.

---

| Signature of FOIA Coordinator or Representative | Name of Responding Office |
|---|---|
| Kathy Rollin Clerk | FOIA Coordinator |

**45**

*See Reverse Side for additional information*



5561 South Shore Drive





FOIA REQUEST

.eg Kruse
5617 South Shore Drive   <1973>
Whitehall, MI. 49461

Karolyn Rillema, Clerk/FOIA coordinator
Fruitland Township
4545 Nestrom Rd.
Whitehall, MI. 49461

Re: F.O.I.A. Request [5671ssdr]

The Freedom of Information Act 15.231 say's that I can request an opportunity to obtain

a copy of a public record, so I am @ this time *1, 28, 14* for my immediate neighbor

and fellow tax payer residing @

GIRVAN DANIEL T.
5671 SOUTH SHORE DRIVE
WHITEHALL, MI. 49461

Document(s) specifically requested;

1. FRUITLAND TOWNSHIP ZONING COMPLIANCE APPLICATION
2. APPROVED FRUITLAND TOWNSHIP ZONING COMPLIANCE PERMIT
   Re; Authorizing Erection of Fence and Planting(s) Currently Bordering 5617
   South Shore Drive And At Entire Road Frontage.  Erected 2005.

If nonexistent please advise as to the truth or advise as to the best of your knowledge**.**

Sincerely,

Greg Kruse
Fruitland Township 1973

## RESPONSE TO REQUEST FOR PUBLIC RECORDS - FREEDOM OF INFORMATION ACT

| Date of Response | FOIA Request |
|---|---|
| 1/30/14 | 5671 3 sheriff |
| Request Type: | |
| ✓ Original | ☐ Additional Info. |

### Fruitland Township

Dear _Mr. Kruse_

This letter is in response to your request dated _1/29/14_ , received in this office on _1/30/14_ , for:

☑ COPIES ☐ INSPECTION of the following record(s):

See attached.

Your request for public records has been reviewed and the following action(s) has been taken in compliance with the provisions of the State of Michigan's Freedom of Information Act.

1. ☐ **REQUEST GRANTED:** This request involves too many documents to be processed within standard time frames. Your request will be processed as soon as staff have completed the copying. Township Staff: If this box is checked, you must provide another copy of this form when the documents are forwarded to the requestor. Also, check either box 2 or 3.

2. ☐ **REQUEST GRANTED AS TO EXISTING NON-EXEMPT RECORDS:** Your requested documents are enclosed. The cost to produce these records is _____ Please make payment at the Fruitland Township Hall. A good faith estimate of the cost to produce must be paid to the Township Clerk prior the records being copied in the amount of _____

3. ☐ **REQUEST GRANTED IN PART and DENIED IN PART:** (See comments on next page).

4. ☐ **REQUEST DENIED:** This agency has determined that the record(s) you have requested are exempt from disclosure based on the provisions of the Freedom of Information Act. (See comments on next page).

5. ☑ **REQUEST DENIED:** The record(s) you have requested do NOT exist within the records of this agency.

6. ☐ **REQUEST DENIED:** Your request does NOT describe the record(s) sufficiently to enable us to determine what record(s) you are seeking. Please submit a new request describing the record(s) in greater detail.

7. ☐ The specific nature of your request involves unusual circumstances which require an additional 10 business days to properly process your request as provided by Sec. 6(5) of the Freedom of Information Act.

The extension due date is _____ The reason for this extension is:

UNDER SECTION 10 OF THE FREEDOM OF INFORMATION ACT, IF A PUBLIC BODY MAKES A FINAL DETERMINATION TO DENY ALL OR A PORTION OF YOUR REQUEST, YOU MAY DO ONE OF THE FOLLOWING:

(1) Submit to the head of the public body, a written letter that states the word "APPEAL" and identifies the reason or reasons for reversal of denial.

(2) Commence an action in the circuit court to compel the public body's disclosure of the public records within 180 days after a public body's final determination to deny a request.

(3) Pursuant to M 15 235(5)(4)(e) this serves as notice of the right to receive attorneys' fees and damages as provided in Section 10, if after judicial review, the circuit court were to order disclosure of all or a ortion of the document s re uested.

| Signature of FOIA Coordinator or Representative | Name of Responding Office |
|---|---|
| _Marilyn Rollins_ | _Clerk, FOIA Coordinator_ |

*See Reverse Side for additional information*



GIRVAN DANIEL T.
5671 SOUTH SHORE DRIVE
WHITEHALL, MI. 49461



FOIA REQUEST

Greg Kruse
5617 South Shore Drive  <1973>
Whitehall, MI. 49461

Karolyn Rillema, Clerk
Fruitland Township
4545 Nestrom Rd.
Whitehall, MI. 49461

   The Freedom of Information Act 15.231 say's that I can request an opportunity to

obtain a copy of a public record, so I am @ this time  /.3 i. l4  for

my current neighbor and fellow tax payer residing four miles away @

LORENZ CURT/JOYCE
4260 MYSTIC LN
WHITEHALL, MI 49461

Document(s) specifically requested;

   1. FRUITLAND TOWNSHIP ZONING COMPLIANCE APPLICATION
   2. APPROVED FRUITLAND TOWNSHIP ZONING COMPLIANCE PERMIT
      Re; Approving Erected Fence, Hedges, Berms, Screens and Planting(s) @
      Entire Road Frontage.  2007-2011 Erection,


If it is nonexistent please advise as to the truth or advise as to the best of your knowledge.



Sincerely,

Greg Kruse
Fruitland Township 1973




Page 1 of 2

50

# RESPONSE TO REQUEST FOR PUBLIC RECORDS - FREEDOM OF INFORMATION ACT

## Fruitland Township

| Date of Response 2/4/14 | FOIA Request H2u0 N... E... |
|---|---|
| Request Type: | |
| ✔ Original | ☐ Additional Info. |

Dear *Mr. Kruse,*

This letter is in response to your request dated *1/31/14*, received in this office on *2/3/14*
☑ **COPIES**   ☐ **INSPECTION** of the following record(s):

See attached.

Your request for public records has been reviewed and the following action(s) has been taken in compliance with the provisions of the State of Michigan's Freedom of Information Act.

1. ☐ **REQUEST GRANTED**: This request involves too many documents to be processed within standard time frames. Your request will be processed as soon as staff have completed the copying. *Township Staff: If this box is checked, you must provide another copy of this form when the documents are forwarded to the requestor. Also, check either box 2 or 3.*

2. ☐ **REQUEST GRANTED AS TO EXISTING NON-EXEMPT RECORDS**: Your requested documents are enclosed. The cost to produce these records is _____. Please make payment at the Fruitland Township Hall. A good faith estimate of the cost to produce must be paid to the Township Clerk prior the records being copied in the amount of _____.

3. ☐ **REQUEST GRANTED IN PART and DENIED IN PART**: (See comments on next page).

4. ☐ **REQUEST DENIED**: This agency has determined that the record(s) you have requested are exempt from disclosure based on the provisions of the Freedom of Information Act. (See comments on next page).

5. ☑ **REQUEST DENIED**: The record(s) you have requested do NOT exist within the records of this agency.

6. ☐ **REQUEST DENIED**: Your request does NOT describe the record(s) sufficiently to enable us to determine what record(s) you are seeking. Please submit a new request describing the record(s) in greater detail.

7. ☐ The specific nature of your request involves unusual circumstances which require an additional 10 business days to properly process your request as provided by Sec. 6(5) of the Freedom of Information Act.

The extension due date is                          The reason for this extension is:

---

**UNDER SECTION 10 OF THE FREEDOM OF INFORMATION ACT, IF A PUBLIC BODY MAKES A FINAL DETERMINATION TO DENY ALL OR A PORTION OF YOUR REQUEST, YOU MAY DO ONE OF THE FOLLOWING:**

(1) Submit to the head of the public body, a written letter that states the word "APPEAL" and identifies the reason or reasons for reversal of denial.

(2) Commence an action in the circuit court to compel the public body's disclosure of the public records within 180 days after a public body's final determination to deny a request.

(3) Pursuant to M 15.235(5)(4)(e) this serves as notice of the right to receive attorneys' fees and damages as provided in Section 10, if after judicial review, the circuit court were to order disclosure of all or a ortion of the document s re uested.

---

| Signature of FOIA Coordinator or Representative | Name of Responding Office |
|---|---|
| *Marilyn Rucker* | *Clerk, FOIA Coordinator* |

SHRR 2747257v1

51



LORENZ CURT/JOYCE
4260 MYSTIC LN
WHITEHALL, MI 49461

52

FOIA REQUEST

Greg Kruse
5617 South Shore Drive   <1973>
Whitehall, MI. 49461


Karolyn Rillema, Clerk/ FOIA coordinator
Fruitland Township
4545 Nestrom Rd.
Whitehall, MI. 49461


The Freedom of Information Act 15.231 say's that I can request an opportunity to
obtain copies of public records, so I am @ this time  *1, 31, 14*  for my
current neighbor and fellow tax payer residing four miles away @

MAHMOOD SYED A
4294 MYSTIC LANE
18615 WOODDUCK DR
SPRING LAKE, MI 49456

Document(s) Specifically Requested;

1.  FRUITLAND TOWNSHIP ZONING COMPLIANCE APPLICATION
2.  FRUITLAND TOWNSHIP ZONING COMPLIANCE PERMIT


If they are nonexistent please advise as to the best of your knowledge.


Sincerely,

Greg Kruse
Fruitland Township 1973


Page 1 of 2

**53**

# RESPONSE TO REQUEST FOR PUBLIC RECORDS - FREEDOM OF INFORMATION ACT

## Fruitland Township

| Date of Response | FOIA Request |
|---|---|
| 2/1/14 | 4294 Myatt Ln |
| Request Type: | |
| ☑ Original | ☐ Additional Info. |

Dear  Mr. Kruse,

This letter is in response to your request dated 1/31/14 , received in this office on 1/31/14 , for
☑ COPIES   ☐ INSPECTION of the following record(s):

See attached.

Your request for public records has been reviewed and the following action(s) has been taken in compliance with the provisions of the State of Michigan's Freedom of Information Act:

1. ☐ **REQUEST GRANTED:** This request involves too many documents to be processed within standard time frames. Your request will be processed as soon as staff have completed the copying. *Township Staff: If this box is checked, you must provide another copy of this form when the documents are forwarded to the requestor. Also, check either box 2 or 3.*

2. ☐ **REQUEST GRANTED AS TO EXISTING NON-EXEMPT RECORDS:** Your requested documents are enclosed. The cost to produce these records is _____. Please make payment at the Fruitland Township Hall. A good faith estimate of the cost to produce must be paid to the Township Clerk prior to the records being copied in the amount of _____.

3. ☐ **REQUEST GRANTED IN PART and DENIED IN PART:** (See comments on next page).

4. ☐ **REQUEST DENIED:** This agency has determined that the record(s) you have requested are exempt from disclosure based on the provisions of the Freedom of Information Act. (See comments on next page).

5. ☑ **REQUEST DENIED:** The record(s) you have requested do NOT exist within the records of this agency.

6. ☐ **REQUEST DENIED:** Your request does NOT describe the record(s) sufficiently to enable us to determine what record(s) you are seeking. Please submit a new request describing the record(s) in greater detail.

7. ☐ The specific nature of your request involves unusual circumstances which require an additional 10 business days to properly process your request as provided by Sec. 6(5) of the Freedom of Information Act.

The extension due date is _____   The reason for this extension is:

---

**UNDER SECTION 10 OF THE FREEDOM OF INFORMATION ACT, IF A PUBLIC BODY MAKES A FINAL DETERMINATION TO DENY ALL OR A PORTION OF YOUR REQUEST, YOU MAY DO ONE OF THE FOLLOWING:**

(1) Submit to the head of the public body, a written letter that states the word "APPEAL" and identifies the reason or reasons for reversal of denial.

(2) Commence an action in the circuit court to compel the public body's disclosure of the public records within 180 days after a public body's final determination to deny a request.

(3) Pursuant to M 15.235(5)(4)(e) this serves as notice of the right to receive attorneys' fees and damages as provided in Section 10, if after judicial review, the circuit court were to order disclosure of all or a ortion of the document s re uested.

---

| Signature of FOIA Coordinator or Representative | Name of Responding Office |
|---|---|
|  | Clerk  Foia Coordinator |

*See Reverse Side for additional information*

**54**

SHRR 2747257v1

Page 1 of 2



MAHMOOD SYED A
4294 Mystic Lane
18615 WOODDUCK DR
SPRING LAKE, MI 49456



Page 2 of 2

55

FOIA REQUEST

Greg Kruse
5617 South Shore Drive  <1973>
Whitehall, MI. 49461

Karolyn Rillema, FOIA coordinator
Fruitland Township
4545 Nestrom Rd.
Whitehall, MI. 49461

Re: F.O.I.A. Request  [5376.dlrd]

The Freedom of Information Act 15.231 say's that I can request an opportunity to obtain
a copy of a public record, so I am @ this time $5/21/14$  for my immediate neighbor
and fellow tax payer residing @

WITHAM RICHARD/KARA TRUST
5376 W DUCK LAKE RD    Parcel Number: 06-120-100-0008-00
WHITEHALL, MI 49461

Document(s) specifically requested;

  1. FRUITLAND TOWNSHIP ZONING COMPLIANCE APPLICATION.
  2. APPROVED FRUITLAND TOWNSHIP ZONING COMPLIANCE PERMIT
     Re; Authorizing Erection of Tree Branch Fence entire 330ft. of Duck Lake
     Road Frontage and same for entire 230ft. Nestrom Road Frontage @ ROW.

Sincerely,

Greg Kruse
Fruitland Township 1973

**56**

# RESPONSE TO REQUEST FOR PUBLIC RECORDS - FREEDOM OF INFORMATION ACT

## Fruitland Township

| Date of Response 5/22/14 | FOIA Request *handwritten* |
|---|---|
| Request Type: | |
| ✓ Original | ☐ Additional Info. |

Dear *M. Kruse*

This letter is in response to your request dated *5/5/14*, received in this office on *5/22/14*, for
☑ **COPIES**   ☐ **INSPECTION** of the following record(s):

See attached.

Your request for public records has been reviewed and the following action(s) has been taken in compliance with the provisions of the State of Michigan's Freedom of Information Act.

1. ☐ **REQUEST GRANTED:** This request involves too many documents to be processed within standard time frames. Your request will be processed as soon as staff have completed the copying. *Township Staff: If this box is checked, you must provide another copy of this form when the documents are forwarded to the requestor. Also, check either box 2 or 3.*

2. ☐ **REQUEST GRANTED AS TO EXISTING NON-EXEMPT RECORDS:** Your requested documents are enclosed. The cost to produce these records is _____. Please make payment at the Fruitland Township Hall. A good faith estimate of the cost to produce must be paid to the Township Clerk prior the records being copied in the amount of _____.

3. ☐ **REQUEST GRANTED IN PART and DENIED IN PART:** (See comments on next page).

4. ☐ **REQUEST DENIED:** This agency has determined that the record(s) you have requested are exempt from disclosure based on the provisions of the Freedom of Information Act. (See comments on next page).

5. ☑ **REQUEST DENIED:** The record(s) you have requested do NOT exist within the records of this agency.

6. ☐ **REQUEST DENIED:** Your request does NOT describe the record(s) sufficiently to enable us to determine what record(s) you are seeking. Please submit a new request describing the record(s) in greater detail.

7. ☐ The specific nature of your request involves unusual circumstances which require an additional 10 business days to properly process your request as provided by Sec. 6(5) of the Freedom of Information Act.

The extension due date is _____         The reason for this extension is: _____

---

**UNDER SECTION 10 OF THE FREEDOM OF INFORMATION ACT, IF A PUBLIC BODY MAKES A FINAL DETERMINATION TO DENY ALL OR A PORTION OF YOUR REQUEST, YOU MAY DO ONE OF THE FOLLOWING:**

(1) Submit to the head of the public body, a written letter that states the word "APPEAL" and identifies the reason or reasons for reversal of denial.

(2) Commence an action in the circuit court to compel the public body's disclosure of the public records within 180 days after a public body's final determination to deny a request.

(3) Pursuant to M 15.235(5)(4)(e) this serves as notice of the right to receive attorneys' fees and damages as provided in Section 10, if after judicial review, the circuit court were to order disclosure of all or a ortion of the document s re uested.

---

| Signature of FOIA Coordinator or Representative | Name of Responding Office |
|---|---|
| *handwritten signature* | *handwritten* |

*See Reverse Side for additional information*

FOIA REQUEST

Greg Kruse, Tax Payer
5617 South Shore Drive  <1973>
Whitehall, MI. 49461

Karolyn Rillema, Clerk
Fruitland Township
4545 Nestrom Rd.
Whitehall, MI. 49461

The Freedom of Information Act 15.23 says that I can request an opportunity to

obtain a copy of a public record, so I am @ this time _____ for

RAFFAELE WILLIAM C/JANETTE
5382 W LAKEWOOD RD
WHITEHALL, MI 49461

*(diagonal stamp overlay:)* I HEREBY CERTIFY this to be a true and correct copy of the original on file in the office of the Fruitland Township Clerk. This Certified Copy has SEAL and RED when affixed. SIGNATURE ___ DATE __, 31, 14 FRUITLAND TOWNSHIP CLERK

Document specifically requested;

1. APPROVED FRUITLAND TOWNSHIP ZONING COMPLIANCE PERMIT
   Re; Approving Constructed Five Foot High Fence Currently on Road Frontage
   and Bordering 5350 W. Lakewood Rd.

I have no desire to inspect incomplete file. Copy this item only. If it is nonexistent
please advise as to the truth or advise as to the best of your knowledge.

Sincerely,

*(signature)*

Greg Kruse, Tax Payer
Fruitland Township 1973

58

# RESPONSE TO REQUEST FOR PUBLIC RECORDS - FREEDOM OF INFORMATION ACT

| Date of Response | FOIA Request |
|---|---|
| 2/4/14 | 2326 Richard Lee |
| Request Type: | |
| ✓ Original | Additional Info. |

## Fruitland Township

Dear  Mr. Kruse,

This letter is in response to your request dated 1/31/14 , received in this office on file

[✓] COPIES    [ ] INSPECTION of the following record(s):

See attached.

*I HEREBY CERTIFY this to be an original on file and correct copy of the original with the office of the Fruitland Township Clerk. This Certified Copy when SEAL and RED are affixed. VALID SIGNATURE of FRUITLAND TOWNSHIP CLERK*

Your request for public records has been reviewed and the following action(s) has been taken in compliance with the provisions of the State of Michigan's Freedom of Information Act.

1. [ ]  **REQUEST GRANTED:** This request involves too many documents to be processed within standard time frames. Your request will be processed as soon as staff have completed the copying. *Township Staff: If this box is checked, you must provide another copy of this form when the documents are forwarded to the requestor. Also, check either box 2 or 3.*

2. [ ]  **REQUEST GRANTED AS TO EXISTING NON-EXEMPT RECORDS:** Your requested documents are enclosed. The cost to produce these records is _____. Please make payment at the Fruitland Township Hall. A good faith estimate of the cost to produce must be paid to the Township Clerk prior to the records being copied in the amount of _____.

3. [ ]  **REQUEST GRANTED IN PART and DENIED IN PART:** (See comments on next page).

4. [ ]  **REQUEST DENIED:** This agency has determined that the record(s) you have requested are exempt from disclosure based on the provisions of the Freedom of Information Act. (See comments on next page).

5. [✓]  **REQUEST DENIED:** The record(s) you have requested do NOT exist within the records of this agency.

6. [ ]  **REQUEST DENIED:** Your request does NOT describe the record(s) sufficiently to enable us to determine what record(s) you are seeking. Please submit a new request describing the record(s) in greater detail.

7. [ ]  The specific nature of your request involves unusual circumstances which require an additional 10 business days to properly process your request as provided by Sec. 6(5) of the Freedom of Information Act.

The extension due date is                    The reason for this extension is:

---

**UNDER SECTION 10 OF THE FREEDOM OF INFORMATION ACT, IF A PUBLIC BODY MAKES A FINAL DETERMINATION TO DENY ALL OR A PORTION OF YOUR REQUEST, YOU MAY DO ONE OF THE FOLLOWING:**

(1) Submit to the head of the public body, a written letter that states the word "APPEAL" and identifies the reason or reasons for reversal of denial.

(2) Commence an action in the circuit court to compel the public body's disclosure of the public records within 180 days after a public body's final determination to deny a request.

(3) Pursuant to M 15.235(5)(4)(e) this serves as notice of the right to receive attorneys' fees and damages as provided in Section 10, if after judicial review, the circuit court were to order disclosure of all or a ortion of the document s re uested.

---

| Signature of FOIA Coordinator or Representative | Name of Responding Office |
|---|---|
| Phillips Roon | Clerk, Foia Coordinator |

*See Reverse Side for additional information*

59

SHRR 2747257v1



RAFFAELE WILLIAM C/JANETTE
5382 W LAKEWOOD RD
WHITEHALL, MI 49461

Page 2 of 2



FOIA REQUEST

Greg Kruse
5617 South Shore Drive  <1973>
Whitehall, MI. 49461

Karolyn Rillema, Clerk/FOIA coordinator
Fruitland Township
4545 Nestrom Rd.
Whitehall, MI. 49461

Re: F.O.I.A. Request [3960SD]

The Freedom of Information Act 15.231 say's that I can request an opportunity to obtain
a copy of a public record, so I am @ this time  _6.26.14_  for my neighbor and fellow
tax payer residing @

**BUEHLER LAWRENCE J/DAWN**

**3960 SCENIC DR**

**WHITEHALL, MI 49461**

**Parcel Number:  06-562-000-0004-00**

Document(s) specifically requested;

1.  FRUITLAND TOWNSHIP ZONING COMPLIANCE APPLICATION
2.  APPROVED FRUITLAND TOWNSHIP ZONING COMPLIANCE PERMIT
    Re; Authorizing Erection of Fence @ ROW Along Entire Frontage.

Sincerely,

Greg Kruse
Fruitland Township 1973

*[stamp, diagonal:]* I HEREBY CERTIFY this to be the original on and correct copy of the Fruitland Copy with the office of the Clerk. This Certified Copy Township Only when SEAL and RED VALID Only when SEAL and RED SIGNATURE are affixed. _____ TLAND TOWNSHIP CLERK

**61**

# RESPONSE TO REQUEST FOR PUBLIC RECORDS - FREEDOM OF INFORMATION ACT

| Date of Response | FOIA Request |
|---|---|
| 6/30/14 | 39603D |
| Request Type: | |
| ☑ Original | ☐ Additional Info. |

## Fruitland Township

Dear Mr. Kruse,

This letter is in response to your request dated 6/26/14 , received in this office on 6/27/14 , for
☑ COPIES  ☐ INSPECTION of the following record(s):

See attached.

Your request for public records has been reviewed and the following action(s) has been taken in compliance with the provisions of the State of Michigan's Freedom of Information Act.

1. ☐ **REQUEST GRANTED:** This request involves too many documents to be processed within standard time frames. Your request will be processed as soon as staff have completed the copying. *Township Staff: If this box is checked, you must provide another copy of this form when the documents are forwarded to the requestor. Also, check either box 2 or 3.*

2. ☐ **REQUEST GRANTED AS TO EXISTING NON-EXEMPT RECORDS:** Your requested documents are enclosed. The cost to produce these records is _____. Please make payment at the Fruitland Township Hall. A good faith estimate of the cost to produce must be paid to the Township Clerk prior the records being copied in the amount of _____

3. ☐ **REQUEST GRANTED IN PART and DENIED IN PART** (See comments on next page).

4. ☐ **REQUEST DENIED:** This agency has determined that the record(s) you have requested are exempt from disclosure based on the provisions of the Freedom of Information Act. (See comments on next page).

5. ☑ **REQUEST DENIED:** The record(s) you have requested do NOT exist within the records of this agency.

6. ☐ **REQUEST DENIED:** Your request does NOT describe the record(s) sufficiently to enable us to determine what record(s) you are seeking. Please submit a new request describing the record(s) in greater detail.

7. ☐ The specific nature of your request involves unusual circumstances which require an additional 10 business days to properly process your request as provided by Sec. 6(5) of the Freedom of Information Act.

The extension due date is _____        The reason for this extension is: _____

---

UNDER SECTION 10 OF THE FREEDOM OF INFORMATION ACT, IF A PUBLIC BODY MAKES A FINAL DETERMINATION TO DENY OR A PORTION OF YOUR REQUEST, YOU MAY DO ONE OF THE FOLLOWING:

(1) Submit to the head of the public body, a written letter that states the word "APPEAL" and identifies the reason or reasons for reversal of denial.

(2) Commence an action in the circuit court to compel the public body's disclosure of the public records within 180 days after a public body's final determination to deny a request.

(3) Pursuant to M 15.235(5)(4)(e) this serves as notice of the right to receive attorneys' fees and damages as provided in Section 10, if after judicial review, circuit court were to order disclosure of all or a ortion of the document s re uested.

---

| Signature of FOIA Coordinator or Representative | Name of Responding Office |
|---|---|
| *(signature)* Karolyn Rellen Clerk | FOIA Coordinator **62** |

*See Reverse Side for additional information*

Greg Kruse
September 12, 2014
5617 South Shore Drive    <1973>
Whitehall, MI. 49461

Karolyn Rillema, Clerk/FOIA coordinator
Fruitland Township
4545 Nestrom Rd.
Whitehall, MI. 49461


Re: Completed Zoning Compliance Application/Form & Issued Zoning Compliance Permit.


The Freedom of Information Act 15.231 say's that I can request an opportunity to obtain copies
of public records, so I am @ this time September 12, 2014   for

MEYERS RALPH
1490 W DUCK LAKE RD
MUSKEGON, MI 49445   *actual location Whitehall, MI. 49461 "Fruitland subdivision"
# 06-124-200-0012-00


Document(s) specifically requested:

1.  One (1) copy of original zoning compliance application.

2.  One (1) copy of original issued zoning compliance permit. re; building and home
    improvement(s).



Sincerly,



Greg Kruse, Tax Payer
Fruitland Township 1973

63

# RESPONSE TO REQUEST FOR PUBLIC RECORDS - FREEDOM OF INFORMATION ACT

| Date of Response | FOIA Request |
|---|---|
| 9/15/2014 | 1490 W. Duck Lk Rd |
| Request Type: | |
| ☑ Original | ☐ Additional Info. |

## Fruitland Township

Dear Mr. Kruse,

This letter is in response to your request dated 9/12/14 , received in this office on Emailed 9/12/14 , for
☑ COPIES    ☐ INSPECTION of the following record(s):

See attached.

Your request for public records has been reviewed and the following action(s) has been taken in compliance with the provisions of the State of Michigan's Freedom of Information Act.

1. ☐ **REQUEST GRANTED:** This request involves too many documents to be processed within standard time frames. Your request will be processed as soon as staff have completed the copying. *Township Staff: If this box is checked, you must provide another copy of this form when the documents are forwarded to the requestor. Also, check either box 2 or 3.*

2. ☐ **REQUEST GRANTED AS TO EXISTING NON-EXEMPT RECORDS:** Your requested documents are enclosed. The cost to produce these records is _____. Please make payment at the Fruitland Township Hall. A good faith estimate of the cost to produce must be paid to the Township Clerk prior the records being copied in the amount of _____.

3. ☐ **REQUEST GRANTED IN PART and DENIED IN PART:** (See comments on next page).

4. ☐ **REQUEST DENIED:** This agency has determined that the record(s) you have requested are exempt from disclosure based on the provisions of the Freedom of Information Act. (See comments on next page).

5. ☑ **REQUEST DENIED:** The record(s) you have requested do NOT exist within the records of this agency.

6. ☐ **REQUEST DENIED:** Your request does NOT describe the record(s) sufficiently to enable us to determine what record(s) you are seeking. Please submit a new request describing the record(s) in greater detail.

7. ☐ The specific nature of your request involves unusual circumstances which require an additional 10 business days to properly process your request as provided by Sec. 6(5) of the Freedom of Information Act.

The extension due date is _____    The reason for this extension is:

---

**UNDER SECTION 10 OF THE FREEDOM OF INFORMATION ACT, IF A PUBLIC BODY MAKES A FINAL DETERMINATION TO DENY ALL OR A PORTION OF YOUR REQUEST, YOU MAY DO ONE OF THE FOLLOWING:**

(1) Submit to the head of the public body, a written letter that states the word "APPEAL" and identifies the reason or reasons for reversal of denial

(2) Commence an action in the circuit court to compel the public body's disclosure of the public records within 180 days after a public body's final determination to deny a request

(3) Pursuant to M 15.235(5)(4)(e) this serves as notice of the right to receive attorneys' fees and damages as provided in Section 10, if after judicial review, the circuit court were to order disclosure of all or a ortion of the document s re uested

---

| Signature of FOIA Coordinator or Representative | Name of Responding Office |
|---|---|
| Karolyn Rillema, Clerk | FOIA Coordinator |

*See Reverse Side for additional information*

SHRR 2747257v1

64

FOIA REQUEST

Greg Kruse, Tax Payer
5617 South Shore Drive   <1973>
Whitehall, MI. 49461

Karolyn Rillema, Clerk
Fruitland Township
4545 Nestrom Rd.
Whitehall, MI. 49461



Re: F.O.I.A. Request  [Orshal]

The Freedom of Information Act 15.231 say's that I can request an opportunity to  obtain
a copy of a public record, so I am @ this time _1.31.14_ for my current neighbor
residing @ :

NICHOLS DANIEL JR/ERIKA L
4467 ORSHAL RD
WHITEHALL, MI 49461

Document specifically requested;

1. FRUITLAND TOWNSHIP ZONING COMPLIANCE APPLICATION
2. APPROVED FRUITLAND TOWNSHIP ZONING COMPLIANCE PERMIT
   Re; Authorizing Erection of Garage in Front Yard of Primary Dwelling.

If nonexistent please advise as to the truth or advise as to the best of your knowledge.

Sincerely,

Greg Kruse, Tax Payer
Fruitland Township 1973

Page 1 of 2



# RESPONSE TO REQUEST FOR PUBLIC RECORDS - FREEDOM OF INFORMATION ACT

| Date of Response | FOIA Request |
|---|---|
| 2/4/14 | 4401 Central |
| Request Type: | |
| ✓ Original | ☐ Additional Info. |

## Fruitland Township

Dear Mr. Kruse

This letter is in response to your request dated 1/31/14, received in this office on 2/4/14

☑ **COPIES**   ☐ **INSPECTION** of the following record(s):

See attached.

Your request for public records has been reviewed and the following action(s) has been taken in compliance with the provisions of the State of Michigan's Freedom of Information Act.

1. ☐ **REQUEST GRANTED:** This request involves too many documents to be processed within standard time frames. Your request will be processed as soon as staff have completed the copying. *Township Staff: If this box is checked, you must provide another copy of this form when the documents are forwarded to the requestor. Also, check either box 2 or 3.*

2. ☐ **REQUEST GRANTED AS TO EXISTING NON-EXEMPT RECORDS:** Your requested documents are enclosed. The cost to produce these records is _____. Please make payment at the Fruitland Township Hall. A good faith estimate of the cost to produce must be paid to the Township Clerk prior the records being copied in the amount of _____.

3. ☐ **REQUEST GRANTED IN PART and DENIED IN PART:** (See comments on next page).

4. ☐ **REQUEST DENIED:** This agency has determined that the record(s) you have requested are exempt from disclosure based on the provisions of the Freedom of Information Act. (See comments on next page).

5. ☑ **REQUEST DENIED:** The record(s) you have requested do NOT exist within the records of this agency.

6. ☐ **REQUEST DENIED:** Your request does NOT describe the record(s) sufficiently to enable us to determine what record(s) you are seeking. Please submit a new request describing the record(s) in greater detail.

7. ☐ The specific nature of your request involves unusual circumstances which require an additional 10 business days to properly process your request as provided by Sec. 6(5) of the Freedom of Information Act.

The extension due date is _____   The reason for this extension is:

---

**UNDER SECTION 10 OF THE FREEDOM OF INFORMATION ACT, IF A PUBLIC BODY MAKES A FINAL DETERMINATION TO DENY ALL OR A PORTION OF YOUR REQUEST, YOU MAY DO ONE OF THE FOLLOWING:**

(1) Submit to the head of the public body, a written letter that states the word "APPEAL" and identifies the reason or reasons for reversal of denial.

(2) Commence an action in the circuit court to compel the public body's disclosure of the public records within 180 days after a public body's final determination to deny a request.

(3) Pursuant to M 15.235(5)(4)(e) this serves as notice of the right to receive attorneys' fees and damages as provided in Section 10, if after judicial review, the circuit court were to order disclosure of all or a ortion of the document s re uested.

---

| Signature of FOIA Coordinator or Representative | Name of Responding Office |
|---|---|
| | Clerk FOIA Coordinator |

*See Reverse Side for additional information*

SHRR 2747257v1

66



NICHOLS DANIEL JR/ERIKA L
4467 ORSHAL RD
WHITEHALL, MI 49461

67

FRUITLAND TOWNSHIP DECEMBER 21, 2015 REGULAR MEETING MINUTES

> Motion by Clerk Rillema, second by Treasurer Beegle, **ADOPTED,** to
> approve the Parks & Recreation Commission Master Plan.
> *Upon Voice Vote:* **7** AYES – **motion carried**

Supervisor St. Amour stated that he re-defined the proposed budget listing prepared by the Parks
& Recreation but is waiting for final quotes from Chair Knopf on tennis court repairs and sand
for the lower area at Nestrom Park. Continued talks of requested projects will take place when
budget discussions start in January.

> Motion by Trustee Deur, second by Trustee Rissi, **ADOPTED,** to appoint
> Mark Williamson to the vacancy on the Parks & Recreation Commission.
> *Upon Voice Vote:* **7** AYES – **motion carried**

- Ordinance Enforcement – Supervisor St. Amour updated the board on several ordinance
  enforcement items. He stated that a condemnation hearing for 4790 W. Bard was held on
  the 18th of December and the Hearing Officer Jensen ordered the outbuilding on the
  property to be demolished by January 18, 2016. The construction/encroachment of a
  patio deck in the right-of-way at 4437 South Shore Drive is being handled by the
  Muskegon County Road Commission but is being tracked by Zoning Administrator
  Jensen. The Road Commission has ordered that the patio/deck be removed in its entirety.
  The property at 3839 Lakewood Road has now gone into foreclosure. Supervisor St.
  Amour has contacted the bank to get cleanup initiated. Supervisor St. Amour has tasked
  Zoning Administrator Jensen with the review of portable tent/garage ordinance as 4530
  Michillinda Road has placed two on the property along with storage of garbage. The
  property at 2223 Michillinda Road put up a fence that has been shortened to the correct
  height but not zoning was acquired.

## OLD BUSINESS –

1. Zellar Road Project (Proposed Special Assessment) – Supervisor St. Amour stated that
   discussion on the project will take place at the January work session.

2. Lamos Road End – Supervisor St. Amour stated that he has asked Attorney Even to
   weigh in on whether or not a yearly agreement with the MCRC would protect the road
   end for public use without us owning it which will be discussed at the January work
   session.

3. R & M Contract – Supervisor St. Amour stated that Attorney Even is drafting and is
   being postponed for discussion until the January work session.

4. Land Conservancy – Supervisor St. Amour stated his frustration with receiving no
   information from the Conservancy on the grant. Trustee Deur will contact April Schultz
   and report his findings to Supervisor St. Amour.



2223 Michilda Rd

69



**MENU**

Home    Contact Us    Forms    About Treasury    MI.gov

TREASURY / LOCAL GOVERNMENT / LOCAL GOV FINANCIAL SERVICES

# 2000-2 Statewide Construction Code Act Public Act 245 of 1999

March 31, 2000

To:    County Treasurers, City Treasurers, Township Treasurers, Village Treasurers, Michigan
         Municipal League, and Michigan Township Association

From:    Richard L. Baldermann, CPA, CGFM
             Administrator, Local Audit and Finance Division
             Bureau of Local Government Services

RE:    State Construction Code Act

The Public Act 245 of 1999 (effective January 1, 2000) was signed on December 28, 1999 by Governor Engler to amend the State Construction Code Act (Public Act 230 of 1972) which provides for statewide application of the Act and the State Construction Code. Public Act 245 of 1999 specifies that the statewide code would apply to the plumbing, electrical, mechanical, and building codes (in the Administrative Code) only after rules promulgated under the Act to update each code are filed with the Secretary of State after January 31, 2000.

Department of Consumer and Industry Services has been given the responsibility to provide oversight of the State Construction Code Act. The accounting within the local unit of government is the responsibility of the Treasury Department under Public Act 2 of 1968, as amended.

The Act in Section 22 requires that the legislative bodies of the local government establish "reasonable fees" which "bear a reasonable relationship" to the cost of operating the enforcing agency. Typically, the enforcing agency is the building department or planning department issuing building permits; examining plans and specifications; inspecting construction before issuing building permits; and issuing certificates of use and occupancy. The Act states that the use of fees generated under this section can only be used for: the operation of the enforcing agency, the construction board of appeals, or both and shall not be used for any other purpose. In the past, the accounting was generally established as a General Fund activity. Because Public Act 245 of 1999 requires that these fees only be used for a specific purpose, a separate special revenue fund must be established to account for the enforcement activities.



Section 22 states that fees are to be based on the direct costs of the enforcing agency and the indirect cost of operations, known as "overhead." Overhead costs will usually include common costs such as telephone service, building maintenance, utilities, general insurance and office supplies. Other indirect costs may include the allocation of the cost of salaries and fringe benefits related to certain support activities, such as human resources and the accounting staff. However, the allocation of costs should not include those offices required by statute, such as the clerk and treasurer. Since a local unit of government would incur those costs, regardless of the decision to enforce the state building code, they do not represent appropriate allocable costs.

Cost allocation is a process by which costs not directly identifiable with a service are assigned to those services in a logical and consistent manner. This allocation is necessary to accurately determine the full cost of each service. To recover the total cost of operations, revenue-producing activities must carefully allocate all expenses to be recovered. Where possible, the costs directly identifiable should be assigned to the individual service. However, many costs associated with a service cannot be directly identified with it, which makes it necessary to allocate indirect costs. To do this, revenue-producing activities must establish a logical and consistent basis for allocating costs. It is very important that all direct costs of operating the enforcing agency be charged to the budget of the building department. Many local units do not allocate fringe benefit costs and payroll taxes to the user department. To properly calculate the cost of this function, all direct costs such as salaries and wages must be charged to the enforcing agency, including fringe benefit costs and payroll taxes used to provide the service. We recommend that the local unit of government review prior years' expenditure reports to determine the actual cost of operating the building and inspection department in helping to establish fees which are "reasonable."

Audits

An annual audit is required. The audit is to be performed in accordance with generally accepted auditing standards, and the financial statements are to be in accordance with generally accepted accounting principles. The audit of the Building Department Fund (249) may be in conjunction with all funds of the county or local unit and in compliance with the provisions of PA 2 of 1968, as amended. The requirements of the Bulletin for Audit of Local Units of Government must be adhered to in the performance of the audit. Two copies of the audit are filed with the Michigan Department of Treasury, Local Audit and Finance Division in accordance with the provisions of PA 2 of 1968, as amended.

Accounting

The following procedures should be adopted to provide uniformity in accounting for revenues and expenditures resulting from the enforcement of the State Construction Code Act of 1999 (PA 245 of 1999).

Special Revenue Fund

Building Inspection Department--fund number 249 (special revenue fund) for accounting of revenues and expenditures under Public Act 245 of 1999. (Following is a summary to be inserted in your Chart of Accounts notebook.) Revenues from user fees should be recorded as "Charges for Services" account numbers 607 through 625.

Activities



Expenses should be charged to Activity 371–Building Inspection Department or 372 to 399 for various inspection activities that may be assigned as needed.

Accounts

Detailed asset, liability, revenue and expenditure accounts as needed and provided for in the Uniform Chart of Accounts. Detailed fixed asset accounts as needed and provided for in the Uniform Chart of Accounts.

If you have any questions, please call (517) 373-3227 or write:

Michigan Department of Treasury
Local Audit and Finance Division
P.O. Box 30728
Lansing, Michigan 48909-8228

SPECIAL REVENUE FUND TYPE
249 BUILDING DEPARTMENT FUND

The Building Department Fund is used in each village, township, city or county to account for revenues earmarked for building construction code enforcement activities. The fund is required by Public Act 230 of 1972, MCL Section 125.1522 to 125.1531, as amended by PA 245 of 1999.

The Building Department Fund is used to account for the receipts and expenditures related to the cost of operating the enforcing agency under the provisions of the State Construction Code Act. Typically, the enforcing agency is the building department or planning department issuing building permits; examining plans and specifications; inspecting construction before issuing building permits; and issuing certificates of use and occupancy. The use of fees generated under this act can only be used for: the operation of the enforcing agency, construction board of appeals, or both and shall not be used for any other purpose. The primary source of revenue is fees (user charges) collected in compliance with the State Construction Code Act.

The cash and investments of the Building Department Fund are subject to the requirements of PA 20 of 1943, as amended, (MCL 129.91), and may be included in a pooled cash and investment.

The Building Department Fund must operate only with a budget adopted by the county board of commissioners, township board, city or village council as required by PA 2 of 1968, as amended, (MCL 141.421 et al).

All claims (expenditures) must be approved by the legislative board or council pursuant to: Counties--MCL 46.11(q) and MCL 46.71 (Exception, Finance Committee MCL 46.53 and 46.63); Cities--MCL 87.7 and 88.20; Township MCL 41.75; and Villages--MCL 65.7.

## About Treasury
Treasurer Nick A. Khouri
Deputy Treasurers

## Communications
Treasury Contact
Information

## Other Resources
Investments
Michigan Lottery

## State of Michigan


http://www.michigan.gov/treasury/0,4679,7-121-1751_2194-7632--,00.html



3/4

# ARTICLE R 40
## SECTION R 40.01    ORDINANCE TO ADOPT BUILDING CODES

ORDINANCE TO CONFIRM ADOPTION OF THE MICHIGAN RESIDENTIAL, BUILDING, ELECTRICAL, MECHANICAL AND PLUMBING AND ENERGY CODES AND TO REPEAL THE 1997 UNIFORM BULDING CODE, 1996 NATIONAL ELECTRICAL CODE, 1997 INTERNATIONAL PLUMBING CODE AND 1996 INTERNATIONAL MECHANICAL CODE.

THE TOWNSHIP OF FRUITLAND, MUSKEGON COUNTY, MICHIGAN ORDAINS:

1.  On December 28, 1999 the State of Michigan adopted Public Act 245 of 1999. Public Act 245 amended the State Construction Code Act ("Act") to provide for a single set of construction codes throughout Michigan. Pursuant to Notices of Adoption previously provided to the Michigan Bureau of Construction Codes, Fruitland Township has confirmed that it will administer and enforce all of the construction codes adopted by the State of Michigan.

2.  All ordinances inconsistent with the provisions of this ordinance, including, but not limited to, Ordinance No. 100-29 adopted June 20, 2000 and Ordinance Nos. 100-16, 100-17 and 100-18 adopted on September 15, 1997, are hereby repealed.

3.  The township clerk shall certify that the adoption of this ordinance and cause it to be published.

4.  To the extent that this ordinance adopts state law, it shall become effective on the dates set forth under state law. Otherwise, this ordinance shall take effect July 31, 2001.

5.  This ordinance was adopted on July 16, 2001 at a regular meeting of the Fruitland Township Board.

Adoption Date:    July 16, 2001
Publication Date: July 23, 2001
Effective Date:    July 31, 2001

Amended:    April 18, 2005 to amend numbering, article and section identification
Published:  April 24, 2005
Effective:   May 01, 2005



JOURNAL ENTRY
JE:  90001992

Post Date:  01/14/2015                                    Entered By: RILLEMA
Entry Date:  01/14/2015                                   Journal: P/R
Description:  PAYROLL OF JANUARY 1 - 15, 2015


PAYROLL JANUARY 1 - JANUARY 15, 2015

| GL # | Description | DR | CR |
|------|-------------|-----|-----|
| 101-371-703.000 | INSP - ZONING ADM SALARY | 498.71 | |
| 101-371-714.000 | INSP - ZONING ADM PENSION | 74.81 | |
| 101-371-715.000 | INSP - ZONING ADM SOC/MED | 43.87 | |
| 101-371-704.000 | INSP - OFFICE HELP #2 OFFICE HELP | 127.68 | |
| 101-371-714.000 | INSP - OFFICE HELP #2 PENSION | 19.15 | |
| 101-371-715.000 | INSP - OFFICE HELP #2 SOC SEC/MED | 11.23 | |
| 101-371-704.000 | INSP - OFFICE HELP #1 OFFICE HELP | 446.04 | |
| 101-371-714.000 | INSP - OFFICE HELP #1 PENSION | 74.12 | |
| 101-371-715.000 | INSP - OFFICE HELP #1 SOC SEC/MED | 43.66 | |
| 101-371-910.001 | INSP - OFFICE HELP #1 HEALTH INS FRINGE | 48.13 | |

Journal Total:  1,387.40     0.00

APPROVED BY: _____

I HEREBY CERTIFY this to be a true
and correct copy of the original on file
with the office of the Fruitland
Township Clerk. This Certified Copy
VALID Only when SEAL and RED
SIGNATURE are affixed.

FRUITLAND TOWNSHIP CLERK

72 i

```
                                   JOURNAL ENTRY
                                   JE: 90001994

    Post Date: 01/30/2015                        Entered By: RILLEMA
    Entry Date: 01/30/2015                       Journal: P/R
    Description: PAYROLL OF JANUARY 16-31, 2015


       PAYROLL JANUARY 16 - 31, 2015
  GL #                      Description                            DR         CR
  101-371-703.000    INSP - ZONING ADM SALARY              498.71
  101-371-714.000    INSP - ZONING ADM PENSION              74.81
  101-371-715.000    INSP - ZONING ADM SOC/MED              43.87
  101-371-704.000    INSP - OFFICE HELP #2 OFFICE HELP     120.96
  101-371-714.000    INSP - OFFICE HELP #2 PENSION          18.14
  101-371-715.000    INSP - OFFICE HELP #2 SOC SEC/MED      10.64
  101-371-704.000    INSP - OFFICE HELP #1 OFFICE HELP     423.74
  101-371-714.000    INSP - OFFICE HELP #1 PENSION          70.78
  101-371-715.000    INSP - OFFICE HELP #1 SOC SEC/MED      41.51
  101-371-910.001    INSP - OFFICE HELP #1 HEALTH INS FRINGE 48.13
                                               Journal Total:   1,351.29      0.00


       APPROVED BY: _____
```

I HEREBY CERTIFY this to be a true and correct copy of the original on file with the office of the Fruitland Township Clerk. This Certified Copy VALID Only when SEAL and RED SIGNATURE are affixed.

FRUITLAND TOWNSHIP CLERK

FRUITLAND TOWNSHIP BOARD
REGULAR MEETING
MAY 18, 2015
MINUTES

**PRESENT -** Trustee Bard, Trustee Deur, Trustee Rissi, Supervisor St. Amour, Clerk Rillema, Treasurer Beegle, Trustee Hampel

**ALSO PRESENT -** (5) Five interested parties

**CALL TO ORDER -** Supervisor St. Amour called the Monday, May 18, 2015 Regular Meeting to order at 5:00 PM. The pledge of allegiance and a moment of silence was observed.

**AGENDA -**           Motion by Trustee Deur, second by Trustee Bard, to accept the May 18, 2015 Regular Township Board Meeting Agenda.
*Upon Voice Vote:* **7 AYES – motion carried**

**PUBLIC COMMENT -**
1) Greg Kruse, South Shore Drive 1973 – Expressed his concerns of an alleged misappropriation of thousands of dollars from accounts within the township budget and provided a copy of his public comment to all board members.

2) Mark Eisenbarth, Muskegon County Administrator – Introduced himself and spoke about the Quality of Life Millage that could be renewed if projects are identified for the County. He welcomed ideas going forward.

3) Lynn Knopf, 4382 Mystic Lane/Parks & Recreation Commissioner – Updated the Board of Trustees on Parks & Recreation Commission happenings (updating P&R Master Plan, upcoming survey to residents/property owners, recent contact with DEQ regarding upgrading parking at Marcus Park).

**MINUTES -**           Motion by Clerk Rillema, second by Trustee Deur, ***ADOPTED,*** to accept the April 13, 2015 Work Session Minutes and April 20, 2015 Regular Meeting Minutes.
*Upon Voice Vote:* **7 AYES – motion carried**

**RECEIPTS & DISBURSEMENTS –**

Motion by Treasurer Beegle, second by Trustee Bard, ***ADOPTED,*** to accept Receipts of $29,192.21 and Bank Balance and Certificate of Deposits of $1,284,695.80 for the period of April 1, 2015 through April 30, 2015 as reported by Melissa Beegle, Fruitland Township Treasurer and approve Fund 101 Disbursements in the amount of $47,042.65, Fund 120 Disbursements in the amount of $162,061.69 and Fund 130 Disbursements in the amount of $590.40 for the period of April 1, 2015 through April 30, 2015 as



FRUITLAND TOWNSHIP BOARD
WORK SESSION
JUNE 8, 2015
MINUTES

**PRESENT:** Trustee Hampel, Trustee Bard, Trustee Deur, Trustee Rissi, Treasurer Beegle, Clerk Rillema, Supervisor St. Amour

**ALSO PRESENT:** Attorney Even and (3) three interested parties.

**CALL TO ORDER:** Supervisor St. Amour called the Monday, June 8, 2015 Work Session of the Township of Fruitland Board to order at 10:00 AM at the township hall.

**AGENDA:**

Motion by Trustee Bard, second by Trustee Deur, ***ADOPTED,*** to accept the June 8, 2015 Work Session Agenda.
*Upon Voice Vote:* **7** **AYES - motion carried**

**PUBLIC COMMENT:** There was no public comment.

**ANNOUNCEMENTS:** Supervisor St. Amour stated that Laketon Township did not approve the additional PINS proposal so it will not be occurring at this time. Supervisor St. Amour stated that the public comment from Mr. Kruse was reviewed but will not be answered as the information does not contain substance. Attorney Even stated that in order to place a PPO on an individual, at least two occurrences need to have happened. Supervisor St. Amour has been invited to attend a Sheriff Emergency Service Meeting on June 15. D& B Brining will be brining the week of June 15th. The autistic sign request has been rejected by the MCRC at this time. As of today, 83 discount dump cards have been purchased. The interested party in purchasing some of our Lakewood lots has decided not to purchase at this time.

Motion by Trustee Rissi, second by Trustee Bard, ***ADOPTED,*** to suspend for open floor comments from Parks & Recreation Chairperson Lynn Knopf at 10:07 AM.
*Upon Voice Vote:* **7** **AYES - motion carried**

Chair Knopf shared with the Board of Trustees the proposed survey questions to be included in the summer tax mailing and also be available on line hosted by Survey Monkey. The survey will help guide the Parks & Recreation is completing their Master Plan and provide insight for future projects going forward. Contact Chair Knopf if you have any additional information or suggestions on the proposed questions. Chair Knopf also stated that she looks forward to attending future work sessions to enhance the relationship/communication between both boards.

Motion by Trustee Deur, second by Trustee Bard, ***ADOPTED,*** to close open floor comments at 10:12 AM.
*Upon Voice Vote:* **7** **AYES - motion carried**



*May 17, 2015*

To Head of Public body aka.fruit. twp. Board of trustees, May 18th 2015 Regular Session Board Meeting:

Once again, I appear before this head of the public body closest to me, however today its

NOT regarding my concern for the public safety of my neighbors (s) BUT my concern(s)

regarding the misappropriation of thousands of dollar(s) from account(s) within your

governmental subdivision authority. Lansing has brought to my attention that there appears

to be accounting irregularities that need immediate attention for thisgovermental subdivsion

to be compliant with the law, after all **it is the law**. I urge this seated board move to invite

and welcome with open arms the proper authorities for to come in and conduct a complete,

thorough and <u>transparent</u> examination of **all** account(s). And then Publish YOUR Finding(s)

demonstrating this public body'sTransparency v. Translucence. thank you. handed to board.

REC'D MAY 1 9 2015

**72 M**

04-17-'14 08:26 FROM-Laketon Township      231-744-2506      T-984  P0002/0003 F-985



Fruitland Township
White River Light Station Museum

# FRUITLAND TOWNSHIP

4545 Nestrom Road
Whitehall, MI 49461
(231) 766-3208
Fax (231) 766-3027
www.fruitlandtwp.org

TOWNSHIP BOARD
Sam E. St. Amour - Supervisor
Karolyn Rillema - Clerk
Melissa M. Beegle - Treasurer
TRUSTEES:
Mary Ann Bard
Jan Deur
Terrie Hampel
Val Rissi

April 16, 2014

William H. White
27209 Winchester Dr.
Trenton, Michigan 48183

Re: 4790 W. Bard Rd.

Dear Mr. White,

On Wednesday April 16, 2014 I conducted an inspection of the "Storage Building" at
4790 W. Bard Rd.

The purpose of this inspection was to evaluate the condition of the damage resulting from
the apparent roof collapse.

It is my determination that the building has been damaged to such an extent that the
structural strength or stability thereof is materially less than it was before the catastrophe
and is less than the minimum requirements of the 2009 MRC (Michigan Residential
Code) and the 2009 IPMC (International Property Maintenance Code) as adopted by
Fruitland Township.

In keeping with Fruitland Townships goal of a high quality community, this notice is
being sent to make you aware of these conditions that require attention.

Therefore I am requiring that you contact the Fruitland Township Hall at 4545 Nestrom
Rd. (231-766-3208) by **Thursday May 1, 2014** to make application for and secure the
necessary permits to repair the building to be compliant with the 2009 MRC and the 2009
IPMC or a "Demolition Permit" to remove the structure from the property.

Of equal importance I must ask you to also address the 2 automobiles and the 2 pickup
trucks (with expired license plates) and the 5 trailers on the property.

These appear to be a violation of Article 46 of the Townships "Regulatory Ordinance".

Therefore I ask that you contact Mr. Sam StAmour, Fruitland Township Supervisor, with
your intentions to comply with the Ordinance.



EXHIBIT
2

04-17-'14 08:26 FROM-Laketon Township        231-744-2506        T-984  P0003/0003 F-985

You or any person directly affected by this decision shall have the right to appeal to the Fruitland Township Board of Appeals. A written application for appeal must be filed within 20 days after the date of this notice.

An application for appeal shall be based on a claim that the true intent of the IPMC or MRC or the rules legally adopted thereunder have been incorrectly interpreted, do not full apply, or the requirements are adequately satisfied by other means.

Any person failing to comply with this notice shall be deemed guilty of a misdemeanor and shall be deemed a "strict liability offense".

Any action taken by Fruitland Township shall be charged against 4790 W. Bard Rd. and shall be a lien upon such real estate.

Your anticipated cooperation is greatly appreciated.


Sincerely,

Rod A. Siegel
Fruitland Township Building Official


Cc: Sam StAmour – Supervisor
    Karolyn Rillema – Clerk
    Melissa Beegle – Treasurer
    Don Sandel – Zoning Adminstrator
    Kevin Even – Attorney
    Lester Dehaan – Condemnation Officer
    File: 61-06-120-400-0010-00



# FRUITLAND TOWNSHIP

4545 Nestrom Road
Whitehall, MI 49461
(231) 766-3208
Fax (231) 766-3027
www.fruitlandtwp.org

**Fruitland Township**
**White River Light Station Museum**

**TOWNSHIP BOARD**
Sam E. St. Amour - Supervisor
Karolyn Rillema - Clerk
Melissa M. Beegle - Treasurer
TRUSTEES:
Mary Ann Bard
Jan Deur
Terrie Hampel
Val Rissi

October 8, 2014

*3-26-15 mr white mail
called mr white mail
left msg on voice mail
to call me. with an
update on progress if any
are also who + are his plans for 2015
C.H*

William H. White
27209 Winchester Dr.
Trenton, Michigan 48183

Dear Mr. White,

I had previously sent you a notice regarding the damage to the accessory building at 4790 Bard Rd. resulting from the apparent roof collapse.

In that notice I had asked that you contact the Fruitland Township Hall to make application for and secure the necessary permits to repair the building or to take out a "Demolition Permit" to remove the structure from the property.

I also requested that you contact the Mr. Sam StAmour, Township Supervisor, with regards to the 2 automobiles, 2 pickup trucks and the 5 trailers on the property with your intentions to comply with Article 46 of the Townships "Regulatory Ordinance".

To date we have not received any response from you other than a conversation you had with our office staff member, Sally Dion.

Please contact the Fruitland Township Hall at 231-766-3208 or myself at 231-206-3424 regarding the above.

Your anticipated cooperation is greatly appreciated.

RAS

Rod A. Siegel
Fruitland Township Building Official

Cc: Sam StAmour – Supervisor
Kevin Even – Attorney
Lester DeHaan – Condemnation Officer
File: 61-06-120-400-0010-00

**73 B**

**EXHIBIT**
**3**



**Fruitland Township Museum**
White River Light Station Museum

# Fruitland Township

4545 Nestrom Rd
Whitehall, MI  49461
(231) 766-3208
Fax (231) 766-3027
www.fruitlandtwp.org

**Township Board**
Sam St. Amour,
Supervisor
Karolyn Rillema-Clerk
Melissa Beegle-Treasurer
**Trustees**
Mary Ann Bard
Jan Deur
Terrie Hampel
Val Rissi

January 22, 2016

Fruitland Township Board;
Sam St. Amour, Karolyn Rillema, Melissa Beegle,
Jan Deur, Mary Ann Bard, Terrie Hampel, Val Rissi

CC/ Kevin Even-Attorney

Re/ Fruitland Township Condemnation Hearing 12-18-2015
4790 Bard, Whitehall, MI 49461

Dear Township Board Members,

A Condemnation Hearing regarding the unsafe structure (collapsed pole barn) was held on December 18, 2015. I, Val Jensen II presided as the Condemnation Hearing Officer of the proceeding. Evidence was presented from Building Officials of the condition of the unsafe structure (collapsed pole barn), and the failure to comply with avenues to address this issue by property owner, Mr. William White.

After hearing testimony and seeing evidence of the unsafe structure (collapsed pole barn), I determined the building should be demolished. My order issued on December 18, 2015 gave Mr. William White 30 days to demolish the unsafe structure (collapsed pole barn).

An inspection by Fruitland Township Building Inspector Chris Hall on January 19, 2016 determined  the unsafe structure (collapsed pole barn) still remains, and has further deteriorated.

A conversation with the Fruitland Township office staff revealed no contact by Mr. William White regarding acquisition of a demolition permit to demolish the unsafe structure (collapsed pole building). At this present date (January 22, 2016), no acquisition of a demolition permit, or an application for a demolition permit has been submitted by Mr. William White, or by an independent contractor hired by Mr. William White.

Per condemnation rules, the Fruitland Township Zoning Administrator, Val Jensen II, is to issue a report with recommendations to the Fruitland Township Board no later than January 23, 2016.

At this present date of January 22, 2016, Mr. William White has not complied with any order to remedy the unsafe structure (collapsed pole barn). I recommend taking the necessary steps to remove the unsafe structure (collapsed pole barn).



73C

EXHIBIT

### CERTIFICATE OF DELIVERY TO RESPONDENT BY PERSONAL SERVICE

I hereby certify that a true copy of the above Findings and Order was delivered by me personally to William White at the time of the hearing on December 18, 2015.

Val Jensen, II

STATE OF MICHIGAN
County of Muskegon

Subscribed and sworn to before me on December 18, 2015.

Karolyn Ann Rillema, Notary Public
Muskegon County, MI
My Commission Expires: 11/11/2021
Acting in Muskegon County

### CERTIFICATE OF POSTING ON CONSPICUOUS PLACE

I hereby certify that a true copy of the above Findings and Order was posted upon a conspicuous part of the subject building or structure.

Chris Hall, Building Official

STATE OF MICHIGAN
County of Muskegon

Subscribed and sworn to before me on December 22, 2015.

Karolyn Ann Rillema, Notary Public
Muskegon County, MI
My Commission Expires: 11/11/2021
Acting in Muskegon County

4

held on December 18, 2015. Evidence was presented from the Township Building Official that the Building was unsafe and that White continuously failed to address the issues. Hearing Officer, Val Jensen II, determined that the Building was dangerous and should be demolished. White was present at the hearing and presented his position. Following the consideration of the testimony an Order was issued, giving White until January 18, 2016 to demolish the Building. White failed to comply with the Order of the Hearing Officer. See Order attached as **Exhibit 1**.

On January 19, 2016 an inspection by a Township Building Official determined the Building had not been demolished and had further deteriorated. On January 22, 2016 the Township Building Official filed his report with the Township Board of Trustees informing them that his Order of December 18, 2015 had not been complied with and requested that the Township Board of Trustees take necessary action to enforce the December 18, 2016 Order.

On March 14, 2016 a show cause hearing was held to determine why the Order had not been satisfied. At the show cause hearing the Township Board of Trustees evidence was presented as to the condition of the Building. Following the close of proofs, the Order was approved the Building was ordered to be demolished. The Township Board of Trustees gave White until April 4, 2016 to comply with the order of demolition. See **Exhibit 2**. No appeal was taken from the Township Board of Trustee's decision. As of May 9, 2016 White had not appealed the Township Board of Trustee's decision to demolish the unsafe Building.

Notice was then given to White to pay the demolition cost within thirty (30) days or the Township would file a lien on the property. A Notice of Lien was recorded on June 22, 2016 for the cost of the demolition of the Building and of maintaining the grounds adjoining the Building located at the Property. See **Exhibit 3**.

On September 26, 2016 Randy and Janet Varney purchased the Property pursuant to a sale by a judgment creditor of White at judicial auction. The certificate of sale by judicial levy to the Randy and

Janet Varney is attached as **Exhibit 4**. The sale to Randy and Janet Varney is contingent and may ripen into title following the redemption period.

## II.    LAW AND ARGUMENT:

The law in Michigan is firmly entrenched that a municipal corporation has the right to demolish an unsafe dangerous building as a public nuisance as a means to promoting public health, safety, and welfare of the public and is a legitimate exercise of police power. *Bonner v City of Brighton*, 495 Mich 209, 229; 848 NW2d 380, 392, cert den sub nom. *Bonner v City of Brighton*, Mich, 135 S Ct 230; 190 L Ed 2d 134 (2014).

In this case the Township complied with its own Ordinance regarding the dangerous unsafe buildings as well as the Michigan Statute that parallels the Township's Ordinance. White was afforded a full and complete opportunity to appear and challenge the unsafe building citation (See all documentation filed with Plaintiff's complaint). Despite having appeared at the initial dangerous building hearing White did not appear at the show cause hearing. White did not appeal the decision of the Hearing Official or the decision of the Township Board of Trustees. The public nuisance continues unabated as evidenced by the photographs attached to Plaintiff's complaint as exhibit 1.

MCR 3.601 applies to actions to abate public nuisances. The rule states in pertinent part:

> On answer of a defendant or entry of a defendant's default, a party other than a defendant in default may notice the action for hearing on 7 days' notice. Hearings in actions under this rule take precedence over actions that are not entitled to priority by statute or rule and may be held at the time they are noticed without further pretrial proceedings.

In addition to the provision that allows for a motion to abate a public nuisance to take place on 7 days' notice the rule provides that on the day noticed for hearing, the court is to hear and determine the disputed issues and ***enter a proper order and judgment*** (emphasis added): MCR 3.601 (D)(1). Here there is no disputed issue as the Township has already complied with its Ordinance, the state housing law and is simply asking this Court for its blessing to proceed with the demolition.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

3



# FRUITLAND TOWNSHIP

4545 Nestrom Road
Whitehall, MI 49461
(231) 766-3208
Fax (231) 766-3027
www.fruitlandtwp.org

**TOWNSHIP BOARD**
Sam E. St. Amour - Supervisor
Karolyn Rillema - Clerk
Melissa M. Wilks - Treasurer
TRUSTEES:
Mary Ann Bard
Norma Binns
Gary Bole
Jan Deur

June 5, 2012

Tony Moulatsiotis
Muskegon County Treasurer
173 E. Apple Ave.
Suite 104
Muskegon, Michigan 49442

Re: 4058 W. Michillinda Rd.
    Parcel No: 61-06-109-400-0003-20

*I HEREBY CERTIFY this to be a true and correct copy of the original on file with the office of the Fruitland Township Clerk. This Certified Copy VALID Only when SEAL and RED SIGNATURE are affixed.*

*FRUITLAND TOWNSHIP CLERK*

On Wednesday, May 23, 2012, I conducted an inspection, it was observed and notice was posted that the house at 4058 W. Michillinda Rd. exists as "Dangerous and Unsafe" in its present condition.

The purpose of this inspection was to evaluate compliance with the IPMC (International Property Maintenance Code 2009) adopted by Fruitland Township.

A portion of the structure, specifically a roof section at the rear of the building, has been damaged by deterioration and neglect to such an extent that it has totally collapsed.

This building has become dilapidated to the point of being unsecured so as to become a potential attractive nuisance to children who might play in the building to their danger.

This building presents a substantial risk of fire, a threat to life, and is clearly unsafe for its intended use and occupancy as a dwelling.

In keeping with Fruitland Townships goal of a high quality community, this letter is being sent to make you aware of the property conditions at the above address that requires attention.

I would appreciate it if a representative from Muskegon County would contact either Fruitland Township or myself regarding this building.

**73 h**

On behalf of the the Township, your cooperation is greatly appreciated.


Sincerely,

*Rod A. S*

Rod A. Siegel
Fruitland Township Building Official


Cc: Sam StAmour – Supervisor
    Karolyn Rillema – Clerk
    Melissa Beegle – Treasurer
    Kevin Even – Attorney
    Lester DeHaan – Condemnation Officer
    File: 61-06-109-400-0003-20

I HEREBY CERTIFY this to be a true and correct copy of the original on file with the office of the Fruitland Township Clerk. This Certified Copy VALID Only when SEAL and RED SIGNATURE are affixed.

FRUITLAND TOWNSHIP CLERK

731

109-400-0003-20

LAKETON TWP.

MAR 0 2 2017

RECEIVED

BY CERTIFY this to be a true
correct copy of the original
in the office of the Fruitland
Township Clerk. This Certified Copy
VALID Only when SEAL and RED
SIGNATURE are affixed.

FRUITLAND TOWNSHIP CLERK.

**CERTIFICATE OF OCCUPANCY**
**FRUITLAND TOWNSHIP**
**COUNTY OF MUSKEGON**
**STATE OF MICHIGAN**

This is to certify that the structure(s) under Permit number.

**PBD-13-0063**

Issued by the Fruitland Township Building Department and having complied with the requirements of the 2009 Michigan Building Code, permission is hereby granted to occupy the said premises as set forth in the corresponding application under which the permits were granted, so far as completed.

Automatic sprinkler system provided   Yes _X_
No ___

**JEREMY COLLINS**
**4058 W. MICHILLINDA ROAD**
**WHITEHALL, MI 49461**

Signed in Whitehall, Michigan        12/17/13

Rod Siegel

NON-TRANSFERABLE

**Rod A. Siegel**
**Building Official**

**STIPULATIONS**

73

Posted as Unsafe

4052 W Michigan Rd.






73 K

## HOUSING LAW OF MICHIGAN (EXCERPT)
### Act 167 of 1917

**125.402 Housing law of Michigan; definitions.**

Sec. 2. Definitions. Certain words in this act are defined for the purposes thereof as follows: Words used in the present tense include the future; words in the masculine gender include the feminine and neuter; the singular number includes the plural and the plural the singular; the word "person" includes a corporation as well as a natural person.

(1) Dwelling. A "dwelling" is any house, building, structure, tent, shelter, trailer or vehicle, or portion thereof, (except railroad cars, on tracks or rights-of-way) which is occupied in whole or in part as the home, residence, living or sleeping place of 1 or more human beings, either permanently or transiently. A house trailer or other vehicle, when occupied or used as a dwelling, shall be subject to all the provisions of this act, except that house trailers or other vehicles, duly licensed as vehicles, may be occupied or used as a dwelling for reasonable periods or lengths of time, without being otherwise subject to the provisions of this act for dwellings, when located in a park or place designated or licensed for the purpose by the corporate community within which they are located: Provided, That such parking sites are equipped with adequate safety and sanitary facilities.

(1a) "Sub-standard dwelling" is a dwelling of any class which is not so equipped as to have each of the following items: running water, inside toilets; or a dwelling which has either inadequate cellar drainage, defective plumbing, and inside room having no windows therein, improper exits or defective stairways so as to make such dwelling a fire hazard.

(2) Classes of dwellings. For the purposes of this act dwellings are divided into the following classes: (a) "private dwellings," (b) "2 family dwellings," and (c) "multiple dwellings."

(a) A "private dwelling" is a dwelling occupied by but 1 family, and so designed and arranged as to provide cooking and kitchen accommodations for 1 family only.

(b) A "2 family dwelling" is a dwelling occupied by but 2 families, and so designed and arranged as to provide cooking and kitchen accommodations for 2 families only.

(c) A "multiple dwelling" is a dwelling occupied otherwise than as a private dwelling or 2 family dwelling.

(3) Classes of multiple dwellings. All multiple dwellings are dwellings and for the purpose of this act are divided into 2 classes, viz.: class a and class b.

Class a. Multiple dwellings of class a are dwellings which are occupied more or less permanently for residence purposes by several families and in which the rooms are occupied in apartments, suites or groups, in which each combination of rooms is so arranged and designed as to provide for cooking accommodations and toilet and kitchen sink accommodations within the separate units. This class includes tenement houses, flats, apartment houses, apartment hotels, bachelor apartments, studio apartments, duplex apartments, kitchenette apartments, and all other dwellings similarly occupied whether specifically enumerated herein or not.

Class b. Multiple dwellings of class b are dwellings which are occupied, as a rule transiently, as the more or less temporary abiding place of individuals who are lodged, with or without meals, and in which as a rule the rooms are occupied singly and without any attempt to provide therein or therewith cooking or kitchen accommodations for the individual occupants. This class includes hotels, lodging houses, boarding houses, furnished room houses, club houses, convents, asylums, hospitals, jails and all other dwellings similarly occupied, whether specifically enumerated herein or not.

(3a) Rooming house. A "rooming house" under this act shall be construed to mean any dwelling occupied in such a manner that certain rooms, in excess of those used by the members of the immediate family and occupied as a home or family unit, are leased or rented to persons outside of the family, without any attempt to provide therein or therewith, cooking or kitchen accommodations for individuals leasing or renting rooms. In the case of single and 2 family dwellings the number of such bedrooms leased or rented to roomers shall not exceed 3, unless such dwellings be made to comply in all respects with the provisions of this act relating to multiple dwellings.

(4) Hotel. A "hotel" is a multiple-dwelling of class b in which persons are lodged for hire and in which there are more than 50 sleeping rooms, a public dining room for the accommodation of at least 50 guests, and a general kitchen.

(5) Mixed occupancy. In cases of mixed occupancy where a building is occupied in part as a dwelling, the part so occupied shall be deemed a dwelling for the purposes of this act and shall comply with the provisions thereof relative to dwellings.

(6) Yards. A "rear yard" is an unoccupied space on the same lot with a dwelling, between the extreme rear line of the dwelling and the rear lot line and extending from 1 side lot line to the other side lot line. A "side yard" is an unoccupied space on the same lot with a dwelling between the side lot line and the nearest side



I HEREBY CERTIFY this to be a true and correct copy of the original with the office of the Fruitland Township Clerk. This Certified is VALID Only when SEAL and SIGNATURE are affixed.

*FRUITLAND TOWNSHIP CLERK*

# Fruitland Township
### Building Department
4545 Nestrom Rd
Whitehall, MI 49461
231-766-3208

Inspection Date 3 - 18 - 2015

Address of Inspection Site 4058 Michillinda

# Inspection

| ☒ Building | ☐ Electrical | ☐ Mechanical | ☐ Plumbing |
|---|---|---|---|
| # _____ | # _____ | # _____ | # _____ |

| | | | |
|---|---|---|---|
| ☐ Footing | ☐ Service Upgrade | ☐ Underground | ☐ Underground |
| ☐ Rough in | ☐ Temp. Service | ☐ Rough in | ☐ Rough in |
| ☐ Drywall | ☐ New Service | ☐ Gas Pressure | ☐ Final |
| ☐ Final | ☐ Rough in | ☐ Fireplace | ☐ _____ |
| ☒ | ☐ Final | ☐ Final | |
| Freedom of Information | ☐ _____ | ☐ _____ | |

**Approved**                    **Disapproved**

If disapproved, give the reason: _____

After reviewing the files for
4058 Michillinda.
Permits were issued for Building Electrical
Plumbing & Health Department.
Every permit was inspected and
approved

Inspector's Signature _____

**73 N**

**STILLE-DEROSSETT-HALE SINGLE STATE CONSTRUCTION CODE ACT (EXCERPT)**
Act 230 of 1972

### 125.1523 Unlawful conduct; penalty; separate offenses; retention of fine by governmental subdivision; designation of violation as municipal civil infraction.

Sec. 23. (1) Except as provided in subsection (3), a person or corporation, including an officer, director, or employee of a corporation, or a governmental official or agent charged with the responsibility of issuing permits or inspecting buildings or structures, who does any of the following is guilty of a misdemeanor punishable by a fine of not more than $500.00 or imprisonment for not more than 90 days, or both:

(a) Knowingly violates this act or the code or a rule for the enforcement of this act or code.

(b) Knowingly constructs or builds a structure or building in violation of a condition of a building permit.

(c) Knowingly fails to comply with an order issued by an enforcing agency, a construction board of appeals, a board, or the commission pursuant to this act.

(d) Knowingly makes a false or misleading written statement, or knowingly omits required information or a statement in an inspection report, application, petition, request for approval, or appeal to an enforcing agency, a construction board of appeals, a board, or the commission.

(e) Knowingly refuses entry or access to an inspector lawfully authorized to inspect any premises, building, or structure pursuant to this act.

(f) Unreasonably interferes with an authorized inspection.

(g) Knowingly issues, fails to issue, causes to be issued, or assists in the issuance of a certificate, permit, or license in violation of this act or a rule promulgated under this act or other applicable laws.

(h) Having a duty to report violations of this act or a rule promulgated under this act or other applicable laws, knowingly conceals a violation.

(2) With respect to subsection (1)(c), a person is guilty of a separate offense for each day that the person fails to comply with a stop construction order validly issued by an enforcing agency and for each week that the person fails to comply with any other order validly issued by an enforcing agency. With respect to subsection (1)(a) or (d), a person is guilty of a separate offense for each knowing violation of this act or a rule promulgated under this act and for each false or misleading written statement or omission of required information or statement knowingly made in an application, petition, request for approval, or appeal to an enforcing agency, a construction board of appeals, a board, or the commission. With respect to subsection (1)(b), a person is guilty of a separate offense for each knowing violation of a condition of a building permit.

(3) If a governmental subdivision has the responsibility of administering and enforcing this act and prosecutes a violation of this act, the governmental subdivision may retain a fine imposed upon conviction. If a governmental subdivision has the responsibility of administering and enforcing this act, the governmental subdivision may by ordinance designate a violation described in subsection (1) or (2) as a municipal civil infraction and provide a civil fine for the violation. The governmental subdivision may retain the civil fine imposed upon judgment.

**History:** 1972, Act 230, Eff. Jan. 1, 1973;—Am. 1978, Act 442, Imd. Eff. Oct. 9, 1978;—Am. 1980, Act 371, Imd. Eff. Dec. 30, 1980;—Am. 1994, Act 22, Eff. May 1, 1994.

**Popular name:** Act 230

**Popular name:** Uniform Construction Code

**Administrative rules:** R 408.30101 et seq. of the Michigan Administrative Code.



**FRUITLAND TOWNSHIP BOARD**
**WORK SESSION**
**SEPTEMBER 10, 2012**
**MINUTES**

**PRESENT:** Trustee Bard, Trustee Binns, Trustee Bole, Trustee Deur, Clerk Rillema, Treasurer Beegle, Supervisor St. Amour

**ALSO PRESENT:** Attorney Even and zero (0) interested parties.

**CALL TO ORDER:** Supervisor St. Amour called the Monday, September 10, 2012 Work Session of the Township of Fruitland Board to order at 10:00 AM at the township hall.

**AGENDA:** Supervisor St. Amour asked to amend the agenda by adding under New Business #4.5 Planning Commission Recommendations.

> Motion by Trustee Bard, second by Trustee Deur, ***ADOPTED,*** to accept the amended September 10, 2012 Work Session Agenda.
> *Upon Voice Vote:* **7** AYES

**PUBLIC COMMENT:**

There was no public comment.

**ANNOUNCEMENTS:** Supervisor St. Amour stated that he did not have any announcements at this time.

**OLD BUSINESS:**

1. Ordinance Enforcement – Supervisor St. Amour reviewed the following ordinance enforcement cases active in the township.
   - 3148 Worden Street – owner pled guilty and has moved
   - 4965 Duck Lake Road – pled guilty, paid fine but is still being monitored for cleanup
   - 2643 Duck Lake Road – ticketed and will be monitored for cleanup
   - 3980 McMillan Road – a re-visit is scheduled for next week for cleanup progress
   - 3043 Worden Road – Building Inspector will re-visit for building assessment
   - 3517 N. Green Creek Road – continued monitoring for cleanup
   - 6806 South Shore Drive – fence has been removed and will be monitored

> Motion by Trustee Bard, second by Trustee Deur, ***ADOPTED,*** to suspend for open floor comments from resident James Stanhope.
> *Upon Voice Vote:* **7** AYES

Resident James Stanhope asked how ordinance enforcement cases are brought to the attention of the Board. He asked if we drive the township and look for them or if they are brought to our attention by residents. Supervisor St. Amour stated that ordinance violations are not sought but are brought forth by residents either in person, email, phone or anonymously.



FRUITLAND TOWNSHIP SEPTEMBER 10, 2012 WORK SESSION MINUTES

> Motion by Trustee Bard, second by Trustee Deur, *ADOPTED,* to unsuspend from open floor comments.
> *Upon Voice Vote:* 7 **AYES**

2.　Civil Infractions – Attorney Even stated that he prepared a Resolution to be adopted by the Board naming the Ordinance Enforcement Bureau Clerk (Clerk Rillema) and Ordinance Enforcement Officers (Supervisor St. Amour, Clerk Rillema and Zoning Administrator Don Sandel) at the Regular Monday meeting.　Supervisor St. Amour stated that he would like to go over the process with the Bureau Clerk, Enforcement Officers, Treasurer and staff in the near future.

3.　Policies & Procedures, Employee Handbook – In the Policies and Procedures under 4.0 Financial Administration – 4.9 (b) Written quotations and sealed bids is still an item that Attorney Even is reviewing and will present his recommendation at the October work session.　Also under 3.0 Personnel Administration – 3.4 (c) Complaint Procedures Harassment, Attorney Even suggested language change and will present his recommendation at the October work session. In the Employee Handbook, the Board will remove the paid Birthday to employees, sick days will be changed to personal days and Attorney Even presented his recommendation for the vacation accrual process which the Board was in agreement.　No motion will be made to either until all changes are acceptable.

4.　WLFA Articles of Incorporation – Supervisor St. Amour asked to table this topic until he has a chance to discuss with Attorney Even.

5.　Lamos Road End – Attorney Even stated that he retrieved the files from Attorney Eklund on the road end and found the letter written to the westerly neighbors in 2009 but unfortunately it appears to have never been sent.　The Board discussed options to have a survey completed on the road end and signage or fencing placed down both boundaries to alert the community that it remains open to the public.　A motion will be prepared for the Monday Regular Meeting to obtain a survey and either place signage on posts or construct fencing along the westerly and easterly boundaries.

6.　Paper Container – Supervisor St. Amour stated that his conversation with Fruitland Evangelical Covenant Church regarding use of the paper container for use of the church as a polling location was turned down.　The church may find itself out of the paper collecting business soon due to other jurisdictions it works with considering switching to a co-mingled recycling source also.

7.　Dalton-Fruitland Waste Water Flow Through Agreement – Attorney Even at this time does not recommend Fruitland Township signing such agreement until further research can be done by Attorney Even and Supervisor St. Amour.

8.　Road Projects – Supervisor St. Amour prepared a proposed 2013 Murray Road Construction project worksheet for review.　Discussion by the Board willing to cover 60% of the cost and MCRC to potentially cover engineering costs, tasked Supervisor St. Amour to request a detailed quote from the MCRC and then send a postcard to Murray Road/Starboard Road residents asking the willingness to pay a special assessment for the difference.　The road

**74 a**

2

FRUITLAND TOWNSHIP SEPTEMBER 17, 2012 REGULAR MEETING MINUTES

- Citizens Advisory Wireless Committee – Trustee Deur reported that he had a conversation with My-Spot with regards to expanding 4G in the Muskegon area. Unfortunately, Fruitland Township is not yet in the area proposed for expansion at this time.

- McMillan Road End Update – Supervisor St. Amour reported that the email received from resident Nancy Johnson in regards to three separate instances. Supervisor St. Amour will follow up with police enforcement on procedures to be followed. Overall the board was pleased with the little activity engaged since the road end was reopened with the stairway.

- White Lake Public Advisory Committee – Trustee Deur reported that Al Steinman will be speaking on the environmental history of White Lake at the White Lake Community Library on Sunday, September 23, 2012 with regards to the history of chemical manufacturing on White Lake.

## OLD BUSINESS –

1. Ordinance Enforcement – Supervisor St. Amour reported various ordinance enforcement cases in the township. Several cases will be monitored in the future.

2. Civil Infractions – Supervisor St. Amour stated that the process of handling civil infractions will be discussed at the September work session. The following Resolution was adopted.

<div align="center">

**FRUITLAND TOWNSHIP**
**RESOLUTION 2012-19**
**APPOINTMENT OF ORDINANCE ENFORCEMENT OFFICERS AND ORDINANCE ENFORCEMENT BUREAU CLERK**

</div>

*WHEREAS,*   A resolution providing for the appointment of a Bureau Clerk to be responsible for the administration of the Township Ordinance Enforcement Bureau and to appoint persons to the office of Ordinance Enforcement Officer for such terms as set forth herein;

*NOW, THEREFORE, BE IT RESOLVED,* by the Board of Trustees of Fruitland Township that the Township Clerk is hereby appointed to the office of Bureau Clerk for the Township Ordinance Enforcement Bureau and is granted all such authority as allowed by law and further the following township employees are hereby appointed as Ordinance Enforcement Officers:

> The Township Supervisor
> The Township Clerk
> The Township Zoning Administrator

> Each Ordinance Enforcement Officer is hereby authorized to enforce all Ordinances of the Township of Fruitland, whether heretofore or hereafter enacted, and whether such Ordinances specifically designated a different official to enforce the same or do not designate any particular enforcing officer all as set forth in the Township's Ordinance Enforcement Officer Ordinance. This resolution in adopted pursuant to MCL 41.2.

Motion by Clerk Rillema, second by Treasurer Beegle, *ADOPTED.* Resolution 2012-19 Appointment of Ordinance Enforcement Officers and Ordinance Enforcement Bureau Clerk.

Upon a roll call vote, with all members present, the members voted as follows.
**"AYE":** Trustee Bard, Trustee Deur, Trustee Binns, Clerk Rillema, Treasurer Beegle, Trustee Bole, Supervisor St. Amour
**"NAY":** None
**"ABSENT":** None

*BE IT RESOLVED THAT,* Resolution 2012-19, Appointment of Ordinance Enforcement Officers and Ordinance Enforcement Bureau Clerk adopted at the September 17, 2012 Regular Meeting of the Township of Fruitland.

> Karolyn Rillema, Clerk
> Township of Fruitland
>
> Date: September 18, 2012



3

**Revised Statutes of 1846 (EXCERPT)**
**Powers and Duties of Townships.**

### 41.2 Inhabitants of organized township as body corporate; powers and duties generally; acquisition of property for public purposes; suit, act, or proceeding; supervisor as agent.

Sec. 2. (1) The inhabitants of an organized township are a body corporate and have, in addition to other powers that are conferred, all of the following powers and duties:

(a) To sue and be sued and appoint necessary agents and attorneys for that purpose.

(b) To make contracts necessary and convenient for the exercise of their corporate powers.

(2) In addition to other powers that are conferred, the township board may investigate any matter that is under the jurisdiction of the township and the authority vested in the township or an officer under this act. The supervisor or the township board by majority consent of the township board members serving may serve upon a person a subpoena that has been authorized by a court of proper jurisdiction in the county in which the township is situated compelling the person to appear before the board or a committee of the board to be examined under oath or to produce a document or object for inspection or copying. If a person objects to or otherwise fails to comply with the subpoena served upon him or her, the supervisor or the township board by majority consent of the township board members may file in that court an action to enforce the notice. The court may issue an order requiring the person to appear to be examined or to produce a document or object for inspection or copying. Failure to obey the order of the court is punishable by the court as a contempt.

(3) By resolution of the township board, a majority of the members serving may acquire property for public purposes by purchase, gift, condemnation, lease, construction, or otherwise and may convey or lease that property or part of that property not needed for public purposes.

(4) A suit, act, or proceeding, by or against a township, in its corporate capacity, shall be in the name of the township. The supervisor of each township shall be the agent for his or her township for the transaction of legal business, by whom a suit may be brought and defended, and upon whom process against the township shall be served.

**History:** R.S. 1846, Ch. 16;—CL 1857, 494;—CL 1871, 637;—How. 670;—CL 1897, 2268;—CL 1915, 2047;—CL 1929, 957.— CL 1948, 41.2;—Am. 1988, Act 117, Imd. Eff. May 2, 1988;—Am. 1989, Act 77, Imd. Eff. June 20, 1989;—Am. 1992, Act 16, Imd. Eff. Mar. 16, 1992.



# MUSKEGON COUNTY
## MICHIGAN
990 Terrace Street, Muskegon, MI 49442

# FREEDOM OF INFORMATION ACT RESPONSE

To: _Greg Kruse_

You requested: _Incident Report - MCSD_

_15-8009_

(Brief description of the request)

From: _Sheriff Dept. (FOIA 15-143F)_

(County Department or Office request submitted to)

The response to your request is as follows:

☒ Granted as indicated below:

  ☒ Copies of the requested records are attached.

  ☐ You may obtain copies of the requested records by first paying a fee of $ _____

  ☐ You may inspect the requested records at this office on _____ at the time of _____. You may copy or order copies of those records after inspection.

☐ **Denied**

  This is a certification that the records you requested do not exist under the name given or by another name reasonably known to this public body. Please see Notice of Right to Appeal.

☐ **Partial**

  A certain portion of your request was denied. Please review the above Denied information for an explanation. Review the checked box under the granted response for the cost of the information that was granted.

☐ **Extension**

  Due to unusual circumstances, this public body requires an additional ten (10) business days to respond to your request.

☐ **Deposit**

  Because the cost of the requested records will exceed $50, a good faith deposit in the amount of $ _____ (1/2 the total estimated cost) is required in order for the County to process your request.

☐ **Exempt**

  The records you requested are exempt for the reason given: _____

### NOTICE OF RIGHT TO APPEAL

Submit to the Chairperson of the Muskegon County Board of Commissioners a written appeal that specifically states the word "appeal" and identifies the reasons for the reversal of the disclosure denial to:

Attn: County Board Chairperson
C/O County Administrator
990 Terrace, 4th Floor
Muskegon, MI 49442

MCLA 15.240: (1) If a public body makes a final determination to deny a request or a portion thereof, the requesting person may commence an action in the Circuit Court to compel disclosure of the public records. If the court determines that the public records are not exempt from disclosure, the court shall order the public body to cease withholding or to produce a public record or a portion thereof wrongfully withheld, regardless of the location of the public record...the court shall determine the matter de novo and the burden is on the public body to sustain its denial...Failure to comply with an order of the court may be punished as contempt of court...(4) If a person asserting the right to inspect or to receive a copy of a public record or a portion thereof prevails in an action commenced pursuant to this section, the court shall award reasonable attorney's fees, costs and disbursements. If the person prevails in part, the court may in its discretion award reasonable attorney's fees, costs, and disbursements or an appropriate portion there...(5) In an action commenced pursuant to this section, if the circuit court finds that the public body has arbitrarily and capriciously violated this act by refusal or delay in disclosing or providing copies of a public records, the court shall, in addition to any actual or compensatory damages, award punitive damages in the amount of $500.00 to the person seeking the right to inspect or receive a copy of a public record...

Approved by: _Daniel R. Stout_     Date: _11/23/15_

County of Muskegon FOIA Policy: Response Form



| Agency Name | INCIDENT/INVESTIGATION | Case# |
|---|---|---|
| *Muskegon County Sheriff* | **REPORT** | *2015-08009* |

| ORI | Date / Time Reported |
|---|---|
| *MI 6116100* | *11/16/2015  16:55  Mon* |

| | Last Known Secure |
|---|---|
| | *11/16/2015  16:54  Mon* |

| Location of Incident | Premise Type | Zone/Tract | At Found |
|---|---|---|---|
| *4545 Nestrom Rd, Fruitland Township MI* | *Governement/public* | FL | *11/16/2015  16:55  Mon* |

| | Crime Incident(s) | | Weapon / Tools | | | | Activity |
|---|---|---|---|---|---|---|---|
| #1 | *General Assistance* | (Com) | | | | | *N* |
| | 99008 | | Entry | | Exit | Security | |
| #2 | Crime Incident | ( ) | Weapon / Tools | | | | Activity |
| | | | Entry | | Exit | Security | |
| #3 | Crime Incident | ( ) | Weapon / Tools | | | | Activity |
| | | | Entry | | Exit | Security | |

| # of Victims  *0* | Type: | Injury: | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| V1 | Victim/Business Name (Last, First, Middle) | Victim of Crime # | DOB Age | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
| Home Address | | | | | Home Phone | | |
| Employer Name/Address | | | Business Phone | | Mobile Phone | |

| VYR | Make | Model | Style | Color | Lic/Lis | VIN |
|---|---|---|---|---|---|---|
| | | | | | | |

CODES:   V- Victim (Denote V2, V3)   O = Owner (if other than victim)   R = Reporting Person (if other than victim)

| Type:  INDIVIDUAL/ NOT LAW ENFORCEMENT | | Injury: | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Code *RP* | Name (Last, First, Middle) *ST AMOUR, SAM EARL* | Victim of Crime # | DOB Age | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
| Home Address | | | | | Home Phone | | |
| Employer Name/Address | | | Business Phone | | Mobile Phone | |

| Type:  BUSINESS | | Injury: | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Code *IO* | Name (Last, First, Middle) *FRUITLAND TOWNSHIP HALL* | Victim of Crime # | DOB Age | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
| Home Address *4545 Nestrom Rd  Fruitland Township, MI 49461* | | | | | Home Phone *231-766-3208* | | |
| Employer Name/Address | | | Business Phone | | Mobile Phone | |

1 = None  2 = Burned  3 = Counterfeit / Forged  4 = Damaged / Vandalized  5 = Recovered  6 = Seized  7 = Stolen  8 = Unknown
("OJ" = Recovered for Other Jurisdiction)

| VI # | Code | Status Frm/To | Value | OJ | QTY | Property Description | Make/Model | Serial Number |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

| Officer/ID#   *FOSTER, SCOTT R    (MCSDSRF1)* | | |
|---|---|---|
| Invest ID#   *(0)* | Supervisor   *HERREMANS, PATRICK N* | |
| Complainant Signature | Case Status *Closed*   *11/17/2015* | Case Disposition:   Page 1 |

# Incident Report Additional Name List

*Muskegon County Sheriff*

OCA: *2015-08009*

Additional Name List

Page 2

| | NameCode/# | Name (Last, First, Middle) | Victim of Crime # | DOB | Age | Race | Sex |
|---|---|---|---|---|---|---|---|
| 1) | IO  2 | *KRUSE, GREGORY ARTHUR* | | | | | |
| | Address | | | | | | |
| | Empl/Addr | | H: | | | | |
| | | | B: | | - | - | |
| | | | Mobile #: | | - | - | |



# INCIDENT/INVESTIGATION REPORT

By: MCSDPAC1,    11/23/2015 14:0

Page 3

...skegon County Sheriff

| Case# | 2015-08009 |

Status Codes    1 = None    2 = Burned    3 = Counterfeit / Forged    4 = Damaged / Vandalized    5 = Recovered    6 = Seized    7 = Stolen    8 = Unknown

| | IBR | Status | Quantity | Type Measure | Suspected Type | |
|---|---|---|---|---|---|---|
| D | | | | | | |
| R | | | | | | |
| U | | | | | | |
| G | | | | | | |
| S | | | | | | |

Assisting Officers

*BOUWMAN, K.W. (MCSDKWB1)*

Suspect Hate / Bias Motivated:

### NARRATIVE

Page 3

Peace officer stand by a Fruitland Township Board meeting. No problems. Closed.

749

## REPORTING OFFICER NARRATIVE

| | | |
|---|---|---|
| *Muskegon County Sheriff* | | OCA<br>*2015-08009* |
| Victim<br>*KRUSE, GREGORY A.* | Offense<br>*GENERAL ASSISTANCE* | Date / Time Reported<br>*Mon 11/16/2015 16:55* |

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

INFORMATION

I was dispatched to 4545 Nestrom for a disturbance. The caller, Sam St Amour, advised Gregory Kruse was at the building causing problems.

CONTACT SAM ST AMOUR(COMPLAINANT)

When I arrived Sam advised the Gregory had not caused any problems yet but given Gregory's past behavior he was concerned there would be some problems. Sam requested that I stand by until the meeting was over.

ACTION TAKEN

I stood by without incident.

DISPOSITION

Closed.

Dep S Foster 87450



**FRUITLAND TOWNSHIP BOARD**
**REGULAR MEETING**
**DECEMBER 21, 2015**
**MINUTES**

**PRESENT –** Trustee Bard, Trustee Deur, Clerk Rillema, Treasurer Beegle, Trustee Hampel, Supervisor St. Amour, Trustee Rissi

**ALSO PRESENT –** (5) five interested parties.

**CALL TO ORDER –** Supervisor St. Amour called the Monday, December 21, 2015 Regular Meeting to order at 5:00 PM. The pledge of allegiance and a moment of silence was observed for those less fortunate.

**AGENDA –**

> Motion by Trustee Bard, second by Trustee Deur, ***ADOPTED,*** to accept the December 21, 2015 Regular Township Board Meeting Agenda.
> *Upon Voice Vote:* **6 AYES, 1 ABSENT – motion carried**

**PUBLIC COMMENT –**

1) Irene Pierson, 6100 Murray Road – Thanked the Board of Trustees for all our hard work.

2) County Commissioner Terry Sabo – Announced that he is entering his last year as our County Commissioner and will be seeking nomination for the 92nd State District seat which is being vacated by Rep. Marcia Hovey-Wright due to term limits.

3) Greg Kruse, South Shore Drive, 1973 – Questioned the Board of Trustees about a report he obtained from the Muskegon County Sheriff's Department regarding his alleged disturbance at last month's meeting and handed a copy to all board members.

4) Deputy Ashker, Muskegon County Sheriff's Department – Stated he was freed up in the area and decided to attend the public meeting.

**MINUTES –**

> Motion by Clerk Rillema, second by Trustee Bard, ***ADOPTED,*** to accept the November 9, 2015 Work Session Minutes and November 16, 2015 Regular Meeting Minutes.
> *Upon Voice Vote:* **6 AYES, 1 ABSENT – motion carried**

Trustee Rissi arrived at 5:05 PM.

**RECEIPTS & DISBURSEMENTS –**

> Motion by Treasurer Beegle, second by Trustee Deur, ***ADOPTED,*** to accept the Receipts of $23,890.98 and Bank Balance and Certificate of



 **Gmail**

Greg K. <kmanone1@gmail.com>

## Economic Condition Factor (ECF) neighborhood survey conducted for my Homestead in the year(s) 2012 and 2013.
1 message

**g.** <kmanone1@gmail.com>                                            Wed, Jul 1, 2015 at 8:39 AM
To: assessor@fruitlandtwp.org
Cc: marciahoveywright@house.mi.gov, "HollyHughes@house.mi.gov" <HollyHughes@house.mi.gov>,
senghansen@senate.michigan.gov, "editor@whitelakebeacon.com" <editor@whitelakebeacon.com>,
jleatzow@whitelakebeacon.com, fruitlandtownshipmiscx2@gmail.com, "sabote@co.muskegon.mi.us"
<sabote@co.muskegon.mi.us>

Greg Kruse                                            July 01, 2015
5617 South Shore Drive
Whitehall, MI. 49461

Susan K. Bowen, Assessor
Sam Stamour, Chief Assessor
Fruitland Township
4545 Nestrom Rd.
Whitehall, MI. 49461


Dear Sue;
    Could send me a copy of your original Economic Condition Factor (ECF) neighborhood survey conducted for my
Homestead in the year 2012. Please send response or advisement to my Homestead mailing address, when most
convenient.  Thank-you.


Sincerely,

Greg Kruse




📄 **Bowen.letter.homestedECF2012Survey.7.01.15.rtf**
    161K

75

FRUITLAND TOWNSHIP  JULY 20, 2015 REGULAR MEETING MINUTES

9.     Meeting Schedule – Resolution 2015-08

> Motion by Clerk Rillema, second by Trustee Rissi, **AMENDED,** Resolution 2015-08 to change the meeting night of the Planning Commission for the remainder of Fiscal Year 2015-16.
> *Roll Call Vote:* Trustee Hampel **AYE**, Treasurer Beegle **AYE**, Clerk Rillema **AYE**, Trustee Rissi **AYE**, Trustee Deur **AYE**, Trustee Bard **AYE**, Supervisor St. Amour **AYE – motion carried**

10.     Zellar Road Clean Up – White Lake Drive to Michillinda Rd – Supervisor St. Amour will speak with Paul Bouman when he is here at the August Work Session regarding whether or not this program still exists before contacting Mr. Hyatt.

11.     Darva Boot Illegal Subdivision Split – Supervisor St. Amour and Clerk Rillema stated that an illegal split of a subdivision occurred after the township board denied in 1989. Zoning Administrator Sandel was contacted by Mr. and Mrs. Topping stating that the lot is now for sale. Attorney Even will be contacted to understand what the steps are necessary going forward.

12.     Second Brining – Supervisor St. Amour stated that he has driven several roads that were brined and doesn't feel they require additional brining at this time due to the rainfall that has been occurring keeping the dust at bay. The resident on Simonelli Road interested in paying for a second brine from White Lake Drive to Lakewood Road will be contacted that the cost for the brining will be $500.00 with no cost from the MCRC for prepping the road. It will need to be prepaid before brining will be done.

12.5     FOIA Appeals –

> Motion by Trustee Bard, second by Supervisor St. Amour, ADOPTED, to deny Mr. Kruse of his FOIA appeals dated July 16, 2015 and duplicate appeal dated July 17, 2015 stating that his request was not a FOIA request. Per the Freedom of Information Act 442 of 1976, Section 15.232 Definitions (i) "written request" means a writing that asks for information and includes a writing transmitted by facsimile, electronic mail, or other electronic means. His letter to Assessor Bowen is in writing form requesting a copy of information and was treated as a FOIA request. *Upon Voice Vote:* **7** AYES - **motion carried**

> Motion by Trustee Bard, second by Supervisor St. Amour, ADOPTED, to deny Mr. Kruse of his FOIA appeal stating that the letter dated July 1 informing him that his affidavit was defective was a motive to deny his eight requests. The Freedom of Information amendments effective July 1, 2015 states that an individual is indigent and receiving specific public assistance or, if not receiving public assistance, stating facts showing inability to pay the cost because of indigency. Mr. Kruse's affidavit is

75a

# FRUITLAND TOWNSHIP FREEDOM OF INFORMATION ACT ("FOIA") PROCEDURES AND GUIDELINES SUMMARY

This summary of procedures and guidelines was promulgated pursuant to PA 563 2014 ("Act"), and adopted by the Fruitland Township Board of Trustees on April 20, 2015 and has an effective date of July 1, 2015. A complete copy of the Fruitland Township's procedures and guidelines are publicly available free of charge at http://fruitlandtwp.org.

## 1.    HOW TO SUBMIT WRITTEN REQUESTS TO THE PUBLIC BODY

A request must be made in writing and provided to the FOIA coordinator or his/her designee. Such request should be addressed as follows:

Fruitland Township FOIA Coordinator
4545 Nestrom Road
Whitehall, MI  49461

Requests may also be made via the Fruitland township website at http://fruitlandtwp.org

A request must describe the public record sufficiently to enable the Township to find the public record. Exempt matters do not have to be produced and are described in Section 13 of the Act, MCL §15.243. A written request may be made by letter, facsimile, or email. All requests for a public record should conspicuously note that the request is being made pursuant to the Freedom of Information Act or "FOIA."

## 2.    UNDERSTANDING A PUBLIC BODY'S WRITTEN RESPONSES

The FOIA does not require the Township to make a compilation, summary, or report of information, nor does it require the Township to create a new public record.

All FOIA requests received by the Township will be promptly forwarded to the FOIA coordinator. The Township will furnish the requestor a reasonable opportunity for inspection and examination and will furnish reasonable facilities for making memoranda or abstracts from its public records during the usual business hours if requested. The Township has implemented reasonable rules necessary to protect its public records and to prevent excessive and unreasonable interference with the discharge of its functions. These rules may be found at http://fruitlandtwp.org.

Unless otherwise agreed to in writing by the requestor the Township will respond in writing to a FOIA request within 5 business days after the public body receives the request by either, granting the request, denying the request or by granting the request in part and denying the request in part, or issuing a notice extending for not more than 10 business days the period during which the public body shall respond to the request.

Electronic FOIA requests are deemed received 1 business day after the electronic transmission is made. If an email request is delivered to the Township's spam or junk-mail





**Fruitland Township**
**White River Light Station Museum**

# FRUITLAND TOWNSHIP

4545 Nestrom Road
Whitehall, MI 49461
(231) 766-3208
Fax (231) 766-3027
www.fruitlandtwp.org

**TOWNSHIP BOARD**
Sam E. St. Amour - Supervisor
Karolyn Rillema - Clerk
Melissa M. Beegle - Treasurer
TRUSTEES:
Mary Ann Bard
Jan Deur
Terrie Hampel
Val Rissi

July 21, 2015

Mr. Greg Kruse
5617 South Shore Drive
Whitehall, MI 49461

RE: APPEAL TO REQUESTS -- (FOIA Appeal dated July 16, 2015 & duplicate dated July 17, 2015)
(FOIA Appeal dated July 17, 2015)

Dear Mr. Kruse:

Your appeals to the requests listed above were presented to the Board of Trustees at their
Regular Meeting on July 20, 2015.

Below is the action taken by the Board of Trustees:

> *Motion by Trustee Bard, second by Supervisor St. Amour, ADOPTED,*
> *to deny Mr. Kruse of his FOIA appeals dated July 16, 2015 and*
> *duplicate appeal dated July 17, 2015 stating that his request was not a*
> *FOIA request. Per the Freedom of Information Act 442 of 1976,*
> *Section 15.232 Definitions (i) "written request" means a writing that*
> *asks for information and includes a writing transmitted by facsimile,*
> *electronic mail, or other electronic means. His letter to Assessor Bowen*
> *is in writing form requesting a copy of information and was treated as a*
> *FOIA request.*
> *Upon Voice Vote: 7 AYES - motion carried*
>
> *Motion by Trustee Bard, second by Supervisor St. Amour, ADOPTED,*
> *to deny Mr. Kruse of his FOIA appeal stating that the letter dated July 1*
> *informing him that his affidavit was defective was a motive to deny his*
> *eight requests. The Freedom of Information amendments effective July*
> *1, 2015 states that an individual is indigent and receiving specific public*
> *assistance or, if not receiving public assistance, stating facts showing*
> *inability to pay the cost because of indigency. Mr. Kruse's affidavit is*

﹁ＳＣ

*defective because it does not state specific public assistance received or*
*set forth facts stating his inability to pay because of indigency.*
*Upon Voice Vote:  7 AYES - motion carried*

Sincerely,

Sam St. Amour, Supervisor
Township of Fruitland

PC:  Clerk Rillema



# M Gmail

Greg K. <kmanone1@gmail.com>

---

## RE: FOIA dated April 28, 2016 received in office April 27, 2016 - Copy of Order for 4790 W. Bard

---

Karolyn Rillema <clerk@fruitlandtwp.org>
To: "g." <kmanone1@gmail.com>

Wed, Apr 27, 2016 at 1:52 PM

Mr. Kruse,

I am in receipt of your FOIA dated April 28, 2016 received in the office today April 27, 2016.

The cost for this FOIA request is estimated in the amount of $.67 for the postage and copy of the Resolution for Dangerous Building Hearing held on March 14, 2016 which is a duplicate copy of what you requested in a FOIA request dated April 22, 2016 for the same document.

Because you have an outstanding FOIA fee from July 1, 2015 in the amount of $4.36 and FOIA fee from April 25, 2016, I have been advised the FOIA request of April 28 is available once the outstanding fees have been paid.

Please advise how you would like to take care of this matter.

As always, our FOIA policy is available on our website: www.fruitlandtwp.org on the home page under FOIA.

Karolyn Rillema, Clerk

Township of Fruitland

---

📎 **20160427140859.pdf**
   46K

75 E

**Section 10: Conflict with Prior FOIA Policies and Procedures; Effective Date**

To the extent that these Procedures and Guidelines conflict with previous FOIA policies promulgated by Township Board or the Township Administration these Procedures and Guidelines are controlling. To the extent that any administrative rule promulgated by the FOIA Coordinator subsequent to the adoption of this resolution is found to be in conflict with any previous policy promulgated by the Township Board or the Township Administration, the administrative rule promulgated by the FOIA Coordinator is controlling.

To the extent that any provision of these Procedures and Guidelines or any administrative rule promulgated by the FOIA Coordinator pertaining to the release of public records is found to be in conflict with any State statute, the applicable statute shall control. The FOIA Coordinator is authorized to modify this policy and all previous policies adopted by the Township Board or the Township Administration, and to adopt such administrative rules as he or she may deem necessary, to facilitate the legal review and processing of requests for public records made pursuant to Michigan's FOIA statute, provided that such modifications and rules are consistent with State law. The FOIA Coordinator shall inform the Township Board of any change these Policies and Guidelines.

These FOIA Policies and Guidelines become effective July 1, 2015.

**Section 11: Appendix of _____ Township FOIA Forms**

- Request for Public Records Form
- Notice to Extend Response Time Form
- Notice of Denial Form
- Detailed Cost Itemization Form
- Appeal of Denial of Records Form
- Appeal of Excess Fee Form





## SMITH HAUGHEY
### RICE & ROEGGE
ATTORNEYS AT LAW

INVOICE
Tax ID No. 38-2234596

| | | | | | |
|---|---|---|---|---|---|
| | | | DATE: | 04/08/15 | |
| Fruitland Township | | | CLIENT: | 095800 | |
| Attn.: Karolyn Rillema | | | MATTER: | 109758 | |
| 4545 Nestrom Rd. | | | INVOICE: | 606574 | |
| Whitehall, MI 49461 | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 03/09/15 | KBE | Further attention to flood insurance study and Flood insurance rate maps and proposed flood ordinance. | 3.20 | 120.00 | 384.00 |
| 03/13/15 | KBE | Attention to FOIA guidelines, FOIA itemization form, FOIA Summary, FOIA itemization detailed explanation.. | 7.00 | 120.00 | 840.00 |
| 03/16/15 | KBE | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | 1.50 | 120.00 | 180.00 |
| 03/17/15 | KBE | Further attention to Flood Management Ordinance. | 3.50 | 120.00 | 420.00 |
| 03/18/15 | KBE | Attention to FOIA amendments and prepare guidelines, procedures, summary, website and all other compliance issues for Clerk. | 5.50 | 120.00 | 660.00 |

*SERVICE TOTAL 3,120.00

| | | | | |
|---|---|---|---|---|
| KBE | 25.00 | HOURS @ | 120.00 | $3,000.00 |
| KMH | 1.00 | HOURS @ | 120.00 | $120.00 |
| TOTAL | 26.00 | | | $3,120.00 |

03/12/15 Photocopies 2.00

*COSTS TOTAL 2.00
*BILL TOTAL 3,122.00

*I HEREBY CERTIFY this to be a true and correct copy of the original on file with the office of the Fruitland Township Clerk. Certified Copy VALID Only when SEAL and PEN SIGNATURE are affixed.*

*FRUITLAND TOWNSHIP CLERK*

| ANN ARBOR | GRAND RAPIDS | TRAVERSE CITY | MUSKEGON | www.shrr.com |
|---|---|---|---|---|
| 213 S. Ashley, Ste. 400 | 100 Monroe Center NW | 101 N. Park St., Ste. 100 | 900 Third St., Ste. 204 | |
| Ann Arbor, MI 48104 | Grand Rapids, MI 49503 | Traverse City, MI 49684 | Muskegon, MI 49440 | |
| Phone: 734-213-8000 | Phone: 616-774-8000 | Phone: 231-929-4878 | Phone: 231-724-4320 | |
| Fax: 734-332-0971 | Fax: 616-774-2461 | Fax: 231-929-4182 | Fax: 231-724-4330 | |

75 9

 Gmail

Greg K. <kmanone1@gmail.com>

## FOIA Request One (1) Copy Of Original White Lake Ambulance Authority Deposition of Accountant Terry Vanderleest Conducted by Fruitland Township Corporate Council Keven Even p38599 OnOrAbout June 27/28 2017.

**Karolyn Rillema** <clerk@fruitlandtwp.org>    Mon, Aug 7, 2017 at 3:35 PM
To: "g." <kmanone1@gmail.com>

Mr. Kruse,

I am in receipt of your FOIA dated August 7, 2017

I am not in receipt of such document at this time.

You do have outstanding FOIA fees from July 1, 2015 in the amount of $4.36, $.67 from April 22, 2016, $10.77 from May 6, 2016, $.57 from May 27, 2016, the FOIA request of November 14, 2016  before any other FOIA's would be available for copy.

Please advise if you would like to take care of your delinquent FOIA's.

As always, our FOIA policy is available on our website:  www.fruitlandtwp.org on the home page under FOIA.

Karolyn Rillema, Clerk

Township of Fruitland

**From:** g. [mailto:kmanone1@gmail.com]
**Sent:** Monday, August 07, 2017 9:11 AM
**To:** clerk@fruitlandtwp.org
**Cc:** supervisor@fruitlandtwp.org
**Subject:** FOIA Request One (1) Copy Of Original White Lake Ambulance Authority Deposition of Accountant Terry Vanderleest Conducted by Fruitland Township Corporate Council Keven Even p38599 OnOrAbout June 27/28 2017.

[Quoted text hidden]



                        STATE OF MICHIGAN
          IN THE CIRCUIT COURT FOR THE COUNTY OF MUSKEGON


    FRUITLAND TOWNSHIP,
            Plaintiff,

    v                                    Case No. 13-49058-AW

    WHITE LAKE AMBULANCE AUTHORITY,
    JEAN DRESEN, DONALD E. STUDAVEN,
    STEPHEN H. SIKKENGA, DENNIS A.
    ATCHISON, MICHAEL L. COCKERILL,
    LISA A. KIEL, PETER A. STAAL, BLUE
    LAKE TOWNSHIP, CITY OF MONTAGUE,
    MONTAGUE TOWNSHIP, CITY OF
    WHITEHALL, WHITEHALL TOWNSHIP
    and WHITE RIVER TOWNSHIP,
            Defendants.
    _____/



                    DEPOSITION OF SAM ST. AMOUR
        Taken by Defendants WLAA, Dresen, Studaven and Blue Lake
        Township, on the 22nd day of August, 2013, at 4545
        Nestrom Road, Whitehall, Michigan, at 10:00 a.m.


    APPEARANCES:

    For the Plaintiff:     Mr. Kevin B. Even (P38599)
                           EVEN & FRANKS, P.L.L.C.
                           900 Third Street, Suite 204
                           Muskegon, Michigan 49443
                           (231) 724-4320

    For Defendants WLAA,   Mr. Eric C. Grimm (P58990)
    Dresen, Studaven,      WILLIAMS HUGHES, P.L.L.C.
    Blue Lake Township:    120 West Apple Avenue
                           Muskegon, Michigan 49443
                           (231) 726-4857
                                Page 1



FRUITLAND TWNP. v. WHITE LAKE AMBULANCE AUTH., ET AL                    DEPOSITION OF SAM ST. AMOUR

```
 1

 2

 3

 4

 5    APPEARANCES continued:

 6

 7

 8

 9    ALSO PRESENT:          Dennis A. Atchison

10

11                          Kevin Erb

12

13

14    REPORTED BY:          Christine Hagle, CSR-5748

15                          Network Reporting Corporation

16                          Firm Registration Number 8151

17                          1-800-632-2720

18

19

20

21

22

23

24

25                               Page 2
```




```
 1   A   I do not recall exactly, to be honest with you, a few

 2       years.

 3   Q   Okay.  Did you go back to work after that?

 4   A   Yes.

 5   Q   Where was that?

 6   A   Motor Coach Industries.

 7   Q   And what does Motor Coach Industries do?

 8   A   Makes motor coaches.

 9   Q   Where is that located?

10   A   In several parts of the United -- North America, actually.

11   Q   And what did you do for Motor Coach Industries?

12   A   I was in their manufacturing group.

13   Q   And what did you do in the manufacturing group?  What were

14       your job responsibilities?

15   A   Several -- several different responsibilities.

16   Q   Well, how did your job responsibilities evolve over time

17       for Motor Coach Industries?

18   A   Let me think here.  I worked in the purchasing group.  I

19       was head of procurement.  I was then head of manufacturing

20       and senior vice president of manufacturing, and then I

21       retired from there.

22   Q   When did you start farming?

23   A   I was farming all along, my true love, in there.

24   Q   Okay.  The same place or different places over time?

25   A   Right down the road from here.
```
                              Page 12

76c

```
 1      are going to waste our time.  You know, one of the things

 2      that you --

 3                  MR. GRIMM:  We will get this over with --

 4                  MR. EVEN:  Hang on a second.

 5                  MR. GRIMM:  -- much quicker, Kevin --

 6                  MR. EVEN:  Hang on a second.  Hang on a second..

 7                  REPORTER:  Are we going off the record?

 8                  MR. EVEN:  Hang on a second.

 9                  MR. GRIMM:  I'm not going off the record.

10                  MR. EVEN:  Hang on a second.  That's fine.  If

11      he doesn't want to go off the record, that's fine.

12                  We are not going to sit here all day and ask

13      questions that we know the answers to.  You know, your

14      client has been clamoring from the beginning of this about

15      unnecessary expense of attorneys fees, and you want to go

16      on ad nauseam about questions which you know the answer to..

17      That is just ridiculous.

18                  MR. GRIMM:  I get to make a record of these,

19      and you know why these admissions on the record matter for

20      the summary disposition that your client filed.

21                  MR. EVEN:  These are -- these are items that

22      the Court can take judicial notice of, who the elected

23      Muskegon County prosecutor is --

24                  MR. GRIMM:  This will go a lot faster --

25                  MR. EVEN:  -- and who the State -- hang on a
                                   Page 15
```

```
 1      second --

 2                  MR. GRIMM:  This will go a lot faster --

 3                  MR. EVEN:  -- and who the --

 4                  MR. GRIMM:  -- if you stop the rambling, run-on

 5      objections.

 6                  MR. EVEN:  This will go a lot faster if you

 7      actually asked some questions that are meaningful to this

 8      litigation.

 9  BY MR. GRIMM:

10  Q    You are not the Attorney General for the State of Michigan?

11  A    Oh, sorry.

12  Q    Please answer the question.

13  A    I'm sorry, what was the question?

14  Q    And you are not the Attorney General for the State of

15      Michigan?

16  A    No, I'm not.

17  Q    You have never been and cannot run for Attorney General?

18  A    I do not know the answer to that question.

19  Q    Okay.  You are not the State treasurer?

20  A    Not to my knowledge, no.

21  Q    To your knowledge, have you ever been granted any authority

22      by the State treasurer to accomplish Treasury tasks?

23  A    Can you ask that question again?

24  Q    Yes.  Has the State treasurer delegated any authority to

25      you for purposes of carrying out the Treasury Department's
```



```
 1        function under --
 2   A    How would I know that?
 3   Q    Well, you would have a letter if you had been delegated
 4        anything under the Uniform Budgetary --
 5   A    How else --
 6   Q    -- and Accounting Act.
 7   A    How else would I know that?
 8   Q    Well, do you have any reason to believe that you have
 9        delegated authority from the State treasurer?
10   A    I don't know.  I mean, I'm asking you how would I know
11        that.  I don't even know how I would know that, sir.
12   Q    Okay.  So your answer is you are not presently aware of any
13        delegated authority?
14   A    That's not my answer.  My answer -- my answer was --
15   Q    Are you presently aware, yes or no?
16   A    I don't know.  The answer is I don't know.
17   Q    So if I asked you do you have any present knowledge of
18        that, you are telling me that you do not have present
19        knowledge, is that correct?
20   A    My answer -- my answer was how would I know, because I
21        don't know, sir.  If you ask a question like that --
22   Q    It's a simple question.
23   A    -- I have to -- you must know something I don't know.  So I
24        am asking how would I know, and you're not telling me that
25        so I don't know.
                            Page 17
```

76 F

```
 1                    MR. GRIMM:  Let's mark this as Exhibit Number

 2       1.

 3            (Deposition Exhibit Number 1 was marked at 10:18 a.m.)

 4  BY MR. GRIMM:

 5  Q    Mr. St. Amour, do you recognize -- other than the

 6       transmittal from Jean Dresen to me --

 7  A    Time out.

 8  Q    Yes.

 9  A    If you don't mind.

10  Q    Sure.

11                    (Witness reviewed the exhibit.)

12                    WITNESS:  This is from Jean Dresen, Wednesday,

13       August 21, to you?  This is sent to you, sir?

14  BY MR. GRIMM:

15  Q    It was forwarded to me.

16  A    Is that right?

17  Q    A prior e-mail.

18  A    It is to you.  There seems to have been a format problem in

19       my original copy of the new budget.  I'm sorry I didn't

20       catch it, Jean Dresen.

21                    MR. GRIMM:  Counsel, could I get that back?  I

22       only have two copies.  Thank you.

23                    WITNESS:  Sorry I didn't catch it, Jean.  This

24       is where I fixed the error in my budget, and it shows that

25       everyone got sent a copy, Jean Dresen.
                                Page 18
```

```
 1   BY MR. GRIMM:

 2   Q    Right.  That is --

 3   A    Wednesday -- just hang on, okay?

 4   Q    Sure.

 5   A    Wednesday, April 10, 2013, 8:05 a.m.  There seems to have

 6        been a format problem in my original copy of the new

 7        budget.  I'm sorry I didn't catch it, Jean.

 8                  So where is the format problem?  So where was

 9        the formatting problem here, sir, do you know?

10   Q    I'm not here to answer your questions.  I'm here to ask the

11        questions.  Now I am trying to get you to focus on

12        everything below the original message line.

13                  This is an e-mail dated April 10, 2013.  It was

14        just recently forwarded to me by Jean Dresen.  I am trying

15        to focus you on what got sent on April 10, 2013.  Are you

16        on the distribution list for that April 10, 2013 e-mail?

17                  (Witness reviewed the exhibit.)

18                  WITNESS:  It appears that I am, yes.

19   BY MR. GRIMM:

20   Q    And did Jean Dresen, in fact, send you a copy of the new

21        budget on April 10, 2013?

22   A    I'm not --

23                  MR. EVEN:  Object to the form of the question.

24                  WITNESS:  Unknown.

25   BY MR. GRIMM:
```

76 h

```
 1   Q    Do you have any reason to believe that you did not receive

 2        this e-mail?

 3   A    Unknown.

 4                       MR. EVEN:  Object to the form of the question.

 5                       WITNESS:  Oops, sorry.

 6   BY MR. GRIMM:

 7   Q    Do you have any present recollection to controvert your

 8        receipt of this e-mail on or about April 10, 2013?

 9   A    Unknown.

10   Q    When do you recall getting the budget?

11                       MR. EVEN:  Object to the form of the question.

12                       WITNESS:  Unknown.

13   BY MR. GRIMM:

14   Q    Did you subsequently send an e-mail to some representatives

15        of other municipalities shortly after receiving the April

16        10th e-mail commenting on it?

17   A    I don't remember.

18   Q    Is it possible that you did?

19   A    I don't remember.

20   Q    Have you reviewed any of the documents that have been

21        submitted as exhibits in this case?

22   A    What documents are you referring to, sir?

23   Q    The documents that we submitted as part of our response to

24        Mr. Even's motion.

25   A    I don't recall.
```

Page 20

76i

1  Q    Okay.  Has Mr. Even reviewed with you any of the court

2       filings in this case?

3                  MR. EVEN:  Object to the form of the question.

4       It is none of your business what kind of communications

5       I've had with my client.  Inappropriate question.

6                  MR. GRIMM:  But I'm not asking him for the

7       content of any attorney/client communications.

8                  MR. EVEN:  Indirectly you are.

9                  MR. GRIMM:  So it's not -- it's not --

10                 MR. EVEN:  Indirectly you are.

11                 MR. GRIMM:  My question was has he reviewed

12      with you any --

13                 MR. EVEN:  Objection stands.

14                 MR. GRIMM:  -- of the pleadings.

15                 MR. EVEN:  Objection stands.

16                 MR. GRIMM:  It doesn't matter.

17 BY MR. GRIMM:

18  Q    You may answer.

19                 MR. EVEN:  Look it, I made an objection.  You

20      don't need to argue with me.

21 BY MR. GRIMM:

22  Q    You may -- you may answer.

23                 MR. GRIMM:  Please let the record reflect that

24      Mr. St. Amour is now staring at me without answering the

25      question.

```
 1   BY MR. GRIMM:

 2   Q    Now, will you please answer the question?

 3   A    Would you let the record show that Mr. Grimm is staring at

 4        me while I am not answering his question?  That is the

 5        silliest response, sir.  Come on.

 6   Q    I'm not asking for the contents of any attorney/client

 7        communications, particularly none asking for or receiving

 8        advice.  What I am just asking is has he actually reviewed

 9        with you the contents of any of the pleadings in this case?

10                  MR. EVEN:  You can -- you can answer that, Sam..

11                  WITNESS:  I forgot what the question was.  No.

12        Continue sir, please.

13   BY MR. GRIMM:

14   Q    You are telling me that your attorney has not --

15   A    I don't even know what the question is anymore, sir.

16        You'll have -- you'll have to ask it again.

17   Q    Well, I am honestly pretty good at repeating the same

18        question.

19   A    I know it.  I know it.

20   Q    If you want me to do it --

21   A    I forgot.  I am 60 years old.  I have a memory lapse every

22        once in a while.  I apologize.

23   Q    Well, Mr. St. Amour --

24   A    Let's try, Chris.  Will you ask me the question?

25   Q    -- the question was has your attorney reviewed with you the
```

Page 22

76K

1      contents of any of the papers filed by you subject to this

2      lawsuit?

3  **A**   **Yes.**

4  Q   Has he reviewed with you the contents of our response to

5      his motion for an injunction?

6  **A**   **I don't know.**

7  Q   You don't recall one way or the other?

8  **A**   **I don't know.**

9  Q   Is it possible that you might have misremembered when you

10     received the budget?

11  **A**   **I'm not -- no, sir.  I don't know.  If I said I don't know,**

12     **I don't know.**

13  Q   So if your attorney made a representation to Judge Hicks

14     about you not receiving the budget when in fact you did,

15     perhaps he didn't understand the facts correctly?

16          MR. EVEN:  Object to the form on multiple

17     accounts.  Why don't we ask an educated question rather --

18     instead of arguing with Mr. St. Amour with your innuendo in

19     the question?

20  BY MR. GRIMM:

21  Q   Did you tell your attorney when you received that budget?

22          MR. EVEN:  Object to the -- object to the form

23     of the communication -- of the question.  You're invading

24     the attorney/client privilege.  Communications --

25          MR. GRIMM:  That is --

                Page 23

76 L

1              MR. EVEN:  Communications between me and my

2        client are none of your business.

3              MR. GRIMM:  But this is asking for factual

4        information.  The attorney/client privilege does not

5        protect the facts.

6              MR. EVEN:  You're asking -- you're asking for

7        the content of the communication --

8              MR. GRIMM:  You are just trying to be

9        difficult.

10             MR. EVEN:  -- made in a confidential

11       relationship.  That is the precise definition of the

12       attorney/client privilege.

13   BY MR. GRIMM:

14   Q   Did you -- did you let your lawyer know when you received

15       that budget?

16             MR. EVEN:  Object to the form of the question.

17             WITNESS:  Oh, sorry.

18   BY MR. GRIMM:

19   Q   You remember --

20   **A   I'm --**

21   Q   You remember the instructions at the beginning of this,

22       which is if your attorney makes an objection, then you

23       answer.  Well, let him finish his objection, and he is

24       finished.  Now it's time for you to answer.

25   **A   Did it say I have to answer in five seconds or ten seconds?**

```
 1          Can I think about the question a little bit?

 2   Q      You can think as much as you like.

 3   A      Can I wait until I get over the fact that you're rude in

 4          the way that you ask questions?  My mother said for people

 5          that are rude to you, son, you can wait for a while and you

 6          can be just as rude to them as they are to you.  I consider

 7          your demeanor to me to be rude.

 8                   If you want to -- if you want to be something

 9          other than rude, then we can carry on a gentlemanly

10          conversation.  If you want to continue to be rude, then I

11          will continue to be silent as long as I consider it to be

12          my mother's beckoning from her grave that says that it's

13          okay.

14                   Is it clear with you?  Okay.  Ask your

15          question.  We'll see how you do this time.

16   Q      Mr. St. Amour, as you might have gathered --

17   A      Just ask your question, sir.

18   Q      -- as you might have gathered from the beginning of this --

19   A      Yes.

20   Q      -- we are here at a deposition.

21   A      Yes, I understand that, sir.

22   Q      Many witnesses of depositions do consider the deposition

23          process to be rude.

24   A      Yes.

25   Q      Honestly, I don't care what your opinion is about it.
```

```
1    A      Yes.

2                   MR. EVEN:  That's quite -- that's quite clear

3           that you don't care.

4    BY MR. GRIMM:

5    Q      I've got -- I've got a job to do.

6    A      And so do I.

7    Q      And I would appreciate it if you could answer my questions..

8    A      If you would ask your question in a non-rude way, I would

9           be glad to answer it, sir.  If you are going to be rude,

10          then I will take my time, because I don't want to make -- I

11          want to make sure that I understand your question.

12   Q      Mr. St. Amour --

13   A      Go ahead and ask the questions.

14   Q      Mr. St. Amour, I'm going to ask questions and you're going

15          to answer them.  That is how a deposition goes.

16                  So the question is did you tell your lawyer

17          when you got the budget?

18   A      I don't recall.

19   Q      Now, are there any line items in that budget for the fiscal

20          year of July 2013 to June 2014 that you have a specific

21          problem with?

22                  MR. EVEN:  Object to the form of the question.

23          First of all, we don't even know what you're talking about

24          when you say budget.  If you are -- if you are representing

25          that the document that you marked as Exhibit 1 is somehow a
                                    Page 26
```

```
 1        budget, then we ought to know that.  All we know is this

 2        was the content of an e-mail sent by Jean Dresen.  Until

 3        you identify what you're talking about, we can't answer

 4        your question.

 5                    MR. GRIMM:  I have identified it as Exhibit

 6        Number 1.

 7                    MR. EVEN:  You haven't identified it as a

 8        budget.

 9   BY MR. GRIMM:

10   Q    On Exhibit Number 1, the budgetary line items for July '13

11        through June 14, is there any specific line item in that

12        e-mail that you have a problem with, Mr. St. Amour?

13                    MR. EVEN:  Object to the form of the question.

14   BY MR. GRIMM:

15   Q    Well, please go on --

16                    MR. EVEN:  He can't -- he can't answer --

17                    MR. GRIMM:  Please go ahead and keep objecting..

18   BY MR. GRIMM:

19   Q    Please answer the question.

20                    MR. EVEN:  I will continue to object.

21                    MR. GRIMM:  And I will reiterate the

22        instruction.

23   BY MR. GRIMM:

24   Q    When he is done making his objection, then you answer the

25        question.
```

```
 1   A   Please ask the question again, because I'm not even sure
 2       what the question is.
 3   Q   In Exhibit Number 1 --
 4   A   Okay.  What is -- what is Exhibit Number 1?
 5   Q   I handed you Exhibit Number 1.
 6   A   Yes, sir.
 7   Q   It has an exhibit sticker on it and it says 1, right?
 8   A   I see it right there, yes, sir.
 9   Q   The budgetary line items beneath July '13 to June '14, is
10       there any specific line item in there that you have a
11       problem with?
12   A   Well, it's a piece of paper that is marked Exhibit Number
13       1.  It is nothing to me.  It's not a meaningful piece of
14       paper.  It's a piece of paper.
15   Q   Did you review that piece of paper --
16   A   It's a piece of paper --
17   Q   -- when you received it?
18   A   Let me answer -- can I answer your question --
19   Q   Sure.
20   A   -- or are you going to keep interrupting me?
21   Q   Please go ahead and answer.
22   A   Now I forgot what the question was again.  You'll have to
23       ask it again.  Sorry.
24   Q   Exhibit Number 1, the budgetary line items, under July '13
25       to June '14, is there any line item in there with which you
```

Page 28

```
 1       have a problem?
 2   A   It's a piece of paper with some numbers on it.  I don't --
 3       it has no meaning for me.  So the answer to your question
 4       is I don't know.
 5   Q   All right.  At any time since April 10, 2013, have you
 6       raised any objection to any specific line item in the
 7       budget for the White Lake Ambulance Authority?
 8   A   That's a different question.  You will have to ask that one
 9       again.
10   Q   It is a different question --
11   A   Right.
12   Q   -- and I would appreciate if you would answer.
13   A   It has nothing to do with Exhibit 1, right?  Is that right?
14       Am I correct in assuming what you -- the question that you
15       just asked has nothing to do with Exhibit Number 1, is that
16       right?
17   Q   I'm asking that specifically in reference to Exhibit Number
18       1.
19   A   Oh, that's a different question, then.  If you are calling
20       Exhibit 1 -- if you just asked that question about Exhibit
21       1, then I don't know.
22   Q   What line item in the budget for the White Lake Ambulance
23       Authority --
24   A   Okay.  The budget -- this is not the budget.  This is
25       Exhibit 1, right?
```

Page 29



```
 1   Q    What are you claiming the budget is?
 2   A    I don't know.  That's the -- that has been part of the
 3        problem, sir.  I don't know.  The answer to your question
 4        is I don't know.
 5   Q    Did you receive the e-mail of April 10, 2013?
 6                 MR. EVEN:  Asked and answered.  Asked and
 7        answered.
 8   BY MR. GRIMM:
 9   Q    Please go ahead and answer.
10                 MR. EVEN:  You've already asked that one, and
11        it has been answered.  If you want to ask a new question,
12        we'll answer it, but we're not going to answer the same
13        question over and over again.
14   BY MR. GRIMM:
15   Q    Is there a line item either in Exhibit 1 or in whatever
16        else you contend is the budget for the White Lake Ambulance
17        Authority?  Is there any line item that you have objected
18        to at any time since April 10, 2013?
19   A    I'm unclear of the question.  I don't know.  I don't know
20        is the answer.
21   Q    Is there a way that I could make the question more clear
22        for you?  Help me out.
23   A    That's part of the problem.
24   Q    I asked you either with respect --
25   A    That's part of the problem.
```

1   Q     No.  I said either with respect to Exhibit 1, or whatever

2         else you contend is the budget, is there any line item that

3         you have objected to at any time?

4   A     Both Fruitland Township and the Fruitland Township Board

5         has been confused as to what is the budget for the White

6         Lake Ambulance Authority.  Because the budget was not

7         produced in what we think was the lawful way, we don't know

8         what the budget is.  And when you ask questions about the

9         budget, we don't know what it is.

10                  An e-mail flown across my e-mail a few days

11        after the Board meeting, for us the Board and the taxpayers

12        of Fruitland Township, it doesn't constitute the budget.

13        So when you ask questions about the budget, we can't say

14        that this is the budget.

15                  So when you ask me questions about the budget,

16        I can't answer to this piece of paper here.  So you see my

17        dilemma, sir?  I'm not trying to be evasive and so forth.

18        It's just done so improperly, according to the law as we

19        understand it, and we as the Board of Fruitland Township

20        follow it here when we do our budget and all the

21        municipalities that we go to and watch in action, that we

22        are confused as to what the budget is for the White Lake

23        Ambulance Authority.  So that's our problem, sir.

24  Q     Well, my question was is there any specific line item that

25        you have a problem with?

```
 1                    MR. EVEN:  He has now answered that question

 2         three times.  We're not going to answer that again.  Move

 3         on.

 4                    MR. GRIMM:  He -- he --

 5                    MR. EVEN:  You are instructed not to answer.

 6         He is instructed not to answer that question.  Move on.

 7                    MR. GRIMM:  You can't instruct him not to

 8         answer.

 9                    MR. EVEN:  I just did.

10                    MR. GRIMM:  You can't.

11                    MR. EVEN:  I just did.

12                    MR. GRIMM:  You can't, and you better think

13         very carefully about what you're doing.

14                    MR. EVEN:  You know what, I have been doing

15         this, Mr. Grimm, for thirty years.

16                    MR. GRIMM:  And I have been doing this for

17         twenty.

18                    MR. EVEN:  Yes, you've got ten more years to

19         catch up with me, so lesson learned.  Don't answer that

20         question.  Move on.  How's that?

21                    MR. GRIMM:  That -- that is an improper

22         instruction, and you know it.

23                    MR. EVEN:  Move on.

24                    MR. GRIMM:  No.

25                    MR. EVEN:  Then we are not going to answer it.
                                  Page 32
```

```
 1   BY MR. GRIMM:

 2   Q    The question is -- the question has been and you haven't

 3        answered it yet -- is there --

 4   A    Can I take a break and go get a glass of water?

 5   Q    -- is there any line item --

 6                    MR. EVEN:  We are taking a break.

 7   BY MR. GRIMM:

 8   Q    -- that you have a problem with --

 9                    MR. EVEN:  We are taking a break.

10                    (A recess was taken at 10:37 to 10:39 a.m.)

11   BY MR. GRIMM:

12   Q    Let me reiterate the instructions, Mr. St. Amour --

13                    MR. EVEN:  We don't need to have the

14        instructions reiterated.

15   BY MR. GRIMM:

16   Q    -- which is --

17                    MR. EVEN:  You do not need to advise my client..

18   BY MR. GRIMM:

19   Q    You need to --

20                    MR. EVEN:  He knows what -- he knows how to

21        answer these questions, so ask your question.

22   BY MR. GRIMM:

23   Q    You listen to my question, listen very carefully, and then

24        answer the question that I ask you.  If you answer a

25        different question than the one that I ask you, I will
```
                              Page 33

76√

1      continue re-asking the question.  I want you to answer my

2      questions.  This is not an unreasonable thing.

3                    MR. GRIMM:  Mr. Even, if you want to call the

4      judge, please be my guest.

5                    MR. EVEN:  We -- if you continue --

6                    MR. GRIMM:  We may be able to streamline this

7      quite a bit if we can get your client to focus in on my

8      questions and actually answer them.

9                    MR. EVEN:  This has very little to do with

10     Mr. St. Amour's questions.  What this has to do with is

11     your rude demeanor, your nonsensical questions and the

12     repetitive nature of your questions.  If you want to ask a

13     question that is meaningful, let's do so.  Okay?  Go ahead

14     and ask the question.

15                    MR. GRIMM:  I'll -- I'll tell you what, why

16     don't we recall this witness?  We'll put this transcript up

17     until now with all of your objections and all of your

18     colloquy, we'll put it in front of Judge Hicks and you can

19     tell me -- we'll just get Judge Hicks' view on who's --

20     who's being rude and who is being evasive, okay?

21                    MR. EVEN:  That's -- that's certainly your

22     decision.

23                    MR. GRIMM:  I'm more --

24                    MR. EVEN:  If you want to adjourn the

25     deposition, that would be --
                              Page 34

```
1                    MR. GRIMM:  I'm more than delighted to do that,

2         if you want to do it.

3                    MR. EVEN:  If you want to adjourn the

4         deposition, feel free.  That's your call.

5                    MR. GRIMM:  I want to get my questions

6         answered.

7                    MR. EVEN:  Then -- then let's ask them, okay?

8                    MR. GRIMM:  Now -- now, are you going to

9         cooperate, or are you going to continue the extended

10        colloquy --

11                   MR. EVEN:  We've --

12                   MR. GRIMM:  -- and the silly objections --

13                   MR. EVEN:  We've been --

14                   MR. GRIMM:  -- and instructing him not to

15        answer when you can't even give such an instruction?

16                   MR. EVEN:  We've been -- well, first of all, I

17        can, because I did.

18                   MR. GRIMM:  Well --

19                   MR. EVEN:  Hang on.

20                   MR. GRIMM:  -- have you --

21                   MR. EVEN:  I did.

22                   MR. GRIMM:  Have you seen what the consequences

23        of that are in the Court Rules?

24                   MR. EVEN:  I know exactly what the consequences

25        are.
```

Page 35

76 x

```
 1                    MR. GRIMM:  All right.  And you are

 2          accepting --

 3                    MR. EVEN:  You are not allowed --

 4                    MR. GRIMM:  You are accepting --

 5                    MR. EVEN:  You are not allowed --

 6                    MR. GRIMM:  -- those consequences?

 7                    MR. EVEN:  You are not allowed to ask the same

 8          question six times, okay?

 9                    MR. GRIMM:  If he answers a different question

10          than what I asked --

11                    MR. EVEN:  He has answered it, I don't know,

12          six times, okay?  So if you want to ask it a seventh time

13          and get the same answer, be my guest.

14                    MR. GRIMM:  You can stop obstructing my

15          deposition any time.

16                    MR. EVEN:  I have given you every opportunity

17          to ask a question, but you have got to get the last word

18          in.  Either ask your question or adjourn or do whatever you

19          are going to do.

20     BY MR. GRIMM:

21     Q    Now, Mr. St. Amour, are you today proposing to change

22          anything in particular about the fiscal year 2013 to 2014

23          budget?

24     A    What budget?

25     Q    The budget for the White Lake Ambulance Authority.
```

**Network**Reporting
— STATEWIDE COURT REPORTERS —
800-632-2720

76

1    **A**    **What budget?  I haven't seen the budget.**

2    Q    So it's my understanding that your testimony was that you

3         don't recall one way or the other whether you got that

4         e-mail on April the 10th?

5    **A**    **My testimony was we got this e-mail.**

6    Q    Okay.  But now you distinctly remember not getting the

7         budget?  Is that what you're telling me?

8                   MR. EVEN:  Argumentative.

9                   WITNESS:  This is not the budget.  The budget

10        has never been acted on.  This has never been acted on by

11        the White Lake Ambulance Authority Board.

12                  MR. EVEN:  Let the record reflect he is

13        referring to Exhibit 1.

14   BY MR. GRIMM:

15   Q    What do you claim is the budget?

16   **A**    **There is no budget.  That's the problem.  That's the**

17        **problem, as I told you before, sir.  What is the budget?**

18        **Show me the budget and my Board and the taxpayers of**

19        **Fruitland Township will be happy, because then they would**

20        **know what we have.**

21                  **If they were timely and brought forth lawfully,**

22        **that would be even better.  But that, sir, is the problem.**

23        **I am answering your question because you're asking me about**

24        **the budget.**

25   Q    All right.  Well, we will move on to asking you about your

```
 1          opinion of the law.  Setting aside what your opinion

 2          happens to be, you're not a lawyer, are you?

 3                    MR. EVEN:  You've asked that question before

 4          also --

 5                    MR. GRIMM:  I did.

 6                    MR. EVEN:  -- and he answered it.

 7                    MR. GRIMM:  And he hasn't answered it.  I'm

 8          just -- I'm just going back and making sure we have already

 9          got that on the record.

10     BY MR. GRIMM:

11     Q    Now, setting aside your personal opinion, what law actually

12          has been violated, in your view, with respect to this

13          budget?

14                    MR. EVEN:  I'm just going to object to the form

15          of the question, because he has already acknowledged to you

16          that he is not a lawyer, and you are asking a lay witness

17          for a legal conclusion.  So with that, if you can answer

18          it, go ahead.

19                    WITNESS:  I don't know.

20     BY MR. GRIMM:

21     Q    Do you know of any law that specifically has been violated

22          with respect to the budget by the White Lake Ambulance

23          Authority?

24     A    I do know that the White Lake Ambulance Authority has not

25          brought forth the budget per their own Articles.  They have
```

FRUITLAND TWNP. v. WHITE LAKE AMBULANCE AUTH., ET AL                    DEPOSITION OF SAM ST. AMOUR

```
 1          not followed their own Articles.  I do know that the White

 2          Lake Ambulance Authority has not brought forth the budget

 3          as other municipalities do, including municipalities who

 4          are members of that Board.

 5   Q      Do you have a problem with e-mail getting sent to you that

 6          you don't receive?

 7                     MR. EVEN:  Object to the form of the question.

 8          It's argumentative.

 9                     MR. GRIMM:  Your objection is noted.

10   BY MR. GRIMM:

11   Q      Please answer.

12   A      What's the question again?

13   Q      Have you been having problems with your e-mail system so

14          that if somebody outside of the organization sends you --

15   A      Not that I'm aware of, sir.

16   Q      Okay.  Are you contending that you did not receive this

17          e-mail dated April 10, 2013?

18   A      Not that I'm aware of.

19   Q      Okay.  Are you presently aware of any actual problem with

20          the quality of emergency services delivered by the White

21          Lake Ambulance Authority to the population it serves?

22   A      What was the question, sir?

23   Q      I said are you presently aware of any actual problem with

24          the quality of emergency services delivered by the White

25          Lake Ambulance Authority to the population it serves?
```

NetworkReporting
STATEWIDE COURT REPORTERS
800-632-2720


```
 1   A    No.

 2   Q    Is the White Lake Ambulance Authority, to the best of your

 3        knowledge, doing a good job at providing emergency medical

 4        services?

 5   A    We have been unable to check into that, but no.

 6   Q    So your answer is no, to the best of your knowledge, they

 7        are not, or no, you --

 8   A    No.  We have not been able to get that information, because

 9        we get stonewalled at every turn when we try to get

10        information.  But no, I'm not -- I do know that we have

11        billing issues that have been brought to my attention by

12        the taxpayers of Fruitland Township that are of concern.

13   Q    Well --

14   A    You know, so that --

15   Q    So you're telling me that there are taxpayer issues.  Can

16        you tell me which specific taxpayers and what the issues

17        are for each taxpayer?

18   A    I could tell you that if I had the documentation in front

19        of me, but I do not.

20   Q    We are in Township Hall, so please go get it.

21   A    No, I'm not going to.

22   Q    Please.

23              MR. EVEN:  We're not going to.

24   BY MR. GRIMM:

25   Q    Please share with me that information.
```

FRUITLAND TOWNSHIP JUNE 12, 2017 WORK SESSION MINUTES

backup.  A motion will be prepared for the Monday Regular meeting.  Clerk Rillema also stated that Supervisor Jeske, Treasurer Beegle and herself attended the mediation for the White Lake Ambulance Authority on May 16th.  No settlement was obtained.  Attorney Even has scheduled depositions with WLAA accountant Terry Vanderleest, WLAA current & former board members, Mike Cockerill, Dennis Atchison and Scott Huebler for June 27th & 28th in which he would like Fruitland Township representation in attendance.  Both Clerk Rillema and Treasurer Beegle are planning on attending.

Motion by Trustee Bard, second by Supervisor Jeske, *ADOPTED,* to adjourn the June 12, 2017 work session at Noon.
*Upon Voice Vote:* **6 AYES, 1 ABSENT - motion carried**

Respectfully Submitted,


Karolyn Rillema, Clerk
Township of Fruitland



4

Kaydon Corporation Announces Lawsuit Against Fairfield Manufacturing Company, Inc., Former President - Chief Executive Officer, and Six Former Employees.

ANN ARBOR, Mich.---March 19, 2002

Kaydon Corporation (NYSE:KDN) announced that it has filed a lawsuit against Fairfield Manufacturing Company, Inc., Lafayette, Indiana; Stephen K. Clough, a former President and Chief Executive Officer of Kaydon; and six former employees. Mr. Clough is currently President, Chief Executive Officer and a Director of Fairfield Manufacturing Company, Inc.

In addition to Mr. Clough, among the six former employees named as defendants in the lawsuit is Thomas C. Sorrells III, a former senior Kaydon employee who is currently President and Chief Operating Officer of Motor Coach Industries International, Inc.

Fairfield Manufacturing Company, Inc. is owned by Lancer Industries, Inc., a privately held Company headquartered in New York City. According to the complaint, the Chairman of both Fairfield and Lancer is Paul S. Levy, who is also a General Partner of Joseph, Littlejohn & Levy, New York City, a private investment firm. Motor Coach Industries International, Inc. is a privately held Company whose majority shareholder, according to an S.E.C. filing, is a partnership controlled by Joseph, Littlejohn & Levy.

Lancer Industries, Inc.; Paul S. Levy; Joseph, Littlejohn & Levy; and Motor Coach Industries International, Inc. have not been named as defendants in the lawsuit.

Mr. Clough was President and Chief Executive Officer of Kaydon between June 1996 and June 1998. He resigned from Kaydon in June 1998 as the result of a disagreement with the Kaydon Board relating to general management philosophy and the long-term strategic direction of Kaydon.

The allegations in the lawsuit, among others, include breach of contract, misappropriation of trade secrets, tortious interference with contractual relations, and breach of fiduciary duty. The allegations relate to the design, manufacture, distribution, and sale of a bearing product known as a slewing ring.

The lawsuit seeks an injunction and monetary damages against the defendants.

Kaydon Corporation is a leading designer and manufacturer of custom-engineered products, supplying a broad and diverse group of industrial, aerospace, medical and electronic equipment, and aftermarket customers.

77

# Register of Actions (ROA)
# Fruitland Township Supervisor aka; Defendant 005 "sam EARL st.amour"

22ND JUDICIAL CIRCUIT - STATE OF MICHIGAN

03/10/11          COUNTY OF WASHTENAW         PAGE:     1

CIVIL ACTION DOCKET

KAYDON CORPORATION         CASE NO: GCW-02-0000278 DC, ac     AZ

FILING DATE: 03/07/02

VS.             JUDGE: TIMOTHY P. CONNORS

FAIRFIELD MANUFACTURING COMPAN ET AL

| PARTY TYPE | LITIGANT | PARTY NAME |
|------------|----------|------------|
| ATTORNEY | P001 | HICKEY, PATRICK F |
| ATTORNEY | P001 | HONEYCUTT, JAMES MICHAEL |
| PLAINTIFF | P001 | KAYDON CORPORATION |
| ATTORNEY | D001 | ROWE, JONATHAN D |
| ATTORNEY | D001 | FEIGELSON, JEREMY |
| DEFENDANT | D001 | FAIRFIELD MANUFACTURING COMPANY INC |
| ATTORNEY | D002 | ROWE, JONATHAN D |
| ATTORNEY | D002 | FEIGELSON, JEREMY |
| DEFENDANT | D002 | CLOUGH, STEPHEN K |
| ATTORNEY | D003 | ROBINSON, MARIETTA S |
| ATTORNEY | D003 | GOOGASIAN, DEAN M |
| DEFENDANT | D003 | SORRELLS, THOMAS C |
| ATTORNEY | D004 | ROWE, JONATHAN D |
| ATTORNEY | D004 | FEIGELSON, JEREMY |
| DEFENDANT | D004 | SCHLUETER, PAUL M |
| ATTORNEY | D005 | ROBINSON, MARIETTA S |
| ATTORNEY | D005 | GOOGASIAN, DEAN M |
| DEFENDANT | D005 | ST AMOUR, SAM E |
| ATTORNEY | D006 | ROWE, JONATHAN D |
| ATTORNEY | D006 | FEIGELSON, JEREMY |
| DEFENDANT | D006 | RUSSELL, KENNETH A |
| ATTORNEY | D007 | ROBINSON, MARIETTA S |
| ATTORNEY | D007 | GOOGASIAN, DEAN M |
| DEFENDANT | D007 | VANDIVER, JOSEPH L |
| ATTORNEY | D008 | ROWE, JONATHAN D |
| ATTORNEY | D008 | FEIGELSON, JEREMY |
| DEFENDANT | D008 | ZILIAK, JEROME L |

**sam EARL st.amour lawyer** (annotation pointing to GOOGASIAN, DEAN M — D005)

**Defendant sam EARL st.amour** (annotation pointing to ST AMOUR, SAM E — D005)

DATE                                 FEE/AMOUNT

08/05/03
    NOTICE RETURNED UNDELIVERABLE FD
05/07/03
    CLERKS NOTICE RETURNED UNDELIVERABLE FD
05/05/03
    CLERKS NOTICE RETURNED UNDELIVERABLE FD (2)
04/22/03
    FINAL-DISMISSED OTHER BY PARTY
04/22/03
                AS TO MF 043003 PGS 2687-90
    STIPULATED INJUNCTIVE ORDER & ORDER OF DISMISSAL AS TO DEFTS FAIRFIELD
    CLOUCH SCHLUETER RUSSEL & ZILIAK FD (SGD 04 16 03)
04/22/03
                AS TO MF 043003 PGS 2685-86

## 77A

# Fruitland Township Supervisor aka; Defendant 005 "sam Earl st. amour"

22ND JUDICIAL CIRCUIT - STATE OF MICHIGAN
COUNTY OF WASHTENAW                    PAGE:    2
10/11                CIVIL ACTION DOCKET

GCW-02-0000278 DC          AZ

DATE                                              FEE/AMOUNT
-------- -------------------------------------------

        STIPULATED ORDER OF DISMISSAL AS TO DEFTS SORRELLS ST AMOUR & VANDIVER
        FD (SGD 04 16 03)(DOES NOT CLOSE CASE)
12/06/02          AS TO DEFTS 1/2/4/6/8
        CLERKS NOTE - SLIP SENT TO ASSIGNMENT CLERK
12/06/02          AS TO DEFTS 1/2/4/6/8
        ANSWER AFFIRMATIVE DEFENSES & COUNTERCLAIMS OF FAIRFIELD DEFTS IN
        RESPONSE TO PLTFS 3RD AMENDED COMPLAINT/PROOF OF SER FD
11/27/02
        PROOF OF SERVICE FD
11/27/02
        PROOF OF SERVICE FD
11/27/02
        REQUEST FOR ADMISSIONS TO DEFT FAIRFIELD FD
11/12/02
        PROOF OF SERVICE FD
10/25/02
        PROOF OF SERVICE FD
10/25/02          AS TO VANDIVER, JOSEPH L
        ANSWER TO PLTFS 3RD AMENDED COMPLAINT & AFFIRMATIVE DEFENSES FD
10/25/02          AS TO SORRELLS, THOMAS C
        ANSWER TO PLTFS 3RD AMENDED COMPLAINT & AFFIRMATIVE DEFENSES FD
10/25/02          AS TO ST AMOUR, SAM E
        AT ISSUE ANSWER
10/25/02          AS TO ST AMOUR, SAM E
        ANSWER TO PLTFS 3RD AMENDED COMPALINT & AFFIRMATIVE DEFENSES FD
10/23/02
        ORDER DENYING DEFTS MOTION FOR PARTIAL DISMISSAL OF PLTFS 3RD AMENDED
        COMPLAINT FD (SGD 10 16 02)
10/22/02
        AMENDED SCHEDULING ORDER FD (SGD 10 15 02)(CE 08 20 03 @ 9/SC 10 09 03
        @ 9/TRIAL 10 27 03 @ 9)
10/21/02
        CASE EVALUATION SCHEDULED FOR 08/20/2003 9:00 A.M.
10/15/02
        SCHEDULING CONFERENCE HELD/CASE EVALUATION SET FOR 8 20 03 @ 9:00/
        SETTLEMENT CONFERENCE SET FOR 10 9 03 @ 9:00/JURY TRIAL SET FOR
        10 27 03 @ 9:00/MOTION CUTOFF DATE IS 7 18 03
10/09/02
        SCHEDULING ORDER FD (SGD 10 04 02)
10/09/02          AS TO GOOGASIAN, DEAN M/CO COUNS
        EVENT NOTICE GENERATED, GOOGASIAN, DEAN M/CO COU, #00783065
10/09/02          AS TO KRICHBAUM, MATTHEW E
        EVENT NOTICE GENERATED, KRICHBAUM, MATTHEW E   , #00783063
10/09/02          AS TO HONEYCUTT, J MICHAEL
        EVENT NOTICE GENERATED, HONEYCUTT, J MICHAEL   , #00783061
10/09/02          AS TO HICKEY, PATRICK F
        EVENT NOTICE GENERATED, HICKEY, PATRICK F      , #00783058
10/07/02          AS TO SORRELLS/ST AMOUR/VANDIVER
        PROOF OF SERVICE FD
10/07/02          AS TO SORRELLS/ST AMOUR/VANDIVER



776

**Vol. IV No. 6 1:30 p.m., First SessionThirty-Eighth Legislature
September 15, 2003 LEGISLATIVE ASSEMBLY OF MANITOBA
597 INDUSTRY, TRADE AND MINES
Mr. Jack Penner (Emerson):
 Hon Mary Ann Miychuk (Minister of Indus-try, Trade and Mines):**

So the millions of dollars in subsidy provided by your Government and the 1300 layoffs just announced in August of 2003, I believe the entire amount of the subsidy provided by the taxpayers to MCI was $20.5 million. Before we discuss this issue, I would like to ask the minister if she could tell this committee whether she has been part of an interdepart-mental committee to discuss a cash advance program to the cattle producers and their fami-lies and also ask her if she would see it as reasonable to provide a similar sized incentive to assist over 12 000 producers currently in crisis.

# *Mr. Chairperson in the Chair*

**Ms. Mihychuk:** Honest documents on the Motor Coach deal, $9.4-million loan. The total package, including the federal government, the City of Winnipeg and our training program, was $20 million. But the MIOP program was only $9.4 million.

SCHULER, Ron        Springfield P.C.

**Mr. Schuler:** My question to the minister is: When did she first get involved with the whole MCI file? When was she first approached by Motor Coach Industries (MCI) in regard toï¿½and I am having difficulty seeing the minister. When was she first made aware that MCI was looking for a loan?

**Ms. Mihychuk:** Motor Coach Industries (MCI) approached government, and I became aware of the situation and their need for assistance, in November 2001. The conclusion of our negoti-ations and the announcement of the assistance package was May 2002.

**Mr. Schuler:** Was the minister approached directly by the company, by Motor Coach Industries (MCI), and who approached the Govern-ment?

**77**

1

**Ms. Mihychuk:** The local Motor Coach plant management approached the Financial Services and senior management of the Department of Industry, Trade and Mines. They did not ap-proach me directly.

**Mr. Schuler:** It sounds like it was a low-level discussion to begin with. At what point in time did it get to the minister's desk, that MCI was looking at getting some kind of a package or they were planning on leaving?

**Ms. Mihychuk:** The management from Motor Coach here in Winnipeg realized that the head office was looking at efficiencies, and poten-tially looking at other locations for the manu-facturing of their units. At that time they approached government with the situation and asked if there was some assistance that could be provided. Within two to three weeks, the ministers involved, myself, were notified of the situation and from there we moved through the process of consultation and the development of the agreement.

**Mr. Schuler:** Was that Mr. St. Amour? Was he the individual who contacted the Government?

**Ms. Mihychuk:** No, it was not. Mr. St. Amour was the local plant manager.

**Mr. Schuler:** Who might that have been?

**Ms. Mihychuk:** Mr. Rob Perry.

**Mr. Schuler:** The message that Mr. Perry carried to the Government was that head office was looking at potentially moving Motor Coach Industries to another location. Was that done verbally or in writing?

**Ms. Mihychuk:** The initial discussions were verbal. The management came in and met with staff from the department to review the situation, indicate that they were in competition with other sites in the Motor Coach family and potentially even greenfield sites. They would have to put together a package that would be the most favourable to the company which was looking at some fairly significant changes and asked if gov-ernment would be prepared to assist. From there, you go on to putting things down onto paper, reviewing their financial statements, working with management to see what government can do.

**Mr. Schuler:** When was the minister first notified that these meetings were taking place?



2

**Ms. Mihychuk:** As I say, it was approximately two weeks after the initial meeting, in November of 2001.

**Mr. Schuler:** When did the minister have her first meeting with Mr. St. Amour, slowly moving up the food chain at MCI?

**Ms. Mihychuk:** I was not directly involved in the negotiations. Normally these negotiations occur by staff with regular briefings at the ministerial level. I did not meet with the president or anyone else. Most of the negotiations occur by staff with regular briefings at the ministerial level. Most of the negotiations, like I say, went on with the technical and financial managers that we have in government with the people in the company. So the negotiations are conducted by those who know those affairs best. My participation was to take it through the process of government, but I was not directly involved in negotiations.

**Mr. Schuler:** Okay, then, can I ask when was the department engaged with Mr. St. Amour? When did they start having discussions with him rather than just the plant manager?

**Ms. Mihychuk:** The earliest that the staff here met with other senior managers of MCI was December 2001.

**Mr. Schuler:** Just so that I have it clear, the first time departmental staff met with either Mr. St. Amour or Mr. Sorrells was December 2001?

**Ms. Mihychuk:** Staff from the Manitoba gov-ernment did not meet with Mr. Sorrells or Mr. St. Amour at that time. They met with a VP from Motor Coach.

**Mr. Schuler:** Is Mr. St. Amour not the vice-president? Who was the vice-president that they met with?

**Ms. Mihychuk:** Motor Coach Industries has a number of vice-presidents. Mr. St. Amour is the VP of manufacturing. Initially, we were dealing with or we dealt with the VP of human resources.

**Mr. Schuler:** What would that gentleman's name be?

**Ms. Mihychuk:** We will have to get back with that information tomorrow.

**Mr. Schuler:** So the department had negoti-ations with the human resources vice-president, and we have trouble remembering his name? *[interjection]* Okay. Can I ask the minister what other depart-

**77 E**

3

ments were involved at this point in time with the negotiations? Was it just her department or were there other departments involved as well?

**Ms. Mihychuk:** To clarify the record, I believe the question was: When and who in the senior level did you meet with? So we did indicate that did not mean that detailed negotiations went on with that individual. Secondly, the negotiations were conducted by our department, Industry, Trade and Mines.

**Mr. Schuler:** Just to the minister, periodically I get a door slamming behind me and I missed a little bit of what you were saying. Negotiations were with her department and her department alone, and it was initially or all the way through with the human resources vice-president? *[inter-jection]* Then I did not get it right.

**Ms. Mihychuk:** We met with the VP of human resources initially, but the primary negotiator was not that individual.

**Mr. Schuler:** So who was the primary negotiator that government dealt with from MCI?

**Ms. Mihychuk:** Mr. Chairperson, the process of the negotiation of the deal went through various stages. There were discussions with the VP of human resources. There was some discussion with the president himself. Then there were discussions with the VP of finance. The final process was primarily with Sam St. Amour.

**Mr. Schuler:** Can the minister give us the name of the vice-president for human resources and the vice-president for finance? Who are those two individuals?

**Ms. Mihychuk:** The VP of finance is Al Swanson. We will get back with the name of the VP of human resources.

**Mr. Schuler:** When Motor Coach Industries approached government, did they come with a complete package? Did that include loans, grants and that the employees would have to take some kind of a renegotiated pay package?

**Ms. Mihychuk:** When MCI came to govern-ment, their initial situation was discussed, that they were overall in this competitive situation with other branch plants and green fields. They wanted to know what government could offer them, what was the best deal. Usually, that is the situation. When people come to government, they go high. They do not go low. Negotiations go from there. They wanted to know what we could offer. They presented what the costs would be for their project,

*TIF* 4

what they were looking at. They indicated right from the start that they would be asking for greater flexibility from the workers of the plant, and that they wanted some changes to the union agreement.

**Mr. Schuler:** Can the minister tell this com-mittee with whom is the deal actually signed, what corporate entity?

* (16:40)

**Ms. Mihychuk:** The agreement is with Motor Coach Industries International, and Motor Coach Industries Limited, Winnipeg branch.

**Mr. Schuler:** Again I ask, just as a matter of information, when an agreement like that is signed, does the Government ask for some kind of financial statements from the company? What kind of documents are then requested from the company?

**Ms. Mihychuk:** When negotiations like this occur, we require that companies provide us with their past, present and future business plans and their financial statements. They must open their books and we send in a team to work with those. Eventually this deal was reviewed by Ernst & Young for due diligence to ensure that the company was sound, that the investment was sound and the deal did not have any significant flaws in it.

**Mr. Schuler:** The team sent in, is that the Ernst & Young team, or is there a different team that the minister is talking about? She said a team was sent in.

**Ms. Mihychuk:** There are two processes. The department has an internal group that is headed up by Mr. Jim Kilgour. They will review the documents, meet with the company, ensure that all the questions are answered, and then Ernst & Young did a second review.

**Mr. Schuler:** The minister mentioned that one of the signatories was Motor Coach Winnipeg Limited. Is that correct? Who would have signed for Motor Coach Industries Winnipeg Limited?

**Ms. Mihychuk:** We will confirm this, but it is our understanding that Winnipeg is a subsidiary, that head office is the same, and so the signatory on the documents is the president, Sorrells.

**Mr. Schuler:** So Motor Coach Industries Winni-peg Limited is just a division of is it just a trading name, or is it a division thereof?

77 g

5

**Ms. Mihychuk:** A wholly owned subsidiary.

**Mr. Schuler:** So Motor Coach Industries Inter-national, I take it then the president is Tom Sorrells. Who are the vice-presidents of Motor Coach Industries International?

**Ms. Mihychuk:** As I indicated before, two of the VPs are Al Swanson and Sam St. Amour. We will endeavour to find out who the other VPs of Motor Coach are.

**Mr. Schuler:** So who owns Motor Coach Industries International?

**Ms. Mihychuk:** Motor Coach Industries at the present time is owned by a New York-based venture capital fund. They are the majority own-ers, headed up by Joseph, Littlejohn & Levy, known as JLL.

**Mr. Schuler:** So Littlejohn & Levy are the majority owners of Motor Coach Industries International. Who is the other owner?

**Ms. Mihychuk:** We will have to check to see what the status is right now, but it is our understanding that there are several minority owners, including Dina, the previous owners from Mexico, several banking consortiums, but we will provide greater information to the member tomorrow.

**Mr. Schuler:** Motor Coach Industries Inter-national, is that then a privately held company or is it traded?

**Ms. Mihychuk:** Currently, it is private.

**Mr. Schuler:** Are they regulated by any body in the United States? Do they have to report to somebody because they do have various share-holders or they just have to reply to their share-holders? Is there any governing body above them?

**Ms. Mihychuk:** As a private company, it is my understanding that they are responsible to their private owners. Other than that, they do not have any official, exceptional reporting structure. There are regulations, of course, in the Depart-ment of Commerce in terms of manufacturing buses, but other than that they are a private company.

**Mr. Schuler:** Littlejohn & Levy, what is their stake in Motor Coach Industries International? What percentage do they own?



**Ms. Mihychuk:** We will take that question as notice and review our records and see what we are able to provide the member.

**Mr. Schuler:** I guess I would be under the assumption that LJL, because the minister said it was a majority shareholder, would then own more than 50 percent. So my question to the minister then would be: How much information does she have on Littlejohn LJL as it is known? Is it a publicly traded company?

**Ms. Mihychuk:** The first part of the question, yes, they own more than 50 percent. The second part of the question is they are not publicly traded.

**Mr. Schuler:** Were they ever?

**Ms. Mihychuk:** No.

**Mr. Schuler:** LJL, who owns them? Let me phrase my question this way: Is the minister aware who owns LJL and approximately what percentage of LJL they own?

**Ms. Mihychuk:** LJL is a private capital pool and that information is not available to us.

**Mr. Schuler:** When due diligence was done, did the department not look at LJL?

**Ms. Mihychuk:** JLL.

**Mr. Schuler:** JLL. The minister has corrected me. It must be John Little and Levy then. Make sure we get the acronym right here, for the record. Was JLL not looked at before monies were flowed?

* (16:50)

**Mr. Mihychuk:** The reputation of JLL is well known amongst investment circles and con-sidered to have a very good reputation. This was also investigated by Ernst & Young indepen-dently and confirmed that status.

**Mr. Schuler:** Would the minister be prepared to release the Ernst & Young report?

**Ms. Mihychuk:** I would like to be as open as possible and provide information for the record. I understand the Ernst & Young report is pro-tected by FIPPA, but we will review the situation and see what we can



7

provide which does not breach our agreements in the deal or any confidentiality matters that we have com-mitted to. So we will review it and get back to the member.

**Mr. Schuler:** Again, I do understand and I com-mend the minister. If only her colleagues would take her example, I think a lot of grief could be spared in this Chamber. She has been open and I appreciate that if there are certain technicalities that cannot be released, clearly we do not want to be compromising individuals or companies. I think the minister knows why there is such concern about this issue. I am sure she has a degree of discomfort, though I doubt she would admit that one publicly. Clearly, there is a problem when government invests $20 million and then the company answers back with, thank you and we are firing everybody. Well, sorry, we are going to keep 20 employees, security guards. I know the Government's concerned about that too. We, as the Opposition, have an obligation to find out what happened and obviously that the public's interest was protected. The minister mentions that JLL has a good reputation. What would the minister base that on? What else does JLL own that would give them this good reputation?

**Ms. Mihychuk:** The question began with some statements that I am going to have to try and clarify. In the worst-case scenario the company does have the flexibility to virtually lay off everybody in the whole plant. This is not some-thing that management at the plant has indicated is in their plans. In fact, this degree of flexibility will not be utilized, is not perhaps even necessary.The provisions to provide that kind of notice are, I understand, a procedure of labour law. It has caused a great deal of concern for suppliers to Motor Coach, for the families at Motor Coach, I want to reassure them and those that may be reading Hansard, though I have not met many people that do, those that do read the record, that we are working closely with the company and their plans are to continue and make this a viable operation. The worst-case scenario is one that they do not intend to go to, that their plans are to continue to make motor coaches and buses, and that the layoff will indeed, be reversed, and that we will be on a positive track.Twenty employees, I think, is in the worst possible case scenario, and I do not want to cause families more concern than necessary. Again, our indications from the company are that there, unfortunately, will be layoffs. We are working with the company on that. The com-pany will continue to produce coaches, and they will be ramping up again when the market comes back. The question as to the reputation of JLL, the reputation is known within the investment com-munity that its market share is growing, pardon me, that the independent review by Ernst &Young confirmed that this was a legitimate private capital pool that was reputable and had committed to various companies and had a successful record.



8

**Mr. Schuler:** I will try one more time with the minister. I would appreciate it if she would give us at least some kind of comfort on this. How big is the capital pool? What else do they manage? If this is all public, common knowledge, then I am sure she is not sharing any state secret here if she lets us know, for all those people that are reading Hansard, and need some comfort that JLL is this growing company. Again, I would ask the minister: How would she know that they are growing in market shares when none of that is public? A $100-million company? Is this a $70-million company? Is this a $2-billion company? What are some of the assets? Do they own 50 percent of Coke? Do they own GM? They have to have sort of a flavour to what they own. Are they into manufacturing? Is this one of their strengths? Are they a vulture fund? I do not know. Are they a bottling company? There has to be something that they are known for.

**Ms. Mihychuk:** It is my understanding that with pools of this type, private capital pools, which is a limited partnership, there are several, or many in the United States, and that pension funds can invest in these private capital pools. What they do is use the money to invest in companies, sometimes to restructure, to do some, I guess, restructuring with companies. Then their ulti-mate goal is to sell them off then to another manufacturing consortium or purchaser or whomever. We have very limited knowledge on the specifics of the capital pool, who is invested, and the companies that that private pool has invested in. It is our understanding, both from the finan-cial community and checked by an independent group, Ernst & Young independent group, that this is a company that has significant capital, has proven as being investors in this company, and that they indeed are able and willing and have done this in the past. I am not quite sure what the member is looking for, exactly who is invested in this private capital pool. We will endeavour to find out as much as we can, as I have indicated, and get back to the member as soon as we can with any further information that we can pull together for him.

*Mr. Jim Rondeau, Acting Chairperson, in the Chair*

**Mr. Schuler:** I think the answer that the minister was grappling with was very easy. "I do not know" could have been one of the answers. It might have been a little shorter. I appreciate it because I know a lot of individuals have tried to find something out. I guess that is the concern I have, is that there is very little to be known about JLL. The minister's boss spent a considerable amount of time talking about good faith and those kinds of things. I would suggest to the minister that good faith does not make good public policy. That does concern me. I certainly would not invest my money into something unless I had some very good information on who they are, what they own, and what focus the fund



9

has. I think that is just a reasonable question to ask. But we will leave it at that. The minister has endeav-oured that she will look into it and see if she can get some of that information back to the com-mittee, and we would certainly appreciate it.

**Ms. Mihychuk:** We do not have the document as to exactly when the first money was flowed, but we will get that for the member tomorrow.

**Mr. Schuler:** Of course I understand. Why would the minister think we would ask any ques-tions about that particular document? Clearly I understand why she would not have that docu-ment handy, because MCI is hardly something that would probably come up at these Estimates.

My question then to the minister

**The Acting Chairperson (Mr. Jim Rondeau):** Through the Chair.

The next question I have brings it a little bit closer to home. The minister mentioned 2001 the approach was made, May 2002 the agreement was signed. I understand it was about February 2003 when the first monies were flowed. Am I correct in that, or when were the first monies flowed?

**1300 layoff?**

**/Ms. Mihychuk:** I became aware of the situation when the company notified its workers, and there was a bulletin, I understand, put up in the work site. Media then came to me with the infor-mation, so I became aware of the situation on August 28, 2003.

**/Mr. Schuler:** So $20 million of the public's money was given to Motor Coach Industries for a bailout, and the Government is unwilling to tell us how many buses were on the docket, which spells very, very poorly for what this Govern-ment did. My question to the minister: Why is she not forthright. Was the order book that weak that the minister is going to hide behind false claims of secrecy and not divulge that information?

**Saturday, March 23, 2002**

MCI workers accept deal to keep jobs in Winnipeg

Canadian Press

Saturday, March 23, 2002

WINNIPEG — Faced with losing their jobs, workers at Motor Coach Industries International have overwhelmingly accepted a final contrac...
offer they rejected almost two weeks ago.

The decision means the company will consolidate much of its manufacturing operation in Winnipeg, moving work from plants in Mexi...
and Pembina, N.D., said senior vice-president Sam St. Amour.

He said it should help the company turn around several years of poor financial results.

"We really think we can become world class, do things a heck of a lot smarter maybe than we do them today, and that will certainly giv...
us an opportunity to be profitable," said St. Amour.

Accepting the concessions the company was seeking, however, was a painful decision for workers, said a union spokesman.

Brian Short of the International Association of Machinists and Aerospace Workers, said Friday night the 1,300 Manitoba workers had...
gun pointed at their heads.

"That's exactly what this employer did, he put a gun to their head and held their jobs up for ransom," said Short.

Workers voted 673 in favour of accepting the contract and 357 against. About 92 per cent of eligible voters turned out for the two d...
vote.

Had they rejected the deal again, the American-owned company said it would close its Manitoba plants in 2003 and move its ma...
manufacturing operation somewhere to the southern United States.

Out of those 673 there's a lot of people who didn't vote for the deal, they voted for a job," Short said.

The deal freezes wages when the current contract expires in 2003 until 2006, then raises them just by just 40 cents an hour throu...
2009 current employees will continue to earn more than $20 an hour, however, while new employees will start at just $11.50 an hour.

"For 2009 and way before that, we're going to be such a much better company and a much better team."

...need to close it...pay tonight ... picture of ace in tiger bath towel

EXHIBIT

A

**From:** "Jean Dresen" <jean@whitelakeems.com>
**Date:** Wednesday, April 10, 2013 10:51 AM
**To:** "STEPHEN SIKKENGA" <shsikkenga@msn.com>
**Subject:** Re: There seems to have been a format problem in my original copy of the new budget - I 'm sorry I didn't catch it. Jean

so are you telling me that Sam has "Blown" up what you guys talked about? I want to catch him in his own lie -

---- Original Message ----
**From:** STEPHEN SIKKENGA
**To:** Jean Dresen
**Sent:** Wednesday, April 10, 2013 10:47 AM
**Subject:** RE: There seems to have been a format problem in my original copy of the new budget - I 'm sorry I didn't catch it. Jean

What was talked about was basically what I e-mailed to you last night.

From: jean@whitelakeems.com
To: shsikkenga@msn.com
Subject: Fw: There seems to have been a format problem in my original copy of the new budget - I 'm sorry I didn't catch it. Jean
Date: Wed, 10 Apr 2013 10:25:06 -0400

Steve- Just received this from Sam StAmour- is this true- and who would be calling him?

Jean
---- Original Message ----
**From:** Supervisor
**To:** Jean Dresen ; Karolyn Rillema ; treasurer@fruitlandtwp.or ; Kevin Even ; trusteedeur@fruitlandtwp.org ; Terrie Hampel ; Bard Mary Ann ; Valerie Rissi
**Sent:** Wednesday, April 10, 2013 10:12 AM
**Subject:** Re: There seems to have been a format problem in my original copy of the new budget - I 'm sorry I didn't catch it. Jean

Folks
"new" budget format from WLAA.
Some of the the numbers have changed for some reason not stated. Unfortunately no activity from the past year is included to make any type of reasoned input from us possible. What we need is still coming per the last e-mail I forwarded to you from the WLAA attorney.
I apologize again for this delay. I again do not know why changes were made to some numbers .
When I get more info I will pass it on.
FYI The City of Whitehall held their meeting last evening and seemingly share some of our concerns. They have instructed their rep to go find out whats going on and report back...so I understand from conversations I have had this morning.
Regards, Sam

On Wednesday 10/04/2013 at 8:05 am, Jean Dresen wrote:

<!--[if supportMisalignedColumns]-->
<!--[endif]-->

<!-
-
[if l
vml
-->
<!--
><!

NANCY A. WATERS
MUSKEGON COUNTY CLERK
FILED
2013 JUL 24 P 4: 26

78

(Videotape, 7-15-13, 8:52:20)

1   the State of Michigan.  That's true.  But the fact of the

2   matter is, the Authority carried the motion followed by

3   action suggesting that they could only amend - I mean that

4   they could amend with a simple majority vote.  We went

5   around and around on that for months.  And then this year

6   during the budget cycle when it came time to budget if you

7   look at their minutes, nothing was said during any of

8   these board meetings where it was discussed whether or not

9   the local units of government had approved this budget.

10   In fact, we show up at a May board meeting and they

11   approved the budget and the budget isn't even present at

12   that meeting.  Mr. St. Amour who is a representative of

13   Fruitland Township asked for a copy of the budget; it

14   wasn't even there.  This morning for the first time I

15   received a copy of the budget from Mr. Hughes.  When I

16   asked him about it he refuses to talk to me.  So there's

17   very little communication going on here and unfortunately

18   I think this has gotten into a personal clash between the

19   members of the board.  They don't like each other; they

20   don't like Mr. St. Amour.  They feel as though they're

21   being persecuted when he's simply trying to do his job as

22   a board member to make this Authority run profitably.  You

23   know, at the last month's meeting they had a vote

24   collectively voting to ask Fruitland Township to take Mr.

25   St. Amour off the board and put in a new representative.

*Mills Court Reporting,  1615 Sunset, N Muskegon, MI 49445  231-744-6823*

9

<!--
><!
>

<!--
~-!

|  |  |  | Jul '13 - Jun 14 | JUL '12- JUN 13 |
|---|---|---|---:|---:|
| Ordinary Income/Expense |  |  |  |  |
|  | Income |  |  |  |
|  |  | 663 · Charges for Services - Dues | 998,000.00 | 985,000.00 |
|  |  | 665 · Interest Income | 1,500.00 | 1,500.00 |
|  |  | 676 · Contribution - Other | 500.00 | 2,500.00 |
|  |  | 678 · Millage - Cities | 121,000.00 | 115,000.00 |
|  |  | 679 · Millage - Townships | 297,000.00 | 275,000.00 |
|  |  | 686 · Delinquent Tax from the County | 26,000.00 | 26,000.00 |
|  |  | 690 · Money received on w/o costs | 1,500.00 | 1,500.00 |
|  |  | 994 · miscellaneous Income | 1,000.00 | 1,000.00 |
|  | Total Income |  | 1,446,500.00 | 1,407,500.00 |
|  | Expense |  |  |  |
|  |  | 570 · Contractual Services | 1,200.00 | 1,200.00 |
|  |  | 703 · Salaries-Director | 55,100.00 | 55,100.00 |
|  |  | 704 · scramble crew | 6,500.00 | 5,500.00 |
|  |  | 705 · Salaries -FT Office Assistant | 22,600.00 | 22,500.00 |
|  |  | 706 · Salaries - Paramedics | 265,000.00 | 261,000.00 |
|  |  | 708 · Salaries - Calls/ PT | 165,000.00 | 150,000.00 |
|  |  | 710 · Salaries - Holiday FT | 30,000.00 | 30,000.00 |
|  |  | 711 · Salaries- Per Diem | 53,000.00 | 51,500.00 |
|  |  | 715 · payroll- Kelly Overtime | 8,200.00 | 13,750.00 |
|  |  | 719 · Fringe Benefits |  |  |
|  |  | 714 · Optical Coverage | 2,600.00 | 2,600.00 |
|  |  | 720 · Medical Insurance Expense | 179,000.00 | 182,250.00 |
|  |  | 721 · FICA & Medicare Expense | 33,000.00 | 32,000.00 |
|  |  | 722 · Deferred Compensation | 15,000.00 | 15,000.00 |
|  |  | 724 · Insurance - Workerds Comp | 6,800.00 | 6,800.00 |
|  |  | 725 · Ins - Employee | 7,200.00 | 7,100.00 |
|  |  | 726 · Dental Insurance | 13,450.00 | 12,532.00 |
|  |  | Total 719 · Fringe Benefits | 257,050.00 | 258,282.00 |
|  |  | 727 · Office Expenses | 3,500.00 | 3,000.00 |
|  |  | 728 · Computer Expense | 7,500.00 | 5,500.00 |
|  |  | 729 · UNEMPLOYMENT | 3,000.00 | 4,000.00 |

78 b

6/19/2013

PAYMENTS

| | | | |
|---|---|---:|---:|
| 730 · Bank Service Charges | | 600.00 | 500.00 |
| 751 · Ambulance Fuel | | 30,000.00 | 25,000.00 |
| 757 · Operating Supplies | | 18,000.00 | 18,000.00 |
| 759 · Uniforms-Full Time | | 2,400.00 | 2,400.00 |
| 760 · Refuse Pickup | | 700.00 | 650.00 |
| 799 · Professional fees | | | |
| | 800 · Support Services Agr | 2,500.00 | 2,500.00 |
| | 802 · Audit | 5,000.00 | 5,000.00 |
| | 803 · Attorney fees | 10,000.00 | 10,000.00 |
| Total 799 · Professional fees | | 17,500.00 | 17,500.00 |
| 815 · INSURANCE-LIAB/PROPERTY | | 35,000.00 | 35,000.00 |
| 850 · Telephone Expense | | 7,800.00 | 7,500.00 |
| 851 · Dispatch | | 23,100.00 | 22,000.00 |
| 873 · Travel and Meals | | 650.00 | 650.00 |
| 920 · Utilities | | 6,700.00 | 6,700.00 |
| 922 · Charter Accounts- ALL | | 1,896.00 | 1,100.00 |
| 923 · Hackley Workplace - Employee | | 100.00 | 500.00 |
| 931 · Building Maintenance | | 4,500.00 | 4,500.00 |
| 932 · Pager Repair | | 0.00 | 500.00 |
| 933 · Equipment Maintenance | | | |
| | 935 · Equipment-Trucks - | 500.00 | 500.00 |
| | 933 · Equipment Maintenance - | 18,500.00 | 18,000.00 |
| Total 933 · Equipment Maintenance | | 19,000.00 | 18,500.00 |
| 934 · Repairs & Main. Supplies | | 1,000.00 | 1,000.00 |
| 941 · Building Rent | | 11,000.00 | 11,000.00 |
| 959 · Depreciation Expense | | 35,000.00 | 45,000.00 |
| 960 · Education and Training | | 2,500.00 | 2,500.00 |
| 962 · Miscellaneous Expense | | 5,500.00 | 5,500.00 |
| 963 · Authority Memberships | | | |
| | 921 · State License | 350.00 | 300.00 |
| | 963 · Authority Memberships - | 3,500.00 | 3,000.00 |
| Total 963 · Authority Memberships | | 3,850.00 | 3,300.00 |
| 969 · Amortization | | 4,000.00 | 4,000.00 |
| 970 · Bad Debts | | 300,000.00 | 250,000.00 |
| 976 · Equipment Purchases | | 37,500.00 | 30,000.00 |
| Total Expense | | 1,445,946.00 | 1,374,632.00 |
| Net Ordinary Income | | 554.00 | 32,868.00 |

Other Income/Expense

| | | | |
|---|---|---:|---:|
| Other Income | | | |
| 979 · CAMP 911 | | 350.00 | 350.00 |
| Total Other Income | | 350.00 | 350.00 |
| Net Other Income | | 350.00 | 350.00 |
| Net Income | | 904.00 | 33,218.00 |

**78 c**

6/19/2013



EXHIBIT

B

2013 JUL 24 P 4: 27
NANCY A. WATERS
MUSKEGON COUNTY CLERK
FILED

11:55 AM
03/27/13
Accrual Basis

# White Lake Ambulance Authority
## Profit & Loss Budget Overview
July 2013 through June 2014

| | Jul '13 - Jun 14 | JUL '12 - JUN 13 |
|---|---|---|
| **Ordinary Income/Expense** | | |
| **Income** | | |
| 663 · Charges for Services - Runs | 998,000.00 | 985,000.00 |
| 665 · Interest Income | 1,500.00 | 1,500.00 |
| 676 · Contribution - Other | 500.00 | 2,500.00 |
| 678 · Millage - Cities | 121,000.00 | 115,000.00 |
| 679 · Millage - Townships | 297,000.00 | 275,000.00 |
| 686 · Delinquent Tax from the County | 26,000.00 | 26,000.00 |
| 690 · Money received on w/o accts | 1,500.00 | 1,500.00 |
| 994 · miscellaneous Income | 1,000.00 | 1,000.00 |
| **Total Income** | 1,446,500.00 | 1,407,500.00 |
| **Expense** | | |
| 570 · Contractual Services | 1,200.00 | 1,200.00 |
| 703 · Salaries-Director | 55,100.00 | 55,100.00 |
| 704 · scramble crew | 6,500.00 | 5,500.00 |
| 705 · Salaries -FT Office Assistant | 22,600.00 | 22,500.00 |
| 706 · Salaries - Paramedics | 265,000.00 | 261,000.00 |
| 708 · Salaries - Calls/ PT | 165,000.00 | 150,000.00 |
| 710 · Salaries - Holiday FT | 30,000.00 | 30,000.00 |
| 711 · Salaries- Per Diem | 53,000.00 | 51,500.00 |
| 715 · payroll- Kelly Overtime | 8,200.00 | 13,750.00 |
| 719 · Fringe Benefits | | |
| 714 · Optical Coverage | 2,600.00 | 2,600.00 |
| 720 · Medical Insurance Expense | 179,000.00 | 182,250.00 |
| 721 · FICA & Medicare Expense | 33,000.00 | 32,000.00 |
| 722 · Deferred Compensation Expense | 15,000.00 | 15,000.00 |
| 724 · Insurance - Worker's Comp | 6,800.00 | 6,800.00 |
| 725 · Ins - Employee Life,LTD,STD | 7,200.00 | 7,100.00 |
| 726 · Dental Insurance | 13,450.00 | 12,532.00 |
| **Total 719 · Fringe Benefits** | 257,050.00 | 258,282.00 |
| 727 · Office Expenses | 3,500.00 | 3,000.00 |
| 728 · Computer Expense | 7,500.00 | 5,500.00 |
| 729 · UNEMPLOYMENT PAYMENTS | 3,000.00 | 4,000.00 |

282

**11:55 AM**
**03/27/13**
**Accrual Basis**

# White Lake Ambulance Authority
# Profit & Loss Budget Overview
July 2013 through June 2014

Page 2 of 3

|  | Jul '13 - Jun 14 | JUL '12- JUN 13 |
|---|---|---|
| 730 · Bank Service Charges | 600.00 | 500.00 |
| 751 · Ambulance Fuel | 30,000.00 | 25,000.00 |
| 757 · Operating Supplies | 18,000.00 | 18,000.00 |
| 759 · Uniforms-Full Time | 2,400.00 | 2,400.00 |
| 760 · Refuse Pickup | 700.00 | 650.00 |
| 799 · Professional fees |  |  |
| 800 · Support Services-Acct | 2,500.00 | 2,500.00 |
| 802 · Audit | 5,000.00 | 5,000.00 |
| 803 · Attorney fees | 10,000.00 | 10,000.00 |
| Total 799 · Professional fees | 17,500.00 | 17,500.00 |
| 815 · INSURANCE-LIAB/PROPERTY | 35,000.00 | 35,000.00 |
| 850 · Telephone Expense | 7,800.00 | 7,500.00 |
| 851 · Dispatch | 23,100.00 ** | 22,000.00 |
| 873 · Travel and Meals | 650.00 | 650.00 |
| 920 · Utilities | 6,700.00 | 6,700.00 |
| 922 · Charter Accounts- ALL | 1,896.00 | 1,100.00 |
| 923 · Hackley Workplace -Employee | 100.00 | 500.00 |
| 931 · Building Maintenance | 4,500.00 | 4,500.00 |
| 932 · Pager Repair | 0.00 | 500.00 |
| 933 · Equipment Maintenance |  |  |
| 935 · Equipment- Towing | 500.00 | 500.00 |
| 933 · Equipment Maintenance - Other | 18,500.00 | 18,000.00 |
| Total 933 · Equipment Maintenance | 19,000.00 | 18,500.00 |
| 934 · Repairs & Main. Supplies | 1,000.00 | 1,000.00 |
| 941 · Building Rent | 11,000.00 | 11,000.00 |
| 959 · Depreciation Expense | 35,000.00 | 45,000.00 |
| 960 · Education and Training | 2,500.00 | 2,500.00 |
| 962 · Miscellaneous Expenses | 5,500.00 | 5,500.00 |
| 963 · Authority Memberships |  |  |
| 921 · State License | 350.00 | 300.00 |
| 963 · Authority Memberships - Other | 3,500.00 | 3,000.00 |
| Total 963 · Authority Memberships | 3,850.00 | 3,300.00 |

78e

# WILLIAMS│HUGHES PLLC
### ATTORNEYS

WILLIAMS, JR
DOUGLAS M. HUGHES

SUSAN M. FRANKLIN
ERIC C. GRIMM**
ENRIKA L.F. MCGAHAN

*Of Counsel:*
FRED C. CULVER JR.
MICHAEL I. KLEAVELAND
L. JAMES LEMMEN, MD*
DAVID B. MERWIN
*Also Admitted in CO
**Also Admitted in Texas, D.C.

120 W. APPLE AVENUE P.O. BOX 599 MUSKEGON, MICHIGAN 49443-0599
ph 231.726.4857 fax 231.727.2130
*web site:* WWW.WILLIAMSHUGHESLAW.COM e-mail: LAWYERS@WILLIAMSHUGHESLAW.COM

August 20, 2013

Kevin Even, Esq.
EVEN & FRANKS, PLLC
P.O. Box 629
Muskegon, MI 49443-0629

Re: <u>Fruitland Township v. White Lake Ambulance Authority, *et al.*</u>

Dear Mr. Even:

This letter relates to your email of August 1, 2013, to Doug Hughes, and your recent letter.

You have been requesting dates for Mr. Hughes's deposition. As you know, it is an unusual step to seek to depose the municipal attorney for a government entity you have sued. The decision to take such an unusually aggressive "scorched earth" litigation posture should not be taken lightly, done principally for tactical reasons, or undertaken without careful legal research, study and reflection. Despite being asked for legal authority supporting your proposed course of action, you have not supplied any. What law there is, as I will explain, supports the WLAA's position.

You are also respectfully invited to identify any factual information (aside from the contents of confidential attorney-client communications, or attorney work-product – which are unavailable to you in any event), that you cannot obtain by some other reasonable means than a deposition of Mr. Hughes. In the absence of a clear and persuasive demonstration by you of some legitimate need for Mr. Hughes's deposition, as opposed to some other discovery technique, I can only infer that your proposed course of action is intended solely for purposes of harassment, and is improper.

This is to advise you that dates will not be provided for Doug Hughes to be deposed. If you attempt to subpoena him, we will file a motion to quash and for protective order, and secure a hearing before Judge Hicks. Even in the unlikely event that a deposition is allowed with respect to non-privileged matters (which will accomplish nothing that cannot be accomplished some other way), I am notifying you in advance that the privilege will be asserted on behalf of the client (the WLAA) and that Mr. Hughes will be instructed not to answer, in the event that you inquire about any privileged communications or work product.





EXHIBIT
D

# EVEN & FRANKS

A PROFESSIONAL LIMITED LIABILITY COMPANY
ATTORNEYS AT LAW

900 THIRD ST., SUITE 204, P.O. BOX 629
MUSKEGON, MICHIGAN 49443-0629
PHONE:  (231) 724-4320
FAX:  (231) 724-4330

KEVIN B. EVEN
EUGENE A. FRANKS
KEVIN M. HUSS
ELAIN S. GRIFFITH

OF COUNSEL:
THOMAS H. ANDREWS, JR.
JAMES M. SHERIDAN

April 9, 2013

Mr. Douglas M. Hughes              **VIA FAX:**  (231) 727-2130
Williams Hughes, P.L.L.C.          **VIA EMAIL:**  doughughes@williamshugheslaw.com
120 W. Apple Ave.
PO Box 599
Muskegon, MI 49443-0599

RE:     White Lake Ambulance Authority
        Request for Information by Authority Member
        Our file number:  1205-008

Dear Mr. Hughes:

I am in receipt of your letter of today wherein you indicated that none of the information requested by the Fruitland Township Clerk will be produced until April 23, 2013.   As I previously indicated to you, the request for information made by the Fruitland Township Clerk was not a request for information under the Michigan Freedom of Information Act, but rather a request for information by a member of the authority.  All of this information should have been provided in the ordinary course pursuant to the Authority's charter and is necessary in order to meaningfully address the recommended budget put forth by the Director at the end of March. Further the information requested should have been used in promulgating the recommended budget.

Sincerely,

Kevin B. Even

KBE\lmk
cc:     Supervisor
        Clerk

789

**EXHIBIT 18**

# WILLIAMS | HUGHES PLLC
## ATTORNEYS

THEODORE N. WILLIAMS, JR.
DOUGLAS M. HUGHES

SUSAN M. FRANKLIN
ERIC C. GRIMM**
ENRIKA L.F. MCGAHAN

*Of Counsel:*
FRED C. CULVER, JR.
MICHAEL I. KLEAVELAND
L. JAMES LEMMEN, MD*
DAVID B. MERWIN

*Also Admitted in CO
**Also Admitted in Texas, D.C.

120 W. APPLE AVENUE  P.O. BOX 599  MUSKEGON, MICHIGAN  49443-0599
*ph* 231.726.4857  *fax* 231.727.2130
*web site:* WWW.WILLIAMSHUGHESLAW.COM   *e-mail:* LAWYERS@WILLIAMSHUGHESLAW.COM

August 9, 2013

Kevin Even, Esq.
EVEN & FRANKS, PLLC
P.O. Box 629
Muskegon, MI 49443-0629

Re:    <u>Fruitland Township v. White Lake Ambulance Authority, *et al.*</u>

Dear Mr. Even:

I'm writing in a reasonable effort to save time and money for all interested parties. In particular, I need your help understanding your theory about how you believe the Uniform Budgeting and Accounting Act of 1968 ("UBAA"), authorizes or allows Fruitland Township, acting as plaintiff, to sue any of the named defendants.

I expect you have access to the statutory text, and can read it for yourself. Likewise, I expect you already are familiar with the principle *expressio unius est exclusio alterius*, which Michigan courts routinely apply when interpreting a statute. See <u>Pittsfield Charter Twp</u> v <u>Washtenaw Co</u>, 468 Mich. 702, 712; 664 NW2d 193 (2003) ("Under the doctrine of *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of another), the specification in a statute of one particular class excludes all other classes."); <u>see also</u> <u>Smitter v Thornapple Twp</u>, 494 Mich 121, __ n.34, __ N.W.2d __, 2013 WL 3064671 (Mich. 2013); <u>Dave's Place, Inc</u> v <u>Liquor Control Comm'n</u>, 277 Mich. 551; 269 NW 594 (1936); <u>Detroit</u> v <u>Redford Twp</u>, 253 Mich 453, 455-56; 235 NW 217 (1931). Ordinarily, when a state statute says that the <u>state treasurer</u> has authority to do something, and the statute is silent about Fruitland Township or its Supervisor (or township counsel) having such authority, then the *expressio unis* principle requires us to conclude that Fruitland Township lacks the authority that the statute has vested solely in the state treasurer. Id. Likewise, if the UBAA expressly vests authority to take certain actions in the Attorney General of Michigan or in the Muskegon County Prosecutor, then the statutory references <u>only</u> to those officials, can only be understood to exclude Fruitland Township, its supervisor, and the township attorney, from the set of officials vested with said authority.

This seems, at least at first glance, to be a simple matter of common sense.





EXHIBIT

A

Kevin Even, Esq.
EVEN & FRANKS, PLLC
August 9, 2013
Page 2

However, perhaps you are aware of some legal authority to support the view that the UBAA should be recognized as an exception to the normal and ordinary *expressio unis* principle, or perhaps you can identify some other reason to believe that Fruitland Township can proceed in a manner that does not appear to be contemplated on the face of the statute. Accordingly, for now, I will keep an open mind, and respectfully invite you to take this opportunity to direct my attention to any legal authority on which you believe you can rely. I promise I will consider your analysis with great care.

Alternatively, perhaps you and your client can reconsider whether it is an appropriate use of the tax dollars paid by Fruitland Township residents and taxpayers, to pay for you to initiate and maintain a lawsuit in circuit court, seeking an injunctive order against the White Lake Ambulance Authority, based on the UBAA. So far as I can determine, MCR 2.114 requires a reasonable pre-filing inquiry into the governing law. Had the necessary pre-filing inquiry been made, I have serious doubts as to whether at least the portion of your lawsuit that purports to rely upon the UBAA, ever would have been filed in the first place. In other words, a great many taxpayer dollars could have been saved (not just for Fruitland Township taxpayers, but for the residents of other local units, too), if the township attorney had made the same modest investment in pre-filing legal research, that the MICHIGAN COURT RULES require in every case.

As I recall from experience, and as further review of the statute confirms, the <u>state treasurer</u>, with or without a request by a local governmental unit, may "provide assistance, advice, or instruction" to a local unit, concerning accounting procedures. MCL 141.421(2), (3). Moreover, if the <u>state treasurer</u> makes certain determinations in the course of rendering assistance, then he or she has authority to require a local unit to secure the services of an accounting professional, or, if a local unit does not timely do so, to step in and to perform the accounting function for a local unit, at the local unit's expense. MCL 141.421(4), (5). Likewise, if a local unit does not secure an audit when required by statute, the <u>state treasurer</u> has authority to cause an audit to be performed for that local unit. MCL 141.426.

Notably, but perhaps not surprisingly, under MCL 141.430, the <u>state treasurer</u> and deputies of the state treasurer, are vested with subpoena authority "[i]n connection with any audit and examination conducted under the provisions of this act," but I am not aware of any statutory section vesting any other local or state official or local government unit (including, without limitation, Fruitland Township or its Supervisor or its township counsel) with similar authority.

Moreover, your attention is directed to Section 11 of the UBAA, MCL 141.131, which reads as follows (emphasis added):

**141.431     Violations of act.**

*79 a*

Kevin Even, Esq.
EVEN & FRANKS, PLLC
August 9, 2013
Page 3

> Sec. 11.
>
> If any audit or investigation conducted under this act discloses statutory violations on the part of any officer, employee or board of any local unit, a copy of such report shall be filed with the attorney general who shall review the report and cause to be instituted such proceeding against such officer, employee or board as he deems necessary. The attorney general, within 60 days after receipt of the report, may institute criminal proceedings as he deems necessary against such officer or employee, or direct that the criminal proceedings be instituted by the prosecuting attorney of the county in which the offense was committed. The attorney general or the prosecuting attorney shall institute civil action in any court of competent jurisdiction for the recovery of any public moneys, disclosed by any examination to have been illegally expended or collected and not accounted for; also for the recovery of any public property disclosed to have been converted and misappropriated.

MCL 141.131 (emphasis added); see also MCL 141.440 (also AG and county prosecutor).

I see nothing in the statute authorizing anyone other than a local unit itself (in this case, the WLAA, which I represent, not you), the state treasurer, the deputies of the state treasurer in the Treasury Department, or an accountant hired by the state treasurer, to conduct any audit or investigation under the UBAA.

Are you aware of any statutory language or legal authority to the contrary? If so, could you please enlighten me as to what law you rely upon?

In Wayne County Prosecuting Attorney v City of Detroit, 204 Mich App. 94, 96, 514 NW2d 774 (1994), a UBAA case, the Court of Appeals also recognized that a local prosecuting attorney (who serves a special function within the statutory scheme) may, in an appropriate case, bring a mandamus action against the state treasurer, to compel the state treasurer to perform any mandatory budget and accounting oversight functions specified in the UBAA. At the same time, the Wayne County Prosecuting Attorney decision makes clear that it would be inappropriate even for the prosecuting attorney to sue a local unit directly, seeking injunctive relief, rather than seeking mandamus against the state treasurer:

> We find that, because the UBAA specifically defines how units of local government are to account to the state for the public funds

**79b**

Kevin Even, Esq.
EVEN & FRANKS, PLLC
August 9, 2013
Page 4

> entrusted to them, the defendant cannot be compelled to account for
> public funds in the manner sought by the prosecutor in this action.
> The UBAA adequately protects the state's interest and there is no
> need for the court to exercise its equitable powers to ensure that the
> City of Detroit conduct a timely accounting.
>
> If defendant has not been audited as required by the UBAA, it is
> because the state treasurer has failed to fulfill his statutory duty. The
> appropriate action for plaintiff to pursue to ensure that defendant is
> audited in accordance with the law is to seek a writ of mandamus to
> compel the treasurer to perform his clear legal duty.

Id. Conspicuously, the lawsuit you filed is not filed by the Muskegon County Prosecutor, and it does not seek mandamus against the state treasurer, or even name the state treasurer as a defendant. Moreover, the 14th Circuit Court in Muskegon County, would appear to be the wrong venue for a case against the state treasurer, were either you or Mr. Hilson to file such a thing.

Similarly, you may wish to consider Rayford v City of Detroit, 132 Mich App 248, 257, 347 NW2d 210 (1984) ("Any action under this [UBAA] statute must be initiated by the Attorney General (or the prosecuting attorney if assets are to be recovered)."), and Detroit Fire Fighters Ass'n v City of Detroit, 449 Mich. 629, 638, 537 N.W.2d 436 (1995) ("the plaintiffs have no standing to bring this action"). Ultimately, it only stands to reason that the Legislature would narrowly limit the universe of officials with authority to initiate remedial action based on allegations that the UBAA allegedly has been violated. This case serves to illustrate precisely why such a policy would make perfect sense. Broadly authorizing a multitude of disgruntled prospective plaintiffs with an axe to grind, to rush into court armed only with a selective and misinformed understanding of the facts, and a limited understanding of the law, would paralyze governmental units all over the state, and waste an enormous amount of taxpayer resources on needless and avoidable litigation.

To summarize, I am at a total loss to understand how you think that your client can go to court, seeking an injunction, based on allegations that one or more sections of the UBAA have been violated. There is a process set forth in the UBAA, to address statutory violations when the actually occur. Allow me also to suggest respectfully, that a more objective assessment of the facts, is likely to result in the reasonable conclusion that there is no violation, here, or even at the worst, none that is material, requiring any particular action by any of the officials vested with authority to act.

What your client is doing does not appear to be consistent in any way with what the statute expressly contemplates as the normal enforcement process.

**79c**

Kevin Even, Esq.
EVEN & FRANKS, PLLC
August 9, 2013
Page 5

You are again respectfully invited to explain why your understanding of the law differs so dramatically from both the statutory text and the published case-law interpreting the statute. I am more than willing to consider any additional argument or authority that you bring to my attention.

In the meantime, all rights and remedies are respectfully reserved and I sincerely invite you to reflect on whether the course of action selected by you and by your client, is a wise and prudent one, consistent with the best interests of the taxpayers, either in Fruitland Township, or any of the other units you have sued.

Thank you very much for your careful attention to these issues. When you respond, I would prefer to have your response in writing.

Very truly yours,

Douglas M. Hughes

cc:   WLAA Board
      WLAA Director
      All counsel of record.

**79ð**

Rodger I. Sweeting (P-44625)
VANDER PLOEG, WELLS & SWEETING LLP
Attorneys for City of Whitehall
and Stephen Sikkenga
110 W. Colby St.
Whitehall, MI 49461
(231) 894-5631

Clifford H. Bloom (P-35610
BLOOM SLUGGETT MORGAN, PC
Attorneys for Michael Cockerill and
White River Township
15 Ionia SW, Ste. 640
Grand Rapids, MI 49503
(616) 965-9342

Craig R. Noland (P30717)
McGRAW MORRIS PC
Attorneys for Defendants Blue Lake
Township and Donald E. Studaven
300 Ottawa Ave, NW,
Suite 820
Grand Rapids, MI 49503
(616) 288-3702

_____/

## DEFENDANTS WHITE LAKE AMBULANCE AUTHORITY AND JEAN DRESEN'S
## MOTION TO QUASH AND FOR PROTECTIVE ORDER

NOW COME Defendants White Lake Ambulance Authority ("WLAA"), Jean Dresen,
(collectively, with WLAA, the "WLAA Defendants"), and move for a protective order, under
MCR 2.302(C), as well as moving to quash a subpoena issued by legal counsel for Fruitland
Township against Douglas M. Hughes, who serves as legal counsel for the WLAA. See MCR
2.305(a)(4). This motion for protective order and to quash, reasonably requests not only that
Fruitland Township be prohibited from deposing Mr. Hughes, but also that the privileged and
confidential work product papers, records and files of the WILLIAMS | HUGHES law firm,
pertaining to the WLAA, remain off-limits to discovery in this matter. In support of this motion,
the WLAA Defendants respectfully state:

1.      Fruitland Township is and remains in an adversarial posture with the WLAA and
the WLAA Board. This is by Fruitland's own choosing.

2.      Attached as Exhibit 1 is an issue of "Fruitland Township E-News" dated May 17,
2013 -- quite some time prior to the actual filing of any litigation by Fruitland -- that not only



contains allegations, some of which omit material information necessary to make assertions not misleading; some of which are demonstrably false; and others that are made in such a way as to cast the real facts in a false and deceptive negative light, but that also constitutes an admission by Fruitland that an adversarial situation already had come into existence between Fruitland and the WLAA, including the WLAA Board, some time prior to the filing of any lawsuit.

3. If there is any "bright line" distinguishing when an adversarial situation arose between Fruitland and the WLAA, it would be when Fruitland Township Trustee and former WLAA Board member Mary Ann Bard, in disregard of basic conflict-of-interest principles, and apparently without considering Michigan's Incompatible Public Offices statute, first approached the WLAA Director, seeking to have one of Ms. Bard's personal friends (who on information and belief, at that time already was on the Fruitland Township payroll)[1] hired to perform financial services work for the WLAA front office, and to be paid by the WLAA for that work.

4. For understandable reasons, see note 1, *supra*, the WLAA hired a person with all the necessary qualifications, and not Mary Ann Bard's personal friend. Since that time, Fruitland has chosen to be consistently hostile and adversarial toward the WLAA and the WLAA Board. Acrimony promptly erupted as soon as Karolyn Rillema was not hired by the WLAA, and it has been entirely reasonable for the WLAA to remain in an "in anticipation of litigation" posture, see Hickman v Taylor, 329 U.S. 495 (1947), since that time.[2]

---

[1] See, e.g., Act 566 of 1978, MCL 15.181 - 15.185. Under MCL 15.183(4)(a), had the prospective applicant been seeking work with the WLAA, for instance, as a medical first responder, emergency medical technician, emergency medical technician specialist, or paramedic, an incompatability might not have existed. Id. But this is not what Ms. Bard or Ms. Rillema were seeking.

[2] We think it is a mis-statement of law, for learned counsel to suggest that Delaware has established a "bright line" rule that adversity of interest only arises, when the first pleading in a derivative or other shareholder lawsuit is file-stamped by the clerk of the Court of Chancery, and summons are issued for service. That is not the law in



5.     There is no information and there are no facts, in any way material to any of the allegations in the Complaint, known to Doug Hughes, that cannot be obtained with equal or greater ease from some other source that does not present a privilege and/or work product issue.

6.     The WLAA Board, with only one abstention, has passed a resolution declining to waive the attorney-client privilege.

7.     Communications by the WLAA Board with the organization's attorney, as well as communications of the WLAA staff (including the Director) with the organization's attorney, are subject to privilege.  The attorney's work product prepared in anticipation of litigation is subject to the work-product doctrine.

8.     At least the entire time since <u>Hickman</u> v <u>Taylor</u>, 329 U.S. 495 (1947), and presumably for quite some time before that, the "bright line" -- if any -- relating to work product and privilege claims -- never has been the actual filing of a lawsuit, but rather, when litigation can reasonably be anticipated, as soon as it appears prudent to prepare for it, whether or not the litigation materializes.

9.     At all times on and after the inappropriate inquiries both by Ms. Bard and by her friend, it has been entirely reasonable for the WLAA to prepare for anticipated litigation, and to treat all communications in which a Fruitland representative is not included, as both privileged and confidential.

10.     Fruitland Township lacks authority to purport to exercise any unilateral power, without the approval of the entire WLAA Board (and, indeed, despite the Board's express

---

Delaware, and ought not to be the law in Michigan.  <u>See</u> In re Freeport-McMoran Sulphur, Inc, No. Civ.A. 16729, 2005 WL 225040, at *2 & n.7 (Del. Ch. Jan. 26 2005) ("Although there is little Delaware case law on the subject, and **no bright-line rule that identifies the point in time when mutuality of interest diverges in each case**, that divergence must necessarily occur at the point in time when the parties **can reasonably anticipate litigation** over a particular action.") (emphasis added); <u>accord</u> In re Fuqua Indus, Inc Shareholder Litig, No. Civ. A. 11974, 2002 WL 991666, at *3 (Del. Ch. May 2, 2002).



disapproval) to waive or circumvent the attorney-client privilege, or the work-product doctrine.

11.     Issues related to the attorney-client privilege, already have been presented to this honorable Court, in this case, which heard argument on or about September 4, 2013.  At the early-September hearing, the court specifically informed the parties that it was taking the matter under advisement.

12.     Rather than patiently awaiting reasoned judicial guidance, within a matter of days after the prior hearing was concluded, legal counsel for Fruitland Township caused a deposition notice and Subpoena to be served on Douglas Hughes, the attorney for the WLAA, purportedly compelling him to give testimony as a witness.  At that time, counsel for Fruitland Township and the Township Supervisor both knew already that the WLAA Board had formally declined to waive the privilege in any respect.

13.     It reasonably appears, as attorney Rose persuasively has demonstrated in his brief in opposition to Fruitland Township's motion to compel (which we adopt as our own and incorporate by reference), that the real facts in this case are readily ascertained, and not much dispute about any facts is likely.  Little discovery, if any, is really needed.

14.     Moreover, as the WLAA and Blue Lake Defendants already have pointed out, large portions of this case are moot and require no further litigation; Fruitland Township lacks standing to pursue the rest.  Moreover, dismissal is required on a variety of other grounds -- including unclean hands, *laches* and acquiescence.

15.     It only makes sense for this honorable Court to narrow the issues to the maximum degree possible (we expect, at this time, that the result will be dismissal of the entire suit on summary disposition) before wading into the difficult and contentious issue of whether Mr. Hughes ought to be required to testify about anything, or ought to hand over any privileged client



document or communication.

16.     In reality, all this hostility directed toward Mr. Hughes by Fruitland Township has no bearing on the merits of the allegations in the Complaint, and really has been initiated solely for purposes of harassment and the vexatious multiplication of legal expenses.  The apparent motivation, so far as we can determine (we also reasonably infer an additional *ulterior motive*, but that will be addressed in a future submission), is really to punish and retaliate against the WLAA, for declining to do Ms. Bard's bidding several months ago -- even though serious concerns under the Incompatible Public Offices statute and other law, might well have been raised, had the WLAA Director done as proposed by Ms. Bard.

17.     Movant has made a reasonable and good faith effort to seek consent to the relief requested herein, and Fruitland Township has declined to resolve this matter to the satisfaction of the WLAA Defendants.

WHEREFORE, the WLAA Defendants respectfully request that a protective order be issued, that the subpoena be quashed, and that Plaintiff be required to pay the reasonable expenses, including actual attorney fees, incurred by the WLAA Defendants, as a result of the Plaintiff's improvident actions.

WILLIAMS | HUGHES, PLLC

Dated: September 23 , 2013           By _____
                                          Douglas M. Hughes (P30958)
                                          Eric C. Grimm (P58990)
                                          Attorneys for Defendants White Lake
                                          Ambulance Authority and Jean Dresen

**80 2**

## BRIEF IN SUPPORT

This honorable Court has authority to manage the timing and sequence of discovery, as well as the timing of all other aspects of litigation. MCR 2.302(D); MCR 2.401. Standing, justiciability, and related issues are jurisdictional, and may be raised by the court on its own motion at any time. See <u>Lansing Schools Educ Ass'n</u> v <u>Lansing Bd. of Educ</u>, 487 Mich. 349, 792 N.W.2d 686 (2010) (recently clarifying role of standing doctrine in Michigan).

Submitted shortly before this motion was filed is a separate motion for summary disposition relating to Fruitland's arguments at the heart of its case -- based on either the incorporation by reference of the Uniform Budget and Accounting Act ("UBAA") in the Articles of Incorporation of the WLAA, or the UBAA itself. A hearing already is scheduled for the motion addressing the heart of the Plaintiff's allegations. The recently-submitted Affidavit of Jean Dresen also makes clear what the basis is for dismissing the entire lawsuit. We have two additional summary disposition motions in preparation -- one on the justiciability issue of mootness, and the other on Fruitland's 40-year history of delay, acquiescence, waiver and *laches*. Needless to say, there is no viable case at all, and in a very short period of time, we expect the whole thing will be dismissed.

We respectfully suggest that the Court address the issues of justiciability, mootness, standing, acquiescence, waiver, and *laches*, prior to any issues related to discovery -- especially discovery requests seeking privileged attorney-client communications.

If the case is dismissed on justiciability or equitable grounds, then any controversies related to discovery privilege and work product need not be addressed.

MCR 2.305(A)(4), concerning motions to quash, states as follows:



(4)    A subpoena issued under this rule is subject to the provisions of MCR 2.302(C), and the court in which the action is pending, on timely motion made before the time specified in the subpoena for compliance, may

    (a)    quash or modify the subpoena if it is unreasonable or oppressive;

    (b)    enter an order permitted by MCR 2.302(C); or

    (c)    condition denial of the motion on prepayment by the person on whose behalf the subpoena is issued of the reasonable cost of producing books, papers, documents, or other tangible things.

Here, the subpoena ought to be quashed because it is unreasonable and oppressive. It is a highly unusual step to seek to depose lead counsel for a litigation opponent, and thereby, to hope to turn the lawyer into a witness against his or her own client. The kind of extraordinary circumstances that would warrant escalation to such a drastic extreme -- and we can think of only a handful of cases, such as perhaps the Burlington Northern ETSI litigation, see In re Burlington Northern, Inc, 822 F2d 518 (5th Cir. 1987), some of the Koch Industries *qui tam* litigation, e.g., United States *ex rel.* Koch v. Koch Indus, 197 F.R.D. 488 (N.D. Ok. 1999), or perhaps In re Tobacco Products Liability Litigation, where such steps might arguably be warranted -- certainly are not present, here.

Let's be frank. The attorney for Fruitland Township has made some startling, and rather too personal, accusations on multiple occasions since the beginning of this litigation. For instance, at the deposition of Sam St Amour, immediately after caucusing with the attorney, Mr. St Amour came back on record to hurl a personal accusation at Douglas Hughes of fabricating evidence -- of forwarding a "cut and paste" job to the attorney conducting the deposition. The exhibits to the Affidavit of Jean Dresen show in some detail that this false accusation by Fruitland, made in consultation with legal counsel, could not be further from the truth.



# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF MUSKEGON

WHITE LAKE AMBULANCE AUTHORITY,

                Plaintiff,

vs.

FRUITLAND TOWNSHIP and
CITY OF WHITEHALL,

                Defendants.

File No. 16-_004733_ -CB

**THIS CASE ASSIGNED TO**
Hon. _____**JUDGE NEIL G. MULLALLY**_____

---

Douglas M.  Hughes (P-30958)
Susan M. Franklin (P-66047)
Williams Hughes, PLLC
Attorney for Plaintiff
120 W.  Apple Avenue
P.O. Box 599
Muskegon, MI   49443-0599
(231) 726-4857

---

2016 SEP 27  A 4: 41
NANCY A. WATERS
MUSKEGON COUNTY CLERK
FILED

## **COMPLAINT**

NOW COMES the Plaintiff, the White Lake Ambulance Authority, by and through its

attorney, Douglas M.  Hughes of Williams Hughes PLLC., and by way of Complaint against the

Defendants, does allege and say as follows:

    1.      That the Plaintiff, the White Lake Ambulance Authority (the "Authority") is a

Michigan emergency services corporation, located in the County of Muskegon and subject to the

laws of the State of Michigan.

    2.      That the Defendant Fruitland Township is a Michigan municipal corporation,

located in the County of Muskegon and subject to the laws of the State of Michigan.

    3.      That the Defendant City of Whitehall is a Michigan municipal corporation,

**90**

# WILLIAMS | HUGHES PLLC
## ATTORNEYS

THEODORE N. WILLIAMS, JR. – 2015
DOUGLAS M. HUGHES
SUSAN M. FRANKLIN
ENRIKA L.F. McGAHAN
ZANETA I. ADAMS
SARAH R. MILLER

*Of Counsel:*
FRED C. CULVER, JR.
MICHAEL I. KLEAVELAND
MARK J. ANDERSON*
L. JAMES LEMMEN, MD*
DAVID B. MERWIN
*Also Admitted in CO*

April 29, 2016

Mr. Kevin Even
Smith Haughey Rice & Roegge
900 3rd St., Suite 204
Muskegon, MI 49440-1152

Re:   Fruitland Township's Withdrawal from the White Lake Ambulance Authority

Dear Mr. Even:

Thank you for your response letter dated February 29, 2016.

As you noted, the Authority does rely on MCL 124.611(4), which clearly requires Fruitland Township, as a withdrawing member of the Authority, to remain liable for its proportion of the debts and liabilities of the Authority at the time it withdrew. Your reference that "no net liability position existed on June 30, 2015" and that "a positive net position of $190,941.00" appears to reflect the positive net position of the Authority identified in the June 30, 2015 financial statements. Net position, by definition, is the difference between assets and deferred outflows of resources and liabilities and deferred inflows of resource (Governmental Accounting Standards Board Statement Number 63). The Authority's statement of net position at June 30, 2015 does not report any deferred outflows or deferred inflows of resources, so net position as reported at June 30, 2015 is the difference between assets of $522,432 and liabilities of 331,491 (positive net position of $190,941).

Because you are utilizing the concept of net position, rather than the requirements of MCL 124.611 and the terms of the Authority agreement, in the assessment of your liability, you should understand that assets and an equal amount of net position include the Fruitland Township delinquent deficit assessment balance ($50,840 asset reported as due from other governments in the Authority's June 30, 2014 financial statements). The Authority again requests payment of the delinquent deficit assessment balance of $50,840.00 as documented in my letter dated February 19, 2016 and previous correspondence.

Article X of the Authority's Articles of Incorporation clearly provide that the equity of a withdrawing member in the capital assets of the Authority shall be forfeited to the Authority. At June 30, 2015, the capital asset book value ($144,405) net of related debt ($51,582) was $92,826. This balance of Authority equity in capital assets is reported on page 7 of the Authority financial

EXHIBIT
9

Mr. Kevin Even
April 29, 2016
Page 2

statements and is clearly a component of net position ("no net liability position of $190,941") at June 30, 2015. Fruitland Township, however, forfeited any equity in those assets, and no set-off for that equity may be applied to the debts and liabilities it is liable for, by both statute and agreement.

As to the ambulance purchase agreement, the balance due was calculated in relation to the ambulance purchase due subsequent to August 1, 2015. Consideration should also be made of any payment made in July of 2015 which is included in the balance of $51,582 referenced in the letter requesting payment.

You had also raised a question with regard to the defined contribution pension plan sum due. First, the sum listed in my previous letter was erroneous. The correct amount is $173,204.45 (the previously reported amount had included interest to October 31, 2015, whereas the corrected amount includes interest only until the date of Fruitland Township's withdrawal from the Authority). The difference between this corrected amount and the one used by the auditor is explained as that the number used by the auditor was estimated based on the best known facts at that time, and only included amounts due to employees that were less than six (6) years owing. The corrected amount is the amount actually due and owing to the employees, both current and former, as part of their wages and benefits.

With the amendment of the amount owed to the employees' defined contribution pension plan, the debts incurred by the Authority prior to Fruitland Township's withdrawal are:
- o PNC Line of Credit     $68,424.00
- o Ambulance lease/purchase agreement     $51,582.00
- o Amount owed to employees' 457b retirement accounts     $173,204.45
- o Amount overpaid by the Department of Health and Human Services, including penalty and interest     $113,635.08
- o Deficit as of July 31, 2015     $61,409.96
-     **Total:**     **$468,255.49**

Fruitland Township's portion of this debt is 34%, or $159,206.87. Fruitland Township's total liability also includes the amount of $50,840.00, which consists of the previously billed deficit amounts billed to Fruitland Township that went unpaid. Therefore, **the full amount owed to the Authority by Fruitland Township is $210,046.87, excluding interest.**

With regard to the overpayment issue brought up by the Department of Health and Human Services, the resulting claim and settlement reached with the Office of the Inspector General ("OIG"), and your request for more information, I have enclosed the following additional information:

1.     Letter from Nicole Caucci, OIG, dated September 22, 2015. I would note that I provided you with a copy of the initial letter received by the Ambulance Authority from the Office of the Inspector General via email on October 2, 2015, to put Fruitland Township on notice of this debt;



Mr. Kevin Even
April 29, 2016
Page 3

    2.      Excel spreadsheet prepared by the OIG regarding potentially false claims (the patients' last names have been redacted for their privacy);

    3.      Excel spreadsheet prepared by the Authority showing the amount of the overpayment (patients' last names have been redacted for their privacy).

        You will note that all of the service rendered by the Ambulance Authority and the overpayments received for that service occurred prior to Fruitland Township's withdrawal from the Authority. Through our investigation, we discovered that the Authority was billing Medicaid for trips it made transferring dialysis patients to the hospital and back as a higher priority than it should have (the services were designated as AO427 when they should have been designated as AO428). As the debt was incurred prior to Fruitland Township leaving the Authority, the Authority expects Fruitland Township to pay its portion of this debt.

        Please contact my office to make payment arrangements for Fruitland Township. Should you fail to do so prior to the Authority's next meeting, on May 25, 2016, the Authority will institute legal action.

                    Sincerely,

                    Susan M. Franklin

                    Susan M. Franklin
                    Direct Dial:  (231) 727-2105
                    E-Mail:  sfranklin@williamshugheslaw.com

Encl.

cc:    Mr. Jeff King, via email
       Mr. Jonathan Degen, via email

